# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Where 2 Get It, Inc.<br><br>　　　　　Plaintiff<br><br>　　v.<br><br>GeoTag Inc.<br><br>　　　　　Defendant | Civil Action No. _____<br><br>Jury Trial Demanded |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Where 2 Get It Inc. ("W2GI" or "Plaintiff") alleges as follows:

### NATURE OF THE CASE

1.　　Plaintiff seeks a declaratory judgment that U.S. Patent No. 5,930,474 ("the '474 Patent") is invalid and is not infringed by the use of Plaintiff's methods or products. The relief is necessary because Defendant ("GeoTag") has sued more than 300 entities, claiming that they infringe the '474 Patent by using web mapping services, usually to show their store locations. Many of the defendants sued by GeoTag are customers of Plaintiff. The suits have placed a cloud on Plaintiff's web mapping services, have caused customers to seek relief from Plaintiff, and have created a justiciable controversy between Plaintiff and GeoTag.

### PARTIES

2.　　Plaintiff is an Illinois corporation, with its principal place of business located at 1240 N. Lakeview No. 170, Anaheim, California 92807.

3. On information and belief, Defendant GeoTag is a Delaware corporation with a place of business located at 555 Republic Drive, Suite 200, Plano, Texas 75074.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 2201, 1331 and 1338(a) because this action arises under the patent laws, and seeks relief under the Federal Declaratory Judgment Act.

5. Venue is proper in this district pursuant to Title 28 U.S.C. §§ 1391 (b) and (c) because GeoTag is a Delaware corporation.

## HISTORY OF THE '474 PATENT

6. The '474 Patent issued to Z Land LLC of Santa Ana, California on July 27, 1999. The '474 Patent identifies the inventors as Peter D. Dunworth, John W. Veenstra and Joan Nagelkirk, all of California. On information and belief, John W. Veenstra was Chairman of the Board, Chief Executive Officer, and a director for Z Land LLC.

7. The '474 Patent has changed ownership at least 5 times. Assignees of the '474 Patent have included entities based in Liechtenstein, Switzerland, the West Indies, and the British Virgin Islands. On information and belief: John W. Veenstra has been involved with each transfer of the '474 Patent.

8. All on information and belief: An entity called Z Land, Inc. purported to be a successor in interest to the '474 Patent from Z Land LLC. Z Land, Inc. assigned the '474 Patent to Cityhub.com, Inc. of Aliso Viejo, California on or about August, 24, 1999. John W. Veenstra was President and Chief Executive Officer of Cityhub.com.

9. All on information and belief: Cityhub.com, Inc. assigned the '474 Patent to Labranza Est, a Liechtenstein trust, located in Schann, Liechtenstein on or about January 28, 2003. John W. Veenstra was associated with Labranza Est.

10. On information and belief: John W. Veenstra and Jason Galanis were involved in forming Yellowone Investments, an English Wales Corporation, with an office in Lugano-Agno, Switzerland, at least for the purpose of monetizing the '474 Patent.

11. On information and belief, Labranza Est assigned the '474 patent to Yellowone Investments on or about June 15, 2006.

12. All on information and belief: Yellowone Investments changed its name to Geomas (International) Limited in or about January 2007. John W. Veenstra was named Managing Director and Chief Innovation Officer for Geomas (International) Limited in or about February 2007.

13. All on information and belief: John W. Veenstra was Chief Executive Officer of GeoTag Management Group LLC, which was a licensee of the '474 Patent. GeoTag Management Group LLC sublicensed the '474 Patent to M2 International, Ltd. on or about July 1, 2008. M2 International, Ltd. sublicensed the '474 Patent to Zland America, Inc. Zland America, Inc. was a subsidiary of GeoTag Management Group LLC.

14. All on information and belief: Geomas (International) Limited assigned the '474 patent to M2 Global Ltd. of St. John's, Antigua on or about February 29, 2009. M2 International, Ltd. and M2 Global Ltd. were related entities. M2 Global Ltd. paid GeoMas an aggregate consideration of nearly $119M for the '474 Patent and some other intellectual property.

15. On information and belief, M2 Global, Ltd. changed its name to Ubixo Ltd. in or about April, 2010.

16. All on information and belief: Ubixo Inc. was formed as a British Virgin Islands subsidiary of Ubixo Ltd. on or about July 1, 2010. Ubixo Inc. was spun off from Ubixo Ltd. as a standalone, independent operating entity on or about July 12, 2010.

17. On information and belief, Ubixo Ltd. assigned the '474 patent to Ubixo Inc. on or about July 12, 2010.

18. On information and belief, Ubixo Inc. reincorporated as a Delaware corporation on or about July 16, 2010 and changed its name to GeoTag Inc.

19. On information and belief, John W. Veenstra became Chief Executive Officer of GeoTag in December 2010.

## GEOTAG'S BUSINESS

20. GeoTag has filed a Form S-1 Registration Statement with the Securities and Exchange Commission ("SEC") in preparation for offering shares in the company in an initial public offering.

21. GeoTag has filed a document entitled "Amendment No. 2 to Form S-1 Registration Statement" ("Amendment No. 2") with the SEC. In Amendment No. 2, GeoTag represents that it is "focused on licensing opportunities with companies whose web sites contain a geography-specific locator function (also known as a product locator, dealer locator or store locator). The companies whose websites utilize this function span a variety of industrial sectors. This function allows visitors of a company's website to conveniently find the closest location at which they can buy the company's particular products or services. The locator function may be found on the websites of manufacturers, wholesalers, retailers and service providers."

22. Further, in Amendment No. 2, GeoTag states, "[o]ur primary business strategy is to license and enforce our patented technology."

## GEOTAG'S SUITS AGAINST W2GI'S CUSTOMERS

23. Plaintiff W2GI is and has been a premier provider of web-mapping and location-based services for Fortune 1000 channel dependent companies with multiple retail locations for over nine years. Plaintiff's location and other mapping services (hereinafter "Mapping Services") display locations on a web-based map based on the IP address of the person looking to find a store, product, etc. Many of Plaintiff's customers use its Mapping Services to display the locations of their retail stores or places of business.

24. GeoTag alleges to own the '474 Patent, entitled "Internet Organizer for Accessing Geographically and Topically Based Information." A copy of the '474 Patent is attached hereto as Exhibit A.

25. The '474 Patent relates generally to systems and methods that allow users to search a remote database that links varied "topics" to various geographic areas.

26. GeoTag has sued more than 300 entities, many of whom are Plaintiff's customers, in ten separate complaints filed in the U.S. District Court for the Eastern District of Texas, Marshall Division (hereinafter the "Texas Actions"), including, but not limited to, civil action numbers 2:2010-cv-00569, 2:2010-cv-00570, 2:2010-cv-00571, 2:2010-cv-00572, 2:2010-cv-00573, 2:2010-cv-00574, 2:2010-cv-00575, and 2:2010-cv-00587.

27. In the Texas Actions, GeoTag alleges infringement of the '474 Patent based on the named entities' various websites "associating on-line information with geographic areas."

28. More specifically, GeoTag alleges infringement of the '474 Patent based on the use of the Mapping Services to create store locators and similar locator services on websites.

29. Customers of Plaintiff that are named as defendants in the Texas Actions have sought indemnity and defense from Plaintiff relating to the Texas Actions.

30. Plaintiff also potentially faces indemnity demands from customers who are currently being sued, or will be sued in the future, by GeoTag.

31. There is an actual controversy between Plaintiff and GeoTag regarding whether customers infringe the '474 Patent by use of Plaintiff's Mapping Services.

32. There is an actual controversy between Plaintiff and GeoTag as to whether the '474 is valid and/or enforceable.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment of Patent Invalidity – 35 U.S.C. §§ 101 *et seq.*)**

33. Plaintiff realleges and incorporates paragraphs 1 to 32 as if fully set forth herein.

34. The '474 Patent is invalid for failure to comply with the requirements of Title 35 of the United States Code, including, without limitation, one or more of §§ 101, 102, 103, and 112.

35. The '474 Patent is invalid because, among other things, there is prior art that anticipates and/or renders obvious the claims of the '474 Patent.

36. Plaintiff seeks and is entitled to a declaratory judgment that all claims in the '474 Patent are invalid.

**SECOND CLAIM FOR RELIEF**
**(Declaratory Judgment of Non-Infringement)**

37. Plaintiff realleges and incorporates paragraphs 1 to 36 as if fully set forth herein.

38. Plaintiff provides Mapping Services to customers.

39. Defendant has asserted that customers of Plaintiff's Mapping Services, which create store locators and other locators on websites, infringe the '474 Patent.

40. Plaintiff's customers do not infringe any valid claim of the '474 Patent.

41. Plaintiff seeks and is entitled to a declaratory judgment that customers of Plaintiff's Mapping Services do not infringe any valid claim of the '474 Patent.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against GeoTag as follows:

A. For judgment that the '474 Patent and each of the claims therein are invalid;

B. For judgment that all of Plaintiff's customers, including the customers sued in the Texas Actions, do not infringe any valid claim of the '474 Patent;

C. For a preliminary and permanent injunction precluding GeoTag, its officers, directors, employees, agents and all other persons acting in concert or participation with them from suing for infringement or otherwise asserting infringement of the '474 Patent against customers of Plaintiff's Mapping Services not yet named in the Texas Actions;

D. For a decree that this case is exceptional pursuant to 35 U.S.C. § 285;

E. For costs and reasonable attorneys' fees, including interest, incurred in connection with this action; and

F. For such other and further relief as the Court deems just.

| | |
|---|---|
| Dated:  March 14, 2011 | STAMOULIS & WEINBLATT LLC |
| | |
| | */s/ Richard C. Weinblatt* |
| | Stamatios Stamoulis #4606 |
| |         stamoulis@swdelaw.com |
| | Richard C. Weinblatt #5080 |
| |         weinblatt@swdelaw.com |
| | Two Fox Point Centre |
| | 6 Denny Road, Suite 307 |
| | Wilmington, DE 19809 |
| | Telephone:  (302) 999-1540 |
| | |
| | Of Counsel: |
| | |
| | Julie S. Turner (*pro hac vice* application pending) |
| |         Turner@turnerboyd.com |
| | Rachael D. Lamkin (*pro hac vice* application pending) |
| |         Lamkin@turnerboyd.com |
| | TURNER BOYD LLP |
| | 2570 W. El Camino Real, Ste. 380 |
| | Mountain View, CA  94040 |
| | Telephone: (650) 521-5930 |
| | |
| | *Attorneys for Plaintiff* |