## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WHERE 2 GET IT, INC.

     v.

GEOTAG, INC.

C.A. No. 1:11-cv-00223-GMS

JURY TRIAL DEMANDED

### DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

Kenneth Dorsney (Bar No. 3276)
Mary B. Matterer (Bar No. 2696)
MORRIS JAMES LLP
500 Delaware Ave., Ste. 1500
Wilmington, DE 19801
(302) 888-6960
kdorsney@morrisjames.com

John J. Edmonds
Michael J. Collins
Stephen F. Schlather
COLLINS, EDMONDS & POGORZELSKI, PLLC
1616 S. Voss Road, Suite 125
Houston, Texas 77057
Telephone: (281) 501-3425
Facsimile: (832) 415-2535
jedmonds@cepiplaw.com
mcollins@cepiplaw.com
sschlather@cepiplaw.com

COUNSEL FOR DEFENDANT
GEOTAG INC.

May 20, 2011

# TABLE OF CONTENTS

BACKGROUND ...................................................................................................................1

ARGUMENT AND AUTHORITIES.................................................................................4

    I.    W2GI's Complaint Should be Dismissed Under the Declaratory Judgment
          Act....................................................................................................................4

          A.    Legal Standards for Discretionary Dismissal Under the Declaratory
                Judgment Act. .........................................................................................4

          B.    Dismissal of This Declaratory Judgment Action is Proper Because
                W2GI Improperly Sought to Gain a Tactical Advantage by Filing
                The Complaint. ........................................................................................6

          C.    Dismissal Is Also Proper Because The Eastern District of Texas Is
                a More Suitable Forum For The Parties And The Witnesses. .....................8

                1.    The Private Interest Factors Strongly Favor Transfer......................8

                2.    The Public Interests Factors Also Strongly Favor Transfer...........11

    II.    In the Alternative, the Court Should Transfer the Case Under 28 U.S.C. §
          1404(a) to the Eastern District of Texas For the Convenience of the
          Witnesses and Parties and in the Interest of Justice..............................................13

CONCLUSION....................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Alloc, Inc. v. Unilin Décor N.V.,*
   2006 WL 3050815 (D. Del. Oct. 26, 2006) ....................................................................10, 12

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.,*
   295 F.Supp.2d 393 (D. Del. 2002)............................................................................................9

*Berry Floor USA, Inc. v. Faus Group, Inc.,*
   2008 WL 4610313 (E.D. Wis. 2008)......................................................................................13

*Brower v. Flint Ink Corp.,*
   865 F.Supp. 564 (N.D.Iowa 1994)............................................................................................5

*Brunswick.,*
   2000 U.S. Dist. LEXIS 22222 .......................................................................................... 11-12

*Cashedge, Inc. v. Yodlee, Inc.,*
   2006 WL 2038504  (D. Del. July 19, 2006) ..........................................................................11

*Dish Network Corporation v. TIVO, Inc.,*
   2009 WL 1529836 (D. Del. May 28, 2009).............................................................................11

*Eagle Traffic Control v. James Julian, Inc.,*
   933 F. Supp. 1251 (E.D. Pa. 1996) ...........................................................................................9

*E.E.O.C. v. Univ. of Pa.,*
   850 F.2d 969 (3d Cir.1988)........................................................................................................5

*EMC Corp. v. Norand Corp.,*
   89 F.3d 807 (Fed. Cir. 1996)..........................................................................................5, 6, 7, 8

*Jumara v. State Farm Ins. Co.,*
   55 F.3d 873 (3d Cir. 1995)..........................................................................................................6

*Mallinckrodt, Inc. v. E-Z-Em Inc.,*
   670 F. Supp. 2d 349 (D. Del. 2009)...........................................................................................6

*MedImmune, Inc. v. Genentech, Inc.,*
   127 S. Ct. 764 (2007) ................................................................................................................4

*MedImmune, Inc. v. Genenetch, Inc.,*
   549 U.S. 118 (2007).....................................................................................................................5

*Mekiki Co., Ltd. v. Facebook, Inc.,*
   2010 WL 2348740 (D. Del. June 7, 2010)................................................................................9

*Micron Technology, Inc. v. Mosaid Technologies, Inc,*
    518 F.3d 897 (Fed. Cir. 2008) ........................................................................................1, 5, 13

*Qinetiq Limited v. Oclaro, Inc.*,
    2009 WL 5173705 (D. Del. Dec. 18, 2009)..............................................................................9

*Teleconference Systems v. Proctor & Gamble Pharmaceuticals, Inc.*,
    676 F. Supp. 2d 321 (D. Del. 2009)......................................................................................12

*Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.*,
    C.A. No. 04-360(JJF), 2005 WL 441077 (D. Del. Feb. 15, 2005) ............................................9

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995).................................................................................................................4


**Statutes**

28 U.S.C. § 1404(a) ........................................................................................1,5,6,8,9,13

28 U.S.C. § 2201(a) .......................................................................................................4

Defendant, GeoTag, Inc. ("GeoTag") respectfully moves this Court to dismiss this case pursuant to the Declaratory Judgment Act because Plaintiff brought an improper anticipatory suit before this Court to obtain a tactical advantage, and the equitable factors identified in *Micron Technology, Inc. v. Mosaid Technologies, Inc.* weigh in favor of dismissal. 518 F.3d 897 (Fed. Cir. 2008). In the alternative, GeoTag moves the Court under 28 U.S.C. § 1404(a) for transfer to the United States District Court for the Eastern District of Texas, where the lawsuits alleged to give rise to this alleged case or controversy are currently pending.

## BACKGROUND

Plaintiff Where 2 Get It, Inc. ("W2GI") filed its complaint against GeoTag on March 14, 2011. W2GI alleges and GeoTag admits that GeoTag is the owner of U.S. Patent No. 5,930,474 ("the '474 Patent"). Complaint (Doc. No. 1) at ¶ 24. W2GI purports to invoke the jurisdiction of the Declaratory Judgment Act, and seek a declaration that unspecified claims of the '474 patent are invalid and that W2GI's alleged customers do not infringe any unspecified valid claim of the '474 patent. Complaint at ¶¶ 33-41. As W2GI alleges, the '474 patent has been and still is the subject of multiple prior and ongoing patent infringement lawsuits in the United States District Court for the Eastern District of Texas (the "Texas Actions"). Complaint at ¶ 26.

W2GI premises subject matter jurisdiction under the Declaratory Judgment Act on the allegation that unspecified customers of W2GI have been named as defendants in the Texas Actions. Complaint at ¶ 29. W2GI further alleges that its unspecified customers have sought indemnity and defense from W2GI in the Texas Actions. *Id* at ¶ 30. W2GI speculates that other customers may be sued for infringement of the '474 patent and may seek indemnity from W2GI *Id.* at ¶ 30. According to W2GI, the Texas Actions "have placed a cloud on Plaintiff's web

mapping services, have caused customers to seek relief from Plaintiff, and have thus created an actual, justiciable controversy between Plaintiff and GeoTag." *Id.* at ¶ 1.

On February 21, 2011, Rachael Lamkin, counsel for W2GI, initiated contact with John Edmonds, counsel for GeoTag, via e-mail seeking discussions about taking a license for her clients regarding the '474 patent. Declaration of John Edmonds, attached hereto as Exhibit B (Ex. B), ¶ 1; Ex. B(1). According to Lamkin, she represented eleven named defendants and an unnamed provider. Ex. B(1). From that information, Edmonds was able to surmise that W2GI was a provider of systems/methods accused of infringing GeoTag's '474 patent, and that W2GI was likely Ms. Lamkin's unnamed client. (Ex. B), ¶ 2. Edmonds responded noting that GeoTag would be willing to discuss a license under a non-disclosure agreement which was attached on the e-mail. (Ex. B), ¶ 3; Ex. B(2). Lamkin replied by email that, "I'll get these signed and get them back to you." (Ex. B), ¶ 4; Ex. B(3). However, the next day Lamkin emailed stating that her "...unnamed client is concerned that if the client signs the NDA, they will now be on your radar." (Ex. B), ¶ 5; Ex. B(4). Lamkin then asked if "...it [would be] possible for me to sign the NDA representing absolute confidentiality for the terms of our discussion? If not, if I reveal my client, can you agree not to sue that client for some short period of time while we negotiate, say 60 days?" Ex. B(4). Although Edmonds had already surmised that W2GI was likely the unnamed provider, Edmonds responded that GeoTag was "...amenable to working with you on this." (Ex. B), ¶ 6; Ex. B(5). Lamkin responded that she would re-draft the NDA that day. (Ex. B), ¶ 7; Ex. B(6).

A week later, Lamkin sent Edmonds a re-draft of the NDA. (Ex. B), ¶ 8; Ex. B(7). While Edmonds was in the process of getting client approval over the form of NDA, and barely two weeks into the amenable 60 day standstill, W2GI filed this lawsuit on March 14, 2011. On the

same day, Lamkin emailed Edmonds stating that "In order to facilitate license negotiations but still protect... [W2GI]..., we filed but have not served a DJ in Delaware." (Ex. B), ¶ 9; Ex. B(8). Lamkin stated that W2GI wished to continue licensing negotiations with GeoTag, stating that it would "still [be] willing to discuss a license ..." Ex. B(8).

GeoTag proceeded with filing its complaint against W2GI for patent infringement in connection with the '474 patent on March 15, 2011 in the Eastern District of Texas. (Ex. B), ¶ 10; Ex. B(9). The other defendants in the GeoTag v. W2GI suit in Texas are customers of W2GI who had not been previously sued by GeoTag for infringing its '474 patent. (Ex. B), ¶ 10.

GeoTag is a Delaware corporation that is registered to do business in Texas. Declaration of Lawrence P. Howorth, attached hereto as Exhibit A, ¶ 6.  GeoTag's headquarters and sole office is located in Frisco, Texas, *Id.*, ¶ 7, which is located within the Eastern District of Texas. Ex. B, ¶ 11.  GeoTag has no business operations, offices or employees in Delaware. Ex. A, ¶ 9. The totality of GeoTag's electronic documents that concern the '474 patent, or that could possibly be construed as relevant to this action, reside in GeoTag's office in Frisco, Texas or in the offices of its counsel of Longview, Texas or Houston, Texas. *Id.*, ¶ 10.  Longview, Texas is located in the Eastern District of Texas, and Houston, Texas is located in the Southern District of Texas. Ex. B, ¶ 11.  GeoTag's hardcopy documents that concern the '474 patent, or that could possibly be construed as relevant to this action, reside in GeoTag's office in Frisco, Texas and/or in the offices of GeoTag's counsel in Houston and Longview, Texas. Ex. A, ¶ 11.  Substantially all of GeoTag's business activities, including the meetings of GeoTag's Board of Director's take place in the Eastern District of Texas. *Id.*, ¶ 8.

The first suit alleging infringement of the '474 patent was brought by Geomas (International) Limited ("Geomas UK") on November 15, 2006 in the United States District

3

Court for the Eastern District of Texas, Marshall Division. *Id.* at ¶ 13.  The case was styled *Geomas (International) Limited, v. Idearc Media Services West, Inc.*, No. 2:06-cv-00475-CE. *Id.* After approximately three years of litigation in the Eastern District (which included a *Markman* order construing the claims of the ''474 patent) and less than a month before trial, the case was settled. *Id.*

W2GI is an Illinois corporation with its principal place of business in Anaheim, California. Complaint at ¶ 2.  W2GI fails to allege that they have, or that anyone relevant to the suit has, any substantial business operations, employees or offices in Delaware.  W2GI fails to allege that there are any documents or witnesses relevant to this case located in Delaware.

## ARGUMENT AND AUTHORITIES

I. **W2GI's Complaint Should be Dismissed Under the Declaratory Judgment Act.**

   A. **Legal Standards for Discretionary Dismissal Under the Declaratory Judgment Act.**

The Declaratory Judgment Act provides that courts "may" grant relief, but does not require courts to adjudicate all claims brought under the Act. 28 U.S.C. § 2201(a).  The Declaratory Judgment Act provides district courts with "unique and substantial discretion in deciding whether to declare the rights of the litigants." *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 776 (2007) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). The Supreme Court has explained that it is appropriate to provide the district courts with such discretion "in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Wilton,* 515 U.S. at 289.  Therefore, a district court may exercise its discretion to dismiss a declaratory judgment action if doing so would be consistent with the purposes of the Declaratory Judgment Act and considerations of "wise judicial administration." *Id.* at 288. ("In the

4

declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."). Discretionary dismissals under the Declaratory Judgment Act are appropriate, as in the present case, where an alleged infringer abuses the declaratory judgment device to gain an improper advantage in ongoing licensing negotiations. *See, e.g., EMC Corp. v. Norand Corp.,* 89 F.3d 807, 815 (Fed. Cir. 1996), *overruled in part on other grounds, MedImmune,* 549 U.S. 118 (2007). Further, discretionary dismissals are appropriate where, as here, the plaintiff in the first-filed action was able to file first only because it had misled the filer of the second-filed. *Brower v. Flint Ink Corp.,* 865 F.Supp. 564, 569 (N.D.Iowa 1994). In the Third Circuit, application of the first-file rule is usually the norm, but district courts may exercise discretion in departing from it where exceptional circumstances are presented. *E.E.O.C. v. Univ. of Pa.,* 850 F.2d 969, 979 (3d Cir.1988). Such circumstances can include, as here, "inequitable conduct, bad faith, or forum shopping." *E.E.O.C,* 850 F.2d at 972,

Discretionary dismissal of a first-filed declaratory judgment action is also appropriate where the declaratory judgment action and a mirror-image patent infringement action are filed within a few days of one another in competing forums. *See Micron Technology,* 518 F.3d at 902. In those circumstances, a district court needs to consider the "convenience factors" found in transfer analysis under 28 U.S.C. § 1404(a) in determining whether to dismiss the first-filed declaratory judgment action. *Id.* at 902-903.

In *Micron,* the Federal Circuit recognized that although the more lenient *MedImmune* standard for establishing declaratory judgment jurisdiction would increase the availability of such jurisdiction, it could also "occasion a forum-seeking race to the courthouse." 518 F.3d at 902 (Fed. Cir. 2008). The Federal Circuit held that where an action involves two competing

fora, the district court "will have to decide whether to keep the case or decline to hear it in favor of the other forum ... where the infringement action is filed" based upon the application of the transfer convenience factors. *Id*. at 904. The Federal Circuit made clear that "when the discretionary determination is presented after the filing of an infringement action, the jurisdiction question is basically the same as a transfer action under [Section] 1404(a)." *Id*.

In the Third Circuit, courts weigh six private and five public interests to assist in determining whether to transfer a case under section 1404(a). *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). *See Mallinckrodt, Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 356 (D. Del. 2009). Private interests include: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the fora; and (6) the location of books and records, again, only to the extent that they may not be available in one of the fora. *Jumara*, 55 F.3d at 879. Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in the controversy; (5) public policies of the fora; and (6) the trial judge's familiarity with the applicable state law in diversity cases. *Id*. at 879-80.

## B. Dismissal of This Declaratory Judgment Action is Proper Because W2GI Improperly Sought to Gain a Tactical Advantage by Filing The Complaint.

The Court should exercise its discretion to dismiss this declaratory judgment action because W2GI improperly sought to use this action as leverage in negotiations with GeoTag. The Federal Circuit decision in *EMC* is directly on point with facts that are even less compelling than those presented here. 89 F.3d at 815.

In *EMC*, the plaintiff filed a declaratory judgment action despite being involved in

licensing negotiations with the defendant-patentee. *Id.* at 815.   The plaintiff contacted the defendant-patentee the day after filing the complaint, explaining that the declaratory judgment action was "merely a defensive step" and that the plaintiff "would like to continue to discuss ... all the options hopefully in a more meaningful manner over the near term." *Id.*   The plaintiff further explained that "management decided to file suit because 'they just thought it was in their interest to protect themselves first and continue discussions.' " *Id.*   Based upon these facts, the Federal Circuit concluded that the plaintiff filed suit during licensing negotiations as a tactical measure to improve its negotiation position - "a purpose that the Declaratory Judgment Act was [not] designed to serve." *Id.*

Here, W2GI's counsel, Rachael Lamkin, lulled GeoTag into a 60 day standstill to facilitate what should have been good faith license negotiations.   However, barely two weeks into the 60 day standstill, W2GI filed this lawsuit on March 14, 2011.  On the same day, Lamkin emailed Edmonds stating that "In order to facilitate license negotiations but still protect... [W2GI]..., we filed but have not served a DJ in Delaware." (Ex. B), ¶ 9; Ex. B(8).  Lamkin stated that W2GI wished to continue licensing negotiations with GeoTag, stating that it would "still [be] willing to discuss a license . . .." Ex. B(8).

Unmistakably, W2GI filed this lawsuit in bad faith as leverage at a time when GeoTag was working on getting a Rule 408 agreement in place, and more importantly, GeoTag was honoring W2GI's request for a 60 day stand-still. Consequently, in realization of WTGI's lack of candor, GeoTag proceeded with filing its complaint against W2GI for patent infringement in connection with the '474 patent on March 15, 2011 in the Eastern District of Texas. (Ex. B), ¶ 10; Ex. B(9).  The other defendants in the GeoTag v. W2GI suit in Texas are customers of W2GI who had not been previously sued by GeoTag for infringing its '474 patent. (Ex. B), ¶ 11.

However, rather than return the non-disclosure agreement to discuss a license in good faith, W2GI's next action was to file this lawsuit on March 14, 2011. On the same day, Lamkin emailed Edmonds stating that "In order to facilitate license negotiations but still protect… [W2GI]…, we filed but have not served a DJ in Delaware." (Ex. B), ¶ 7; Ex. B(6). Lamkin stated that W2GI wished to continue licensing negotiations with GeoTag, stating that it would "still [be] willing to discuss a license as long as it makes economic sense." Ex. B(6).

As in *EMC,* there can be no doubt that W2GI improperly filed this action to obtain leverage in future negotiations with GeoTag as indicated by W2GI's wishes to continue licensing negotiations even after this Complaint was filed. W2GI filed this anticipatory suit to gain leverage in negotiations while at the same time goading GeoTag into a 60 day standstill. Permitting this declaratory judgment action to proceed would be inconsistent with the purposes of the Declaratory Judgment Act, *see EMC,* 89 F.3d at 815, and it would reward bad faith and improper sharp tactics. The Court should therefore exercise its discretion under the Declaratory Judgment Act to dismiss W2GI's peremptory, tactical declaratory judgment action.

### C. Dismissal Is Also Proper Because The Eastern District of Texas Is a More Suitable Forum For The Parties And The Witnesses.

Discretionary dismissal of this declaratory judgment action, even though it is first-filed, is also proper because the Section 1404(a) factors weigh heavily in favor of transfer to the Eastern District of Texas, where the patent infringement action is pending. Weighing all of the *Jumara* factors, the Eastern District of Texas is clearly the more convenient forum for the parties and witnesses.

#### 1. The Private Interest Factors Strongly Favor Transfer

The six *Jumara* private interest factors strongly favor transfer to the Eastern District of Texas. The weight which would normally be accorded to W2GI's choice of Delaware as the

forum is significantly reduced here.  W2GI does not appear to have any offices or employees in

Delaware.  Moreover, the operative facts occurred outside of Delaware.  W2GI alleges that its

declaratory judgment claims arise out of the Texas Actions, not anything that happened in

Delaware.  Under these circumstances, W2GI's choice of Delaware as a forum is not entitled to

great weight, and transfer to the Eastern District of Texas, which has a much greater connection

to the operative facts, the parties, the witnesses and the relevant documents, is appropriate.[1]

*Mekiki Co., Ltd. v. Facebook, Inc.*, 2010 WL 2348740 at *3 (D. Del. June 7, 2010); *Trilegiant*

*Loyalty Solutions, Inc. v. Maritz, Inc.,* C.A. No. 04-360(JJF), 2005 WL 441077, at *2 (D. Del.

Feb. 15, 2005); *Qinetiq Limited v. Oclaro, Inc.*, 2009 WL 5173705 at *3 (D. Del. Dec. 18, 2009);

*Eagle Traffic Control v. James Julian, Inc.,* 933 F. Supp. 1251, 1259 (E.D. Pa. 1996).

   The remainder of the six private interest factors strongly favors transfer to the Eastern

District of Texas.  The Eastern District of Texas is GeoTag's choice of forum.  W2GI's

declaratory judgment claims are based on its allegation that unidentified customers have been

sued in the Eastern District of Texas.  Thus, W2GI's claims arose in the Eastern District of Texas

– not Delaware.

   The convenience of the parties and witnesses, and the location of relevant evidence - the

most important factors in the § 1404(a) analysis -  all strongly favor transfer.  The Eastern

District of Texas is a much more convenient venue than Delaware for both parties.  GeoTag has

its only office and headquarters there. Ex. A, ¶ 7.  Its CEO (and primary inventor of the '474

patent) and President and Chief Financial Officer are based there. Ex. A, ¶¶ 2 - 4.  GeoTag has

no operations or employees in Delaware. Ex. A, ¶ 9.  The Eastern District of Texas is also

---

[1] That GeoTag is incorporated in Delaware is not dispositive of a motion to transfer. *See APV N.*
*Am., Inc. v. Sig Simonazzi N. Am., Inc.,* 295 F.Supp.2d 393, 398-99 (D. Del. 2002) ("Where an
alternative forum is more convenient and has more substantial connection with the litigation,
'incorporation in Delaware will not prevent transfer.'").

arguably more convenient for W2GI.  W2GI's operations in Anaheim, California are much closer to the Eastern District of Texas than to Delaware.  Transfer is favored here because none of the parties have facilities in Delaware nor maintain their principal place of business here. *Alloc, Inc. v. Unilin Décor N.V.*, 2006 WL 3050815 at *2 (D. Del. Oct. 26, 2006).

The Eastern District of Texas is also a much more convenient venue for the witnesses. GeoTag is aware of no witnesses with relevant evidence residing in Delaware.  Thus, this Court would not have subpoena power over any witnesses in the case.  By contrast, the Eastern District of Texas would have subpoena power over at least GeoTag's employees, including John W. Veenstra, the primary inventor of the '474 patent.  To the extent that W2GI has any witnesses with relevant knowledge, they are likely located in California, which is much closer to the Eastern District of Texas than to Delaware.  Further, W2GI has not alleged that its unspecified customers have witnesses or documents more convenient to the District of Delaware than to the Eastern District of Texas.

The "location of books and records" factor also favors transfer.  It is highly unlikely that any documents of any party would be found in Delaware.  GeoTag has no documents that concern the '474 patent or that could possibly be construed as relevant to this action located in Delaware. Ex. A, ¶ 12.  W2GI's declaratory judgment action, if allowed to proceed, would necessarily focus on the conception and reduction to practice of the claimed invention, and the '474 patent, the construction of its claims, the file history, the documents of the inventors, and any prior art activities by the patentee.  Those documents are almost exclusively in the possession of GeoTag. The totality of GeoTag's electronic and hardcopy documents that concern the '474 patent, or that could possibly be construed as relevant to this action, reside in GeoTag's office in Frisco, Texas or in the offices of its counsel in the Eastern and Southern Districts of

Texas. Ex. A, ¶¶ 10 and 11.   To the extent that W2GI has any documents relevant to the litigation, those would likely reside in Anaheim, California, which is substantially closer to the Eastern District of Texas than Delaware.   Further, the relevant documents of W2GI's unspecified customers are already going to be produced in the Texas Actions pending in the Eastern District of Texas.

## 2.   The Public Interests Factors Also Strongly Favor Transfer

The *Jumara* public interest factors strongly favor transfer to the Eastern District of Texas. Substantially all of GeoTag's physical assets are located in Texas.   GeoTag had no physical assets in Delaware.   W2GI would have an easier time enforcing any judgment against GeoTag in the Eastern District of Texas than in Delaware.   Thus, the "enforceability of the judgment" factor weighs strongly in favor of transfer.

The "practical considerations" factor includes judicial efficiency regarding the ease, speed, or expense of trial. *See Cashedge, Inc. v. Yodlee, Inc.*, 2006 WL 2038504 at *2 (D. Del. July 19, 2006).   Considerations of judicial efficiency overwhelmingly weigh in favor of transfer. The Court in the Eastern District of Texas has already presided over a suit involving the '474 patent and issued an order construing its claims. Ex. A, ¶ 13.   Because that suit came within a month of going to trial, it is safe to assume that the Court is familiar with the '474 patent, the relevant technology and the prior art.   This consideration alone weighs heavily in favor of transfer. *See Dish Network Corporation v. TIVO, Inc.*, 2009 WL 1529836 at *2 (D. Del. May 28, 2009) (transferring a patent case to the Eastern District of Texas based on the prior experience of that Court with the patent, the technology and the parties).   Moreover, it is in the interest of justice to permit this suit and the ongoing and first-filed Texas Actions, which involve the same patent, the same technology and the same prior art, to proceed before one court. *See Brunswick.,*

11

2000 U.S. Dist. LEXIS 22222, at *7 - *8; *Alloc*, 2006 WL 3050815 at *3 (transferring a patent case to the Eastern District of Wisconsin where first-filed litigation on the same patents was pending).

The "local interest" factor also weighs in favor of transfer. Delaware has no connection to the controversy between W2GI and GeoTag over the '474 patent. The Eastern District of Texas, on the other hand, has a significant interest in hearing a dispute involving GeoTag and the '474 patent. GeoTag has its headquarters and sole office in the Eastern District of Texas. The primary inventor of the '474 patent resides there. The lawsuits asserting the '474 patent that allegedly gave rise to W2GI's declaratory judgment action are pending there.

Finally, because W2GI's action is not a diversity case, the "familiarity of the trial judge with the applicable state law" factor is irrelevant. *Teleconference Systems v. Proctor & Gamble Pharmaceuticals, Inc.*, 676 F. Supp. 2d 321, 335 (D. Del. 2009).

On balance, the *Jumara* private and public interest factors strongly favor transfer. W2GI's choice of Delaware as a forum is entitled to reduced weight because Delaware has no connection to the operative facts of the case. There appear to be no witnesses or relevant documents in Delaware. By way of contrast, the Eastern District of Texas is GeoTag's principal place of business. To the extent that W2GI has any justiciable claims, those are alleged to have arisen out of the Texas Actions. Additionally, key witnesses and all of GeoTag's documents are located in Texas. Moreover, the Court in the Eastern District of Texas has previously presided over an infringement suit involving the '474 patent, presided over a *Markman* hearing and issued an order construing its claims. Finally, multiple first-filed suits alleging infringement of the '474 patent are pending there.

Because the Section 1404(a) factors weigh strongly in favor of transfer to the Eastern District of Texas, the Court should exercise its discretion to dismiss W2GI's declaratory judgment action in Delaware. *Micron*, 518 F.3d at 897.

## II. In the Alternative, the Court Should Transfer the Case Under 28 U.S.C. § 1404(a) to the Eastern District of Texas For the Convenience of the Witnesses and Parties and in the Interest of Justice.

In the event that the Court does not grant GeoTag's motion to dismiss, it should transfer the case under 28 U.S.C. § 1404(a) to the United States District Court for the Eastern District of Texas, where GeoTag has its principal place of business, where key witnesses and documents are found, where the Texas Actions are pending, and where the Court has previously construed the claims of the '474 patent.

As explained above, the private and public interests strongly favor the Eastern District of Texas because of that court's familiarity with the '474 patent from previous litigations and the current pending Texas Actions.  The Court therefore should accord little or no weight to W2GI's choice of forum and should transfer this action to the Eastern District of Texas for consolidation with the Texas Actions based upon the weight of the convenience factors. *See Berry Floor USA, Inc. v. Faus Group, Inc.*, 2008 WL 4610313, at *2, *7 (E.D. Wis. 2008) (transferring first-filed declaratory judgment action under *Micron)*.

## CONCLUSION

For the reasons set forth above, the Court should dismiss W2GI's complaint for declaratory judgment.  In the alternative, the Court should transfer this suit to the United States District Court for the Eastern District of Texas, where the lawsuits alleged to give rise to this alleged controversy are currently pending.

May 20, 2011

Respectfully submitted,

MORRIS JAMES LLP

By: __/s/ Kenneth L. Dorsney_____
Kenneth L. Dorsney (Bar No. 3276)
Mary B. Matterer (Bar No. 2696)
500 Delaware Ave., Ste. 1500
Wilmington, DE 19801
(302) 888-6960
kdorsney@morrisjames.com

John J. Edmonds
Michael J. Collins
Stephen F. Schlather
COLLINS, EDMONDS & POGORZELSKI, PLLC
1616 S. Voss Road, Suite 125
Houston, Texas 77057
Telephone: (281) 501-3425
Facsimile: (832) 415-2535
jedmonds@cepiplaw.com
mcollins@cepiplaw.com
sschlather@cepiplaw.com

COUNSEL FOR DEFENDANT
GEOTAG INC.

14