IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WHERE 2 GET IT, INC., | |
| Plaintiff, | Civil Action No. 1:11-cv-00223-GMS |
| v. | **JURY TRIAL DEMANDED** |
| GEOTAG, INC., | |
| Defendant. | |

**PLAINTIFF WHERE 2 GET IT, INC.'S OPPOSITION TO DEFENDANT
GEOTAG, INC.S MOTION TO DISMISS OR IN THE ALTERNATIVE,
TO TRANSFER VENUE**

## TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDINGS ..................................................1

II.   SUMMARY OF ARGUMENT ......................................................................1

III.  STATEMENT OF FACTS ............................................................................2

      A.   Delaware Company GeoTag Sued Dozens Of W2GI Customers, But Not W2GI..2

      B.   W2GI Learned About The Customer Lawsuits And Reached Out To GeoTag. .....3

      C.   Having Not Heard Back From GeoTag, W2GI Elected To File A Declaratory
           Judgment Action In This District............................................................4

IV.   ARGUMENT. .............................................................................................5

      A.   As The First To File, W2GI's Choice Is Entitled to Substantial Deference............5

      B.   W2GI Was Not The First To File Based On Any Misleading Conduct, As GeoTag
           Contends. ....................................................................................7

      C.   W2GI's Negotiations With GeoTag Are Completely Irrelevant To Whether Or
           Not Dismissal Or Transfer Is Proper Here............................................8

      D.   GeoTag Has Failed To Demonstrate Any Remaining Factors Weigh Enough In
           Favor Of Transfer To Overcome The First-Filer Presumption..............................9

           1.   GeoTag's Preference Carries Little, If Any, Weight. ................................11

           2.   GeoTag's Contention That The Claims Arose In Texas Is Without Merit.12

           3.   The Remaining Private Interest Factors Do Not Strongly Favor Transfer.12

           4.   The Public Interest Factors Weigh In Favor Of Denying Transfer. ..........14

V.    CONCLUSION................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Academisch Ziekenhuis Leide v. Cardiomems, Inc.*,
    C.A. No. 10-1127, 2011 U.S. Dist. LEXIS 23833 (D. Del. Mar. 9, 2011)............................5, 6

*Albert Fadem Trust v. Duke Energy Corp.*,
    214 F. Supp. 2d 341 (S.D.N.Y. 2002)...................................................................................13

*Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co.*,
    Civ. A. No. 06-187, 2006 U.S. Dist. LEXIS 92249 (D. Del. Dec. 21, 2006)............................6

*Boston Scientific Corp. v. Johnson & Johnson Inc.*,
    532 F. Supp. 2d 648 (D. Del. 2008)......................................................................................9

*Brower v. Flint Ink Corp.*,
    865 F. Supp. 564 (N.D. Iowa 1994)......................................................................................8

*C.R. Bard, Inc. v. Guidant Corp.*,
    997 F. Supp. 556 (D. Del. 1998).........................................................................................9

*Carl Zeiss Meditec, Inc. v. Optovue, Inc.*,
    2011 WL 1419714 (D. Del. April 13, 2011).........................................................................12

*Cisco Systems Inc. v. GPNE Corp.*,
    Civ. No. 07-671-SLR, 2008 U.S. Dist. LEXIS 31877 at *3-*4 (D. Del. Apr. 17, 2008)....9, 10

*Continental Cas. Co. v. American Home Assurance Co.*,
    61 F. Supp. 2d 128 (D. Del. 1999).....................................................................................10

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*,
    821 F. Supp. 962 (D. Del. 1993)......................................................................................7, 9

*Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*,
    No. Civ. A. 01- 199, 2001 U.S. Dist. LEXIS 20803 (D. Del. Nov. 28, 2001) .................10, 14

*EMC Corp. v. Norand Corp.*,
    89 F.3d 807 (Fed. Cir. 1996)...........................................................................................8, 9

*Honeywell Int'l Inc. v. Audiovox Commc'n Corp.*,
    No. CIV. A. 04-1337-KAJ, 2005 WL 2465898 (D. Del. May 18, 2005).........................11, 15

*ICU Med., Inc. v. Rymed Technologies, Inc.*,
    Civil Action No. 07-468-JJF, 2008 U.S. Dist. LEXIS 4983 (D. Del. Jan. 22, 2008).................
    ...............................................................................................................................10, 12, 14

ii

*In re M.L. Lee Acquisition Fund II, L.P.*,
  816 F.2d F.Supp. 973 (D. Del. 1993)....................................................................10

*Intel Corp. v. Broadcom Corp.*,
  167 F. Supp. 2d 692 (D. Del. 2001)......................................................................12

*Joint Stock Soc'y v. Heublein,*
  936 F. Supp. 177 (D. Del. 1996)............................................................................6

*Jumara v. State Farm Ins.*,
  Co., 55 F.3d 873 (3d Cir. 1995)...........................................................................10

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990)............................................................................11

*Marvell Int'l Ltd. v. Link_A_Media Devices Corp.*, Civ. No. 10-869-SLR, 2011 U.S. Dist.
  LEXIS 60798 (D.Del. June 8, 2011).......................................................................7

*Ricoh Co. v. Aeroflex, Inc.*,
  279 F. Supp. 2d 554 (D. Del. 2003)......................................................................11

*Shutte v. Armco Steel Corp.*,
  431 F.2d 22 (3d Cir. 1970).....................................................................................5

*Stratos Lightwave, Inc. v. E2O Commc'ns, Inc.*,
  Civ. A. No. 01-309, 2002 U.S. Dist. LEXIS 5653 (D. Del. Mar. 26, 2002)............5

*Upjohn Co. v. Riahom Corp.*,
  No. CIV. A. 86-203 CMW, 1986 WL 7515 (D. Del. June 25, 1986)....................13

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964).............................................................................................10

STATUTES

28 U.S.C. § 1404(a) ...........................................................................................9, 10

OTHER AUTHORITIES

U.S. Patent No. 5,930,474.............................................................2, 3, 5, 6, 12, 14, 15

## I.      NATURE AND STAGE OF PROCEEDINGS

This is a declaratory judgment action brought by Where2GetIt, Inc. ("W2GI") against

GeoTag, Inc. ("GeoTag").  (*See* D.I. 1.)  Instead of answering the Complaint, GeoTag filed a

Motion to Dismiss Plaintiff's Complaint for Declaratory Judgment, Or, In The Alternative, To

Transfer Venue (D.I. 11.)  W2GI submits this opposition in response to GeoTag's motion.

## II.     SUMMARY OF ARGUMENT

1.      Contrary to Defendant GeoTag's arguments, there is no reason to dismiss or

transfer this first-filed declaratory judgment action.  GeoTag -- a Delaware company -- concedes

that jurisdiction is proper here.  GeoTag further concedes that it knew about W2GI's web locator

technologies prior to W2GI filing this action.  Notwithstanding this knowledge, GeoTag elected

not to sue W2GI in Texas until after W2GI filed this action.  Rather, GeoTag pursued certain

customers of W2GI and customers of other providers such as Microsoft and Google.  GeoTag's

conduct made clear that it targeted W2GI's technology.  Accordingly, W2GI initiated this suit to

resolve the issues between the proper parties--i.e., the provider of the alleged infringing

technology and the patent owner -- rather than allow GeoTag to continue creating a morass of

W2GI's business and customers relations.[1]

2.      W2GI's decision to first-file in Delaware is the "**paramount consideration**" in

determining proper venue.  Where2GetIt had every reason to first-file in this district, including

because this is the corporate home to GeoTag and because this Court is already presiding over

other litigation between GeoTag and the providers of allegedly infringing technology.  Further,

GeoTag cannot properly lay claim to "filing first" by having sued certain customers recently in

Texas as the "customer suit exception" provides a later filed suit brought by a manufacturer --

---

[1]  Microsoft Corp. and Google Inc. filed a similar declaratory judgment action in this District shortly
before this declaratory judgment action was filed because GeoTag sued hundreds of their customers,
but not Microsoft or Google, in the Eastern District of Texas.  (No. 11-cv-00175-SD, D.I. 1).

*i.e.*, this suit -- has priority over an earlier suit filed against that manufacturer's customers -- *i.e.*, GeoTag's pursuit of customers in Texas.

3.      Rather than address the first-file rule, GeoTag instead urges that it was "misled" by W2GI-- despite GeoTag's knowledge of W2GI's technology through its prior suits -- and that W2GI "attempted to gain a tactical advantage" by filing this declaratory judgment action. GeoTag's argument is both laden with factual inaccuracies and irrelevant to whether or not dismissal or transfer is proper here.  For example, W2GI never offered, and GeoTag never agreed to, a "60 day standstill" whereby W2GI promised to refrain from bringing suit; nor has GeoTag ever engaged in licensing negotiations with W2GI for the patent in suit.  As such, GeoTag's assertions that W2GI's complaint was filed to gain a tactical advantage in negotiation fail to provide any basis for dismissal or transfer.  GeoTag's motion to dismiss and/or transfer this action should be denied.

## III.    STATEMENT OF FACTS

### A.    Delaware Company GeoTag Sued Dozens Of W2GI Customers, But Not W2GI.

GeoTag was incorporated in Delaware in July 2010.[2]  Less than six months later -- between December 17 and December 22, 2010 -- GeoTag filed a series of lawsuits in the Eastern District of Texas (the "Customer Lawsuits") alleging that parties (mostly restaurants, retailers and the like) infringe the claims of the '474 patent by using web-mapping and location-based services ("Mapping Services").[3]  The December 2010 Customer Lawsuits were directed at

---

[2] GeoTag recently reported to the SEC that it maintains a staff of three employees in a leased "office" in Plano, Texas for $395 per month.  GeoTag's primary business relates to filing lawsuits and negotiating settlements.  (Case No. 1:11-cv-00175-SD, D.I. #17 at Exh. 5).
[3] E.D. Texas Case Nos. 2:10-cv-00569-TJW, 2:10-cv-00570-TJW, 2:10-cv-00571-TJW, 2:10-cv-00572-TJW, 2:10-cv-00573-TJW-CE, 2:10-cv-00574-DF-CE, 2:10-cv-00575-TJW, 2:10-cv-00587-TJW.

entities who use Mapping Services primarily sourced by providers, such as Microsoft, Google and W2GI.  *Id.*  Yet, incredibly, GeoTag failed to name Google, Microsoft or W2GI in these lawsuits, instead naming mostly customers only.[4]

As GeoTag prepared to file the Customer Lawsuits, it was obvious certain accused Mapping Services were sourced by W2GI and other Mapping Service providers, rather than the customers themselves.  For example, the accused "Find a Store" feature of Michaels Stores' website at the time appeared just as shown below in the highlighted box: "Mapping Locator **Powered by Where 2 Get It**."  (10-cv-00570-TJW, Docket # 1); (Declaration of Manish Patel, at ¶5).



Despite knowing about W2GI, GeoTag did not reach out to W2GI in order to seek a resolution and, once again, had not named W2GI in a lawsuit.  (Patel Decl. at ¶6).[5]

### B.   W2GI Learned About The Customer Lawsuits And Reached Out To GeoTag.

W2GI became aware of the W2GI Customer Lawsuits in or around January 2011 when customers began contacted W2GI seeking indemnification.  (Patel Decl. at ¶6).

---

[4] The Customer Lawsuits have not progressed any further than this case.  Indeed, several weeks after this case was filed, GeoTag filed an amended complaint and several customers have yet to file an answer.  There is no scheduling order in those cases, nor has there been an initial status conference.  Notably, there was a motion to dismiss those actions in favor of proceeding in Delaware filed on June 17, 2011.

[5] GeoTag's counsel also admits in his declaration that he knew about W2GI.  (D.I. 12 at Exh. B at ¶ 2).

On or around February 21, 2011, counsel for W2GI reached out to GeoTag to discuss the litigation approximately two months after GeoTag began its campaign of suing W2GI customers. (D.I. 12 at Exh. B(1)).  Rachel Lamkin, W2GI's prior counsel, hoped to initiate discussions without disclosing W2GI's name to GeoTag for fear of being sued.  *Id.*  What is now obvious from GeoTag's brief is that GeoTag was well-aware of W2GI at this time and still elected not to sue W2GI.  *Id.*

John Edmonds, GeoTag's counsel, responded to Ms. Lamkin asking if W2GI would agree to a standard Rule 408 non-disclosure agreement ("NDA").  (D.I. 12 at Exh. B(2)). Contrary to GeoTag's characterization in its brief, the various drafts of the NDA exchanged between the parties made no mention of a "60 day standstill" agreement, nor did it make any reference whatsoever to an agreement by either party not to sue each other.  (D.I. 12 at 7), Rather as shown in Exhibit 1 of the Declaration of Manish Patel, the NDA merely proposed that "settlement communications" would be maintained in strict confidence.

 On March 8, W2GI's prior counsel sent another email stating that her "client has approved of this NDA.  Let me know when [GeoTag] can."  (D.I. 12 at Exh. B(7)).  Six days passed and GeoTag's counsel did not respond.  GeoTag never pursued any licensing negotiations as a result of these discussions or named W2GI in a lawsuit.

### C.     Having Not Heard Back From GeoTag, W2GI Elected To File A Declaratory Judgment Action In This District.

Around that time, W2GI had become aware that Microsoft and Google filed a Declaratory Judgment Action against GeoTag in this District on March 1, 2011 (the "Microsoft DJ Action").  (Case No. 1:11-cv-00175-SD, Docket # 1); (Patel Decl. at ¶7).  The Microsoft DJ

Action was filed after GeoTag named hundreds of Microsoft and Google customers in the Customer Lawsuits based on the customers' uses of Microsoft and/or Google Mapping Services.[6]

Having not heard back from GeoTag for several days and aware of Microsoft and Google's recent actions, W2GI ultimately elected to file the instant action March 14, 2011 seeking a declaration that the claims of U.S. Patent No. 5,930,474 (the "474 Patent") are invalid and W2GI's customers do not infringe these claims.  (D.I. 1 at p. 6-7).

GeoTag responded by filing another Customer Lawsuit in the Eastern District of Texas lawsuit the next day.  (E.D. Texas Case No. 11-cv-00175-TJW, at D.I. 1).  This particular Customer Lawsuit named W2GI as a defendant, along with 27 other defendants who are mostly customers of W2GI and other Mapping Service providers.  *Id.*

## IV.  ARGUMENT.

### A.   As The First To File, W2GI's Choice Is Entitled to Substantial Deference

The Third Circuit has held clearly and repeatedly that "[i]t is black letter law that a plaintiff's choice of a proper forum is a ***paramount consideration*** in any determination of a transfer request, and that choice should not be lightly disturbed."  *See*, *e.g.*, *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (quotation and citation omitted) (emphasis added).  In other words, W2GI's choice to sue a Delaware corporation, such as GeoTag, in this district carries considerable weight so long as W2GI's choice was "legitimate and rational" – and it was for reasons detailed herein.  *Academisch Ziekenhuis Leide v. Cardiomems, Inc.,* C.A. No. 10-1127, 2011 U.S. Dist. LEXIS 23833 at *3 (D. Del. Mar. 9, 2011) ("a plaintiffs choice of forum should not be disregarded if it poses a rational and legitimate reason for selecting a forum"); *see also Stratos Lightwave, Inc. v. E2O Commc'ns, Inc.*, Civ. A. No. 01-309, 2002 U.S. Dist. LEXIS

---

[6] GeoTag filed a similar motion to dismiss or transfer in the Microsoft DJ action, which Microsoft and Google have opposed.  (Case No. 1:11-cv-00175-SD, D.I. #10)

5653, at *7 (D. Del. Mar. 26, 2002); *Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co.*, Civ. A. No. 06-187, 2006 U.S. Dist. LEXIS 92249, at *5-6 (D. Del. Dec. 21, 2006) ("Nonetheless, the court should not disregard a plaintiff's choice of forum where it has a rational and legitimate reason for choosing the forum.") (*citing Joint Stock Soc'y v. Heublein,* 936 F. Supp. 177, 187 (D. Del. 1996)).

For example, the Microsoft DJ Action was filed in this Court less than two weeks prior to W2GI doing the same.  Accordingly, this Court will address the claim construction and validity issues concerning GeoTag's '474 patent.  Microsoft, Google and W2GI likely will have the same, or highly similar, positions on these issues.  Even the non-infringement issues will likely be the same, or very similar, for these three providers of web locator services.  Accordingly, having this single Court address these issues makes the most effective use of resources.[7]  While W2GI could have properly filed this action any number of fora, W2GI's choice to have this Court address these issues are not only "legitimate and rational" but also the best use of judicial resources.  *Joint Stock*, 936 F. Supp. at 187

Even if the Microsoft DJ Action had not been filed here, there is no reason for the Court to exercise its discretion to decline to hear W2GI's first-filed action.  First, Defendant GeoTag is incorporated in Delaware.  While GeoTag attempts to downplay this fact, the fact remains that GeoTag is a non-practicing entity with three employees -- its choice to incorporate in Delaware weighs heavily on the determination that the Delaware court is a rational and legitimate forum. *Academisch Ziekenhuis Leide*, C.A. No. 10-1127, 2011 U.S. Dist. LEXIS 23833, 2011 WL 864911, at *3 (D. Del. Mar. 9, 2011) ("Courts in this District have concluded that it is rational and legitimate to elect to sue a Delaware corporation in its place of incorporation"); *see also*

---

[7] If the court were so inclined, W2GI would be prepared to consolidate this matter with the Microsoft DJ Action pursuant to Fed. R. Civ. P. 42(a).

*Marvell Int'l Ltd. v. Link_A_Media Devices Corp.*, Civ. No. 10-869-SLR, 2011 U.S. Dist.

LEXIS 60798 at *6 (D. Del. June 8, 2011)("The court reiterates that, because LAMD is a

Delaware corporation, it has no reason to complain about being sued in Delaware.").[8]  In

addition to Delaware being the corporate home of GeoTag, to the extent acts of infringement are

occurring through Mapping Services provided to retailers' websites, those acts are occurring in

Delaware in the same way they occur in other jurisdictions, such as Texas.

GeoTag contends the weight that would normally be accorded to W2GI's choice of

Delaware is reduced because W2GI does not appear to have any offices or employees in

Delaware.  (D.I. 12 at 8).  This argument is flawed.  A plaintiff need not choose its "home turf"

in order for venue to be appropriate.  *See Critikon, Inc. v. Becton Dickinson Vascular Access,

Inc.*, 821 F. Supp. 962, 965 (D. Del. 1993) ("While transfer of a case is generally regarded as less

convenient to a plaintiff if the plaintiff has not chosen its 'home turf' . . . the plaintiff's choice of

forum is still a paramount consideration, and the burden remains at all times on the defendants to

show that the balance of convenience and the interests of justice weigh strongly in favor of

transfer.") (citations and quotations omitted).

### B.    W2GI Was Not The First To File Based On Any Misleading Conduct, As GeoTag Contends.

GeoTag also contends W2GI was the first to file only because W2GI purportedly

"misled" and "lulled GeoTag into a 60 day standstill."  (D.I. 12 at 5, 7).  However, contrary to

GeoTag's contentions, W2GI never offered, and GeoTag never agreed to, a "60 day standstill,"

whereby W2GI promised to refrain from bringing suit.  At most, W2GI counsel emailed GeoTag

offering to reveal her client's name in exchange for GeoTag agreeing "not to sue [W2GI] for

some short period of time while [the parties] negotiate, say 60 days?"  (D.I. 12 at Exh. B(5)).  As

---

[8] Copies of unpublished opinions are attached as Exhibit A, hereto.

described in the Statement of Facts, none of GeoTag's exhibits show GeoTag accepted her offer or that the parties reached any such agreement.

GeoTag's reliance on *Brower v. Flint Ink Corp.*, 865 F. Supp. 564, 569 (N.D. Iowa 1994) to support its argument that the Court should disregard W2GI's first filer status and use its discretion to dismiss or transfer is also misplaced.  (D.I. 12 at 5).  In *Brower*, the court actually found "**no evidence of any agreement to delay filing of any legal actions** in order to pursue settlement." *Id.* at 569.  Having found no other "compelling circumstances" to depart from the first-filed rule, the *Brower* court ultimately denied the defendant's motion to transfer.  *Id.* at 573-574.  Similarly, W2GI and GeoTag never agreed to delay filing a legal action, and the court has no reason to exercise its discretion to dismiss or transfer this case.

### C.     W2GI's Negotiations With GeoTag Are Completely Irrelevant To Whether Or Not Dismissal Or Transfer Is Proper Here.

This leaves GeoTag to argue that this Court should grant its motion because "W2GI improperly sought to use this action as leverage in negotiations with GeoTag."  In making this argument GeoTag asserts that *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 815 (Fed. Cir. 1996) is "directly on point" with the present case.  (D.I. 12 at 6).  Yet, GeoTag overlooks that W2GI's situation in this case is much more dire than the declaratory judgment plaintiff's situation in *EMC Corp.*  In *EMC Corp.*, the declaratory judgment plaintiff faced no customer lawsuits or indemnification obligations at the time it elected to file its declaratory judgment complaint; nor had the patentee initiated any litigation.  Accordingly, the patentee faced no "litigation costs [or] risk of adverse rulings that might render their patents less valuable." *EMC Corp.*, at 810.  On these facts, the *EMC Corp.* court agreed that the declaratory judgment action may have allowed EMC to obtain an unfair advantage by forcing the patentee to face these risks.  *Id.* at 815.

8

The circumstances surrounding W2GI's declaratory judgment filing in this case are wholly distinguishable from *EMC Corp.*  W2GI filed this action before GeoTag sued it, but only after it faced **five** Customer Lawsuits where more than 20 different users of W2GI's Mapping Services had already, or would soon be, seeking W2GI's indemnification.  (Patel Decl. at ¶6).  Moreover, unlike *EMC Corp.*, GeoTag's filing of the instant lawsuit caused no substantial change in GeoTag's bargaining position.  At the time this action was initiated, GeoTag had already brought its own patent into at least 11 lawsuits, 10 of which were pending at the time (although none has progressed even beyond motion to dismiss status).  As such, GeoTag already had faced risks associated with litigation costs and the potential of adverse rulings.  For these reasons, *EMC Corp*. provides no basis for dismissing/staying the action.

**D.     GeoTag Has Failed To Demonstrate Any Remaining Factors Weigh Enough In Favor Of Transfer To Overcome The First-Filer Presumption.**

The remaining inquiry focuses on whether or not GeoTag has shown that any remaining factors weigh **strongly** in favor of transfer -- enough to overcome W2G2's (the plaintiff and first filer's) choice of forum.  *See Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 821 F. Supp. 962, 965 (D. Del. 1993). These factors weigh in W2GI's favor for reasons detailed below.

A district court's power to transfer civil action is governed by 28 U.S.C. § 1404(a).  "[T]he burden of establishing the need to transfer rests with the movant to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Cisco Systems Inc. v. GPNE Corp.*, Civ. No. 07-671-SLR, 2008 U.S. Dist. LEXIS 31877 at *3-*4 (D. Del. Apr. 17, 2008) (quotations  and citations omitted); *Boston Scientific Corp. v. Johnson & Johnson Inc.*, 532 F. Supp. 2d 648, 654 (D. Del. 2008).  A case should not be transferred unless the balance **strongly** supports a transfer.  *Cisco*, 2008 U.S. Dist. LEXIS 31877 at *4.

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason.  *C.R. Bard, Inc. v. Guidant*

9

> *Corp.*, 997 F. Supp. 556, 562 (D. Del. 1998); *Cypress Semiconductor Corp.*
> *v. Integrated Circuit Systems, Inc.*, No. Civ. A. 01- 199, 2001 U.S. Dist. LEXIS
> 20803, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001); *Continental Cas. Co.*
> *v. American Home Assurance Co.*, 61 F. Supp. 2d 128, 131 (D. Del. 1999).
> Although transfer of an action is usually considered as less inconvenient to a
> plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the
> alleged wrongful activity occurred, the plaintiff's choice of forum is still of
> paramount consideration, and the burden remains at all times on the defendants to
> show that the balance of convenience and the interests of justice weigh strongly in
> favor of transfer." *In re M.L. Lee Acquisition Fund II, L.P.*, 816 F.2d F.Supp.
> 973, 976 (D. Del. 1993).

*Id.* at *4.

The Third Circuit Court of Appeals identified a series of private and public interest

factors to consider when deciding on a motion to transfer. *Jumara v. State Farm Ins.*, Co.,

55 F.3d 873, 879 (3d Cir. 1995). The private interest factors include: [1] plaintiff's forum

preference as manifested in the original choice; [2] defendant's preference; [3] whether the claim

arose elsewhere; [4] convenience of the parties as indicated by their relative physical and

financial condition; [5] convenience of the witnesses; and [6] location of books and records. *Id.*

The public interest factors include: [1] enforceability of the judgment; [2] practical

considerations that could make the trial easy, expeditious, or inexpensive; [3] relative

administrative difficulty in the two fora resulting from court congestion; [4] local interest in

deciding local controversies at home; [5] public policies of the fora; and [6] familiarity of the

trial judge with the applicable state law in diversity cases. *Id.* at 879-80 (citations omitted).

Courts will deny motions to transfer "if the factors are evenly balanced or weigh only

slightly in favor of the transfer." *ICU Med., Inc. v. Rymed Technologies, Inc.*, Civil Action

No. 07-468-JJF, 2008 U.S. Dist. LEXIS 4983 at *6 (D. Del. Jan. 22, 2008). In addition, "[t]here

is nothing . . . in the language or policy of § 1404(a) to justify its use by defendants to defeat the

advantages accruing to W2GI who have chosen a forum which, although it was inconvenient,

was a proper venue." *Van Dusen v. Barrack*, 376 U.S. 612, 633-34 (1964).

## 1.    GeoTag's Preference Carries Little, If Any, Weight.

GeoTag prefers these issues be litigated in the Eastern District of Texas because that is the venue GeoTag chose when it sued W2GI's customers.  (D.I. 12 at 8).  Yet, the weight, if any, that would be accorded to GeoTag's choice, is diminished based on the customer suit exception, which dictates that the lawsuit focusing on the real party – i.e. the manufacturer or supplier -- takes jurisdictional precedence over the lawsuit involving the manufacturer or supplier's customers.[9]  *Ricoh Co.  v.  Aeroflex, Inc.*, 279 F.  Supp.  2d 554, 557 (D.  Del.  2003).

Under the "customer suit exception" a court may dismiss, stay or transfer a customer lawsuit, even if it was filed before a subsequent declaratory judgment action by the manufacturer or supplier. *See, e.g., Katz v.  Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed.  Cir.  1990) (affirming district court's injunction precluding plaintiff from proceeding in parallel suit against customer—"litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer"); *Ricoh Co. v.  Aeroflex, Inc.*, 279 F.  Supp.  2d 554, 557 (D.  Del.  2003) ( "[A] manufacturer's declaratory judgment suit should be given preference over a patentee's suit against the manufacturer's customers when those customers are being sued for their ordinary use of the manufacturer's products.").

The courts recognize that such a rule is necessary to prevent the harassment of customers who do not have the motivation or resources to vigorously defend the case.  *Honeywell Int'l Inc. v.  Audiovox Commc'n Corp.*, No.  CIV.  A.  04-1337-KAJ, 2005 WL 2465898, at *3 (D.  Del. May 18, 2005) ("dealing with the manufacturers first is the fairest and most efficient way to

---

[9] The "customer suit" exception is also explained in detail in Microsoft's response to GeoTag's Motion To Dismiss and in a Motion to Dismiss the Customer Lawsuits in Texas.  (Case No. 11-cv-00175-SD, D.I. # 14) (Microsoft brief ); E.D. Texas Case No. 1:11-cv-00175-SD, D.I. # 14 (Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, to Transfer).

proceed").  Thus, GeoTag's choice to sue W2GI customers in the E.D. Texas carries little or no weight based on the customer suit exception.

### 2.   GeoTag's Contention That The Claims Arose In Texas Is Without Merit.

GeoTag contends that W2GI's claims arose in Texas, not Delaware, because GeoTag chose to sue W2GI's customers in Texas.  Yet, GeoTag understates this forum's significant relationship to this case.  *ICU Med., Inc. v. Rymed Techs., Inc.*, 2008 U.S. Dist. LEXIS 4983 (D. Del. Jan. 22, 2008) ("rights determined in patent cases are national in scope").  Thus, W2GI's declaratory judgment claims "arose" in Delaware to the same extent they "arose" in Texas.

### 3.   The Remaining Private Interest Factors Do Not Strongly Favor Transfer.

The remaining private interest factors are directed to convenience issues such as convenience of the parties and witnesses and the location of relevant evidence.  GeoTag has failed to show these factors favor transfer at all, much less "strongly" favor transfer, as required. With regard to the convenience factors, this court has explained:

> [T]he conveniences of modem travel and communication technology have made it more difficult to argue that litigating in a particular forum is inconvenient for the parties and witnesses. Therefore, to meet its burden Broadcom must establish that litigating this case in Delaware will pose a **'unique or unusual burden' on [its] business operations**…. It has not done so.

*Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 706 (D. Del. 2001) (internal citations and quotations omitted) (emphasis added).

GeoTag identified only one potential Texas witness by name, John Veenstra.  (D.I. 12 at 10).  Mr. Veenstra is one of the three named inventors on the '474 patent and is GeoTag's CEO. Yet, party officers, such as Mr. Veenstra, "are presumed willing to testify at trial and thus, are not part of the analysis of this factor." *Carl Zeiss Meditec, Inc. v. Optovue, Inc.*,  2011 WL 1419714, at *3 (D. Del. April 13, 2011).  Besides, Mr.  Veenstra is not the only witness involved

in this case.  Other relevant witnesses are likely to be key W2GI employees and the two other inventors, each of whom live and work in California or Illinois -- locations for which Texas would be no more convenient compared to Delaware.  *See* Case No. 1:11-cv-00175-SD, Docket #14, at 16-17.[10]

GeoTag argues that the Eastern District of Texas is more convenient because Texas is closer to W2GI's California witnesses.  (D.I. 12 at 10).  Convenience, however, is based on the convenience of travel itself, rather than pure distance.  *See Albert Fadem Trust v.  Duke Energy Corp.*, 214 F.  Supp.  2d 341, 344 (S.D.N.Y.  2002) (denying motion to transfer for reasons among which frequency of flights between major cities is one); *Upjohn Co.  v.  Riahom Corp.*, No.  CIV.  A.  86-203 CMW, 1986 WL 7515 (D.  Del.  June 25, 1986) (denying transfer from District of Delaware to Southern District of New York based in part upon short, 45-minute travel from Philadelphia International Airport to Wilmington, Delaware in comparison to the often "**notoriously time-consuming**" ground transport between New York area airports and Manhattan) (emphasis added).

Total travel time between California and Marshall Texas is comparable to total travel time between California and Delaware because Marshall is a three hour drive from Dallas-Ft. Worth airport, the nearest airport with frequent flights.  In contrast, there are numerous daily flights between California and Philadelphia airports, which is only about 22 miles from Wilmington.  *Upjohn Co.*, 1986 WL 7515 at *1-2.

GeoTag also argues that the location of records favors transfer because its company documents reside in Frisco, Texas.  (D.I. 12 at 10).  Yet the physical location of documents

---

[10] Microsoft and Google further assert that this Court is also more convenient for witnesses familiar with invalidating prior art because certain key third party prior art witness live in Maine and Massachusetts.  (Case No. 1:11-cv-00175-SD, D.I. #14, at 16-17).

should not be determinative given the nature of how documents are typically collected and produced. *Cypress Semiconductor Corp.*, 2001 WL 1617186, at *4 ("[r]egardless of where the trial is held, the documents will be copied and mailed to the offices of counsel and subsequently transported to trial.") (internal quotations omitted). As this Court has recently explained: "technological advances of recent years have significantly reduced the weight of this factor in the Court's analysis, because they have substantially reduc[ed] the burden of litigating in a distant forum." *ICU Med.*, 2008 U.S. Dist. LEXIS 4983 at *9-*10 (internal quotations omitted). In addition, GeoTag failed to describe the types of documents it has and why these documents would be easier to collect and transport if this lawsuit were located in Marshall. As such GeoTag has not established this factor weighs strongly in favor of transfer.

### 4.     The Public Interest Factors Weigh In Favor Of Denying Transfer.

GeoTag purports to cite reasons why certain public interest factors weigh in favor of transfer. Yet, GeoTag failed to make a showing these public interest factors weigh in favor of a transfer at all, let alone weigh strongly in GeoTag's favor.

In discussing the public interest factors, GeoTag leads off by contending (without support or authority) W2GI would have an easier time enforcing judgment against GeoTag in Texas rather than in Delaware. (D.I. 12 at 11). GeoTag is incorrect. In this case, W2GI seeks a declaration that that the claims of the '474 Patent are invalid and that W2GI's customers do not infringe these claims. Yet, both districts have equal power to declare patent claims invalid. In other words, a claim found invalid by this court, would still be considered invalid in any other jurisdiction. See generally, *ICU Med.*, 2008 U.S. Dist. LEXIS at *4-5. The same goes for a noninfringement finding, as a particular noninfringement finding has the same legal effect, regardless which district court entered the finding. *Id.*

14

GeoTag continues by arguing judicial efficiency weighs in favor of transfer because the Eastern District of Texas previously had a 2006 lawsuit involving the '474 patent, which settled before trial.  Yet, GeoTag fails to explain how the Eastern District of Texas' experience -- based on one case from several years ago -- would make any difference with regard to the efficiency of the Customer Lawsuits, which have swelled to 11 different lawsuits involving almost 400 defendants.  In other words, because of their size, the Customer Lawsuits are likely to be inefficient -- particularly compared to this action involving only two parties -- no matter how much experience the Eastern District of Texas may have regarding the '474 patent.  Moreover, the Customer Lawsuits are still in their initial stages.

A transfer would result in combining the instant action with the Customer Lawsuits, would not advance principles of justice because, by GeoTag's design, the number of defendants in the Customer Lawsuits has swollen to almost 400.  Attempting to coordinate with almost 400 defendants would be extremely difficult, at the very least.  Allowing this case to proceed in this District, however, perhaps consolidated with the Microsoft DJ Action, presents a much more manageable option, as the litigation would be slimmed down to include only the key players and issues.  As one Court explained:

> It is impracticable to try an infringement case against 40 some defendants or third-party defendants with many different accused devices, and it is unwise to attempt any such thing when liability depends exclusively upon infringement being found as to an LCD component that the defendants do not manufacture and when at least some of the manufacturers of the LCDs are before the court and are willing to stand behind their products in this litigation.

*Honeywell Int'l Inc.*, 2005 WL 2465898, at *3.

* * * *

Thus, GeoTag has fallen well short of showing any remaining factors weigh strong enough in its favor to overcome the burden associated with W2G2's (the plaintiff and first filer's) choice of forum.

## V.    CONCLUSION

For the foregoing reasons, GeoTag's motion should be denied.

Dated:  June 20, 2011

Of Counsel:

Daniel J. Schwartz
    dschwartz@seyfarth.com
Joseph R. Lanser
    jlanser@seyfarth.com
Matthew A. Werber
    mwerber@seyfarth.com
Seyfarth Shaw LLP
131 South Dearborn Street, Suite 2400
Chicago, IL 60603
(312) 460-5000

STAMOULIS & WEINBLATT LLC

*/s/ Richard C. Weinblatt*
Stamatios Stamoulis #4606
    stamoulis@swdelaw.com
Richard C. Weinblatt #5080
    weinblatt@swdelaw.com
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone:  (302) 999-1540

*Attorneys for Where 2 Get It, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 20, 2011, I electronically filed the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to the registered participants of the ECF System as listed in the Court's Notice of Electronic Filing.

*/s/ Richard C. Weinblatt*
Richard C. Weinblatt #5080