# EXHIBIT A

# Exhibit 1



**ACADEMISCH ZIEKENHUIS LEIDE d/b/a/ LEIDEN UNIVERSITY MEDICAL CENTRE, Plaintiff, v. CARDIOMEMS, INC, Defendant.**

**CIVIL ACTION No. 10-1127**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2011 U.S. Dist. LEXIS 23833*

**March 9, 2011, Decided**
**March 9, 2011, Filed**

**COUNSEL:** [*1] For Academisch Ziekenhuis Leiden, a Dutch public entity doing business as Leiden University Medical Centre, Plaintiff: John W. Shaw, LEAD ATTORNEY, Monte Terrell Squire, Young, Conaway, Stargatt & Taylor, Wilmington, DE; Edgar R. Cataxinos, H. Dickson Burton, PRO HAC VICE.

For CardioMEMS Inc., a Delaware corporation, Defendant: Beth Moskow-Schnoll, LEAD ATTORNEY, Ballard Spahr LLP, Wilmington, DE.

**JUDGES:** Berle M. Schiller, J.

**OPINION BY:** Berle M. Schiller

**OPINION**

**MEMORANDUM**

**Schiller, J.**

Plaintiff, Leiden University Medical Centre, is an academic hospital organized and existing under the law of the Netherlands. It filed this lawsuit in the District of Delaware, arguing that CardioMEMS, Inc. is infringing its method patent for using a miniaturized pressure sensor with a transponder. CardioMEMS has filed a motion to transfer venue to the Northern District of Georgia, where its headquarters and principal place of business are located. For the reasons provided below, Defendant's motion is denied.

**I. BACKGROUND**

Plaintiff Academisch Ziekenhuis Leiden, a Dutch entity doing business as Leiden University Medical Centre ("LUMC") sued CardioMEMS, Inc., alleging that Defendant infringed its patent. LUMC is the assignee of *United States Patent 6,159,156 ("the '156 Patent")* [*2] which protects "a method for using a miniaturized pressure sensor and transponder attached thereto, comprising introducing said miniaturized pressure sensor and transponder into an aneurysmal sac of a human or animal." (Compl. ¶¶ 8-9.) The *'156 Patent* also includes a claim "further comprising introducing said miniaturized pressure sensor and transponder into said aneurysmal sac with a catheter." (*Id.* ¶ 9.) According to LUMC, CardioMEMS makes a device known as the EndoSure® Wireless AAA Pressure Measurement System. (*Id.* ¶ 10.) LUMC asserts that CardioMEMS's product infringes the *'156 Patent* by, among other things, "introducing [a] miniaturized pressure sensor and transponder into an aneurysmal sac of a human" and "introducing said miniaturized pressure sensor and transponder into said aneurysmal sac with a catheter." (*Id.* ¶¶ 14-15, 18-19.)

CardioMEMS is incorporated in Delaware with its headquarters and principal place of business in Atlanta, Georgia. (CardioMEMS's Mot. to Transfer Venue Ex. A [Bauer Decl.] ¶ 3.) It does not maintain an office in Delaware, nor does it have any employees, documents, or data repositories in Delaware. (*Id.* ¶ 4.) Most of CardioMEMS's employees live in the [*3] Atlanta area and most of its business activities occur in Georgia. (*Id.* ¶¶ 5, 8.) The design and development of the allegedly infringing product took place in Georgia. (*Id.* ¶ 7.) CardioMEMS also developed its instructions and training materials in Georgia and trains all of its sales and clinical representatives there. (*Id.* ¶ 14.) Furthermore, CardioMEMS has had more than 400 customers for its system, only one of which operates in Delaware. (*Id.* ¶ 11.)

**II. STANDARD OF REVIEW**

A patent infringement lawsuit may be filed "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *28 U.S.C. § 1400(b)*.

Pursuant to *28 U.S.C. § 1404(a)*, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The trial court possesses broad discretion in this matter. *Solomon v. Cont'l Am. Life Ins. Co., 472 F.2d 1043, 1045 (3d Cir.1973)*; *see also Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)*. The defendant, as the moving party, bears the burden of proving that venue [*4] is proper in the transferee district and that a transfer is appropriate. *Lindley v. Caterpillar, Inc., 93 F.Supp.2d 615, 617 (E.D. Pa. 2000)*; *see also Shutte v. ARMCO Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)*; *Idasetima v. Wabash Metal Prods., Inc., Civ. A. No. 01-197, 2001 U.S. Dist. LEXIS 19726, 2001 WL 1526270, at *1 (E.D. Pa. Nov. 29, 2001)*. A defendant bears a heavy burden of showing the need for a transfer. *See Bering Diagnostics GmbH v. Biosite Diagnostics, Civ. A. No. 97-501, 1998 U.S. Dist. LEXIS 531, at *7 (D. Del. Jan. 6, 1998)*; *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 821 F. Supp. 962, 964 (D. Del. 1993)* ("[T]ransfer will be denied if the factors are evenly balanced or weigh only slightly in favor of transfer.").

## III. DISCUSSION

### A. Proper Venue

This Court must first determine whether the Northern District of Georgia is a proper venue for this litigation. As noted previously, a patent infringement lawsuit may be brought where the defendant resides or where the defendant has committed acts of infringement and has a regular and established place of business. CardioMEMS is headquartered and has its principal place of business in Atlanta, which is located in the Northern District of Georgia. [*5] Because this case presents a federal question over which a federal district court has subject matter jurisdiction and the Northern District of Georgia clearly has personal jurisdiction over Defendant, it would be a proper venue for this action.

### B. *Jumara* Factors

The Third Circuit has enumerated a number of private and public factors that a district court should consider when deciding a motion to transfer venue under *§ 1404(a)*. *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)*. The private factors include: the plaintiff's forum preference; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties, as indicated by their relative physical and financial conditions; the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the locations of books and records, to the extent those materials can only be produced in the alternative forum. *Id.* The public factors include: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; [*6] the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. *Id. at 879-80.*

#### 1. Private factors

As a general matter, the plaintiff's choice of forum is entitled to great weight and should not be lightly disturbed. *Shutte, 431 F.2d at 25*; *see also Illumina, Inc. v. Complete Genomics, Inc., Civ. A. No. 10-649, 2010 U.S. Dist. LEXIS 119296, 2010 WL 4818083, at *2 (D. Del. Nov. 9, 2010)*. CardioMEMS suggests, however, that LUMC's choice of forum should receive no deference because it has elected to litigate outside of its "home turf." (CardioMEMS's Opening Br. in Supp. of Mot. to Transfer Venue [CardioMEMS's Br. at 8-9.) CardioMEMS also claims that "LUMC has no reason to choose Delaware," and thus its choice of this District should be afforded no weight. (*Id.* at 8.)

Defendant is correct that, as a general matter, when a plaintiff is not a resident of its chosen forum and the incident giving rise to plaintiff's claim did not occur in its chosen forum, its choice of forum is entitled to less weight. *See Zenith Prods. Corp. v. Design Home Solutions, LLC, Civ. A. No. 10-148, 2010 U.S. Dist. LEXIS 51978, 2010 WL 2136569, at *2 (E.D. Pa. May 24, 2010)*; [*7] *see also Downing v. Globe Direct LLC, Civ. A. No. 09-693, 2010 U.S. Dist. LEXIS 60733, 2010 WL 2560054, at *3 (D. Del. June 18, 2010)*; *Mekiki Co. v. Facebook, Inc., Civ. A. No. 09-745, 2010 U.S. Dist. LEXIS 55638, 2010 WL 2348740, at *3 (D. Del. June 7, 2010)*.

CardioMEMS has overstated its case, however. LUMC is a Dutch company and has no "home turf" in this country. Defendant's argument, taken to its logical conclusion, would never afford deference to the choice of venue of a foreign plaintiff and leave the choice of venue largely in the control of the defendant. Additionally, it is not correct that LUMC has no reason to litigate this action here. First, CardioMEMS is incorporated in Delaware. *See Mallinckrodt, Inc. v. E-Z-Em, Inc., 670 F. Supp. 2d 349, 357 (D. Del. 2009)*; *Critikon, 821 F. Supp. at 965* ("By incorporating in Delaware, it can be assumed that [the defendant] desired the benefits it believed

Delaware provides to chartered corporations. [The defendant] chose Delaware as its legal home and should not now complain that another corporation has decided to sue [the defendant] in Delaware."); *Textron Innovations, Inc. v. Toro Co., Civ. A. No. 05-486, 2005 U.S. Dist. LEXIS 23561, at *5 (D. Del. Oct. 14, 2005)*; *Turn of the Century Solution, L.P. v. Int'l Rectifier Corp., 05-816, 2006 U.S. Dist. LEXIS 39893, at *7 (D. Del. June 15, 2006)* [*8] ("Defendant's complaints about litigating here are outweighed by the fact that [it] has enjoyed the benefits and protections of incorporation in Delaware and that the state has an interest in litigation regarding companies incorporated within its jurisdiction."). Courts in this District have concluded that it is rational and legitimate to elect to sue a Delaware corporation in its place of incorporation and that a plaintiff's choice of forum should not be disregarded if it poses a rational and legitimate reason for selecting a forum. *See, e.g., Stratos Lightwave, Inc. v. E2O Commc'ns, Inc., Civ. A. No. 01-309, 2002 U.S. Dist. LEXIS 5653, at *7 (D. Del. Mar. 26, 2002)*; *Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co., Civ. A. No. 06-187, 2006 U.S. Dist. LEXIS 92249, at *5-6 (D. Del. Dec. 21, 2006)* ("Nonetheless, the court should not disregard a plaintiff's choice of forum where it has a rational and legitimate reason for choosing the forum.") (citing *Joint Stock Soc'y v. Heublein, 936 F. Supp. 177, 187 (D. Del. 1996)*); *Textron Innovations, 2005 U.S. Dist. LEXIS 23561, at *4-5* (affording [*9] less weight to plaintiff's choice of forum because it did not sue on home turf but refusing to disregard choice because it was rational and legitimate to sue Delaware corporation in Delaware.)

Second, Defendant does have a customer that operates in Delaware, an indication that at least a small portion of infringement may be occurring in Delaware. Third, Plaintiff may have made a strategic decision to litigate outside of Defendant's home turf in an effort to avoid any attendant advantages that CardioMEMS might gain.

Nonetheless, a defendant's incorporation in Delaware does not preclude transfer from this District. *See APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc., 295 F. Supp. 2d 393, 398-99 (D. Del. 2002)*. While LUMC's decision to sue in Delaware is entitled to diminished deference, the Court will not ignore that decision.

As for the convenience of the parties, CardioMEMS contends that the vast majority of its business activities occur in Atlanta and that the design and development of the alleged infringing product took place in Atlanta. Thus, relevant witnesses and documents will be found in the Northern District of Georgia. CardioMEMS also points out Plaintiff brought an inducement [*10] claim against it and that the relevant marketing materials and instructions to customers will be found in Georgia, not in

Delaware. (CardioMEMS's Br. at 10-11.) But CardioMEMS has not put forward evidence that litigating in Delaware would present an undue burden. *See Trilegiant Loyalty Solutions, Inc. v. Martiz, Inc., Civ. A. No. 04-360, 2005 U.S. Dist. LEXIS 2825, at *6-7 (D. Del. Feb. 15, 2005)*. The fact that CardioMEMS would prefer to have its employees testify in Georgia rather than Delaware does not warrant transfer. CardioMEMS does not carry its burden because it finds itself as a defendant litigating away from its principal place of business. Thus, while CardioMEMS would prefer to litigate this case in its backyard, there is no evidence that it would present a financial burden or even a great disruption to the company. This factor is neutral.

Because party witnesses can be compelled to attend trial, the convenience of witnesses is only relevant "to the extent that the witnesses may actually be unavailable for trial in one fora." *Jumara, 55 F.3d at 879*; *Sunds Defibrator, Inc. v. Durametal Corp., Civ. A. No. 96-483, 1997 U.S. Dist. LEXIS 1859, at *9-10 (D. Del. Jan. 31, 1997)* ("[W]hile [*11] convenience of the witnesses is a factor, it is important only to the extent the witnesses would be unavailable for trial in one of the fora. Each party is able to procure the attendance of its own employees for trial."). CardioMEMS points to employees and staff who live and work in the Northern District of Georgia to support its position. (Bauer Decl. ¶¶ 8-10, 14.) These individuals are irrelevant to the analysis. While CardioMEMS notes that non-employee physicians decide whether to use the allegedly infringing system, it fails to indicate that these physicians will need to testify, let alone whether any of them are unavailable in Delaware.

Similarly, the location of evidence should only be considered to the extent such books and records could not be produced in the alternative forum. *Jumara, 55 F.3d at 879*. Defendant does not argue that it would be unable to produce certain records or documents in Delaware.

Therefore, the convenience of witnesses and location of evidence factors weight against transfer.

*2. Public factors*

CardioMEMS suggests two public factors play a role in this litigation: (1) the practical considerations that could make the trial easy, expeditious, or inexpensive; [*12] and (2) the interest in deciding local disputes at home.

As to the practical considerations, Defendant relies on its earlier arguments related to the private factors to argue that this litigation will be easier, more expeditious and inexpensive to try in Georgia than in Delaware. (CardioMEMS's Br. at 13.) Plaintiff retorts that Delaware

has more flexible local rules than the Northern District of Georgia and that the District of Delaware "is also highly experienced in handling patent infringement litigation, and the magistrate judge is skilled in managing patent cases and even settling patent cases informally." (LUMC Br. in Opp'n to Def.'s Mot. to Transfer at 15.)

The public factors are neutral. While it may be less costly for Defendant to try this matter in Georgia, Defendant has not put forth any argument that proceeding in Delaware would present a financial hardship. Furthermore, discovery can proceed in this District with minimal inconvenience thanks to the ease of sending materials electronically. *See CNH Am., LLC v. Kinzenbaw, Civ. A. No. 08-945, 2009 U.S. Dist. LEXIS 105312, at *9-10 (D. Del. Nov. 9, 2009).* And this Court trusts that the parties can reach agreement on the location [*13] of depositions of employees located in Georgia, as well as the inventor, who is in the Netherlands.

As to deciding local disputes at home, this is a patent infringement case and thus does not implicate local concerns. *See Illumina, 2010 U.S. Dist. LEXIS 119296, 2010 WL 4818083, at *5; Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 207 (D. Del. 1998); Stratos, 2002 U.S. Dist. LEXIS 5653, at *8* ("Patent rights are not local or state matters and therefore cannot give rise to a local controversy, or implicate local public policy."). Additionally, because this is a patent infringement case, the Court disagrees with Defendant's contention that the work and reputations of its employees are at stake and therefore this litigation implicates local interests. It does not.

**IV. CONCLUSION**

Defendant has failed to sustain its burden to show that the *Jumara* factors warrant transfer to the Northern District of Georgia. The case will remain in the District of Delaware. CardioMEMS's motion is denied. An Order consistent with this Memorandum will be docketed separately.



**AUTOMOTIVE TECHNOLOGIES INT'L, INC., Plaintiff, v. AMERICAN HONDA MOTOR CO., INC., ET AL, Defendants.**

**Civil Action No. 06-187 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2006 U.S. Dist. LEXIS 92249*

**December 21, 2006, Decided**

**SUBSEQUENT HISTORY:** Motion denied by *Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co., 2009 U.S. Dist. LEXIS 85156 (D. Del., Sept. 15, 2009)*

**COUNSEL:** [*1] For Automotive Technologies International Inc., Plaintiff: Richard K. Herrmann, LEAD ATTORNEY, Morris James LLP, Wilmington, DE.

For American Honda Motor Company, a California corporation, Elesys North America Inc., a Georgia corporation, Defendants: Thomas C. Grimm, LEAD ATTORNEY, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For General Motors Corporation, a Delaware corporation, Defendant: Thomas C. Grimm, LEAD ATTORNEY, Morris, Nichols, Arsht & Tunnell, Wilmington, DE; Timothy Q. Delaney, Pro Hac Vice.

For TS Tech USA Corporation, Defendant: Benjamin J. Schladweiler, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, United States District Judge.

**OPINION BY:** Gregory M. Sleet

**OPINION**

**MEMORANDUM**

**I. INTRODUCTION**

On March 17, 2006, the plaintiff, Automotive Technologies International, Inc. ("ATI") filed the above-captioned action against American Honda Motor Company ("Honda"), Elesys North America Inc. ("Elesys"), and General Motors Corporation ("GM"), (collectively the "Defendants"), alleging infringement of *United States Patent Nos. 5,901,978*; *6,242,701*; *6,325,414*; *6,397,136*; *6,422,595*; *6,869,100*; *6,757,602*; *6,712,387*; *6,942,248*; [*2] *6,950,022*; and *6,958,451*, which are generally related to technology in automobile seats. On May 3, 2006, ATI filed a First Amended Complaint, adding two additional patents, *U.S. Patent Nos. 6,484,080* and *6,850,824*, and withdrawing one of the previously asserted patents, *U.S. Patent No. 6,950,022*.

On June 16, 2006, ATI filed a separate action, C.A. No. 06-391, against Hyundai Motor America ("Hyundai"), BMW of North America LLC ("BMWNA"), and Kia Motors America Inc. ("Kia"). Ten of the 12 asserted patents in the above-captioned action are asserted in ATI's suit against Defendants Hyundai, BMWNA and Kia. Presently before the court are motions to transfer this action, and the related action, to the Eastern District of Michigan, pursuant to *28 U.S.C. § 1404(a)*. For the following reasons, the court will deny the motion.

**II. DISCUSSION**

Pursuant to *Section 1404(a)*, the court may transfer a civil action "for the convenience of parties and witnesses, in the interest of justice, . . . to any other district . . . where it might have been brought." *28 U.S.C. § 1404(a)*. It is the movant's burden to establish the need to transfer, and "the [*3] plaintiff's choice of venue [will] not be lightly disturbed." *Truth Hardware corp. v. Ashland Prods., Inc.,* No. C.A. 02-1541 GMS, 2003 WL 118005, at *1 (quoting *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995)). In other words, "unless the balance of convenience strongly favors a transfer in favor of defendant, the plaintiff's choice of forum should

prevail." *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).*

When considering a motion to transfer, the court must determine "whether on balance the litigation would more conveniently proceed and the interest of justice would be better served by transfer to a different forum." *Jumara, 55 F3d. at 879.* This inquiry requires "a multi-factor balancing test," embracing not only the statutory criteria of convenience of the parties and the witnesses and the interest of justice, but all relevant factors, including certain private and public interests. *Id. at 875.* These private interests include the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties; the convenience of the expected witnesses; [*4] and the location of books and records, to the extent that they could not be produced in the alternative forum. [1] *Id at 879.* Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id. at 879-80.*

> 1   The first three of these private interest factors collapse into other portions of the *Jumara* analysis. Thus, the court will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192 (D. Del. 1998).*

As an initial matter, the court notes that it will afford less deference to ATI's choice of Delaware as a forum because it is not its "home turf," or principal place of business. *See Waste Distillation Tech., Inc. v. Pan Am. Res., Inc., 775 F. Supp. 759, 764 (D. Del. 1991).* [*5] Nonetheless, the court should not disregard a plaintiff's choice of forum where it has a rational and legitimate reason for choosing the forum. *See Joint Stock Soc'y v. Heublein, Inc., 936 F. Supp. 177, 187 (D. Del. 1996).* With these principles in mind, after consideration of the relevant factors, the court finds that the Defendants have not met their burden of demonstrating that transfer is appropriate.

In the present case, ATI submits the following rationale for suing the Defendants in Delaware: "ATI, and at least one of the Defendants are incorporated in Delaware, all parties are subject to personal jurisdiction in this forum, this forum's docket is noticeably faster to resolution of complex cases than the proposed transferee court and many others, and there was no other forum in which witnesses had a markedly more convenient location than this one." (D.I. 22 at 2.) The court finds that ATI's explanation is a rational and legitimate reason for choosing to sue the Defendants in Delaware. *See Stratos*

*Lightwave, Inc. v. E2O Communs., Inc., No. C. A. 01-309-JJF, 2002 U.S. Dist. LEXIS 5653, 2002 WL 500920, at * 2 (D. Del. Mar. 26, 2002).* Further, having received the benefits [*6] of Delaware incorporation, a Defendant cannot now complain that another corporation has chosen to sue it here. *See id.*

The court also finds that the location of books and records weighs against granting the Defendants' motion to transfer. The Defendants contend that their books and records necessary for litigation are in Michigan. A court should consider the location of books and records in its analysis. It must only do so, however, to the extent that the files could not be produced in the alternative forum. *Jumara, 55 F.3d at 879.* Here, the Defendants do not suggest that their documents could not be produced in Delaware, especially in this day and age where large-scale "document" productions are reduced to digitized records that parties transfer via electronic media. Accordingly, this factor does not weigh in favor of granting a transfer.

The Defendants also contend that non-party witness convenience weighs in favor of a transfer. The briefs set forth in detail the parties' positions with regard to this factor. Essentially, the Defendants contend that travel to Delaware is less convenient than travel to Michigan for its third-party witnesses. (D.I. 18 at 6-7.) [*7] The court is not persuaded by the Defendants' arguments. Further, as this court has previously held, a flight to Delaware is not an onerous task warranting transfer. *Truth Hardware Corp. v. Ashland Prods., Inc.,* No. C.A. 02-1541 GMS, 2003 WL 118005, at * 2 (D. Del. Jan 13, 2003). The court concludes that the convenience of the witnesses does not favor transfer in this case.

Additionally, the court finds that the public interest factors do not weigh strongly in favor of transfer to Michigan. First, the court is not persuaded that any disparity in court congestion will be so great as to weigh strongly in favor of a transfer. [2] Second, it is well settled that patent rights are not considered state or local matters and do not implicate local interests. *Jones Pharma, Inc. v. KV Pharm. Co.,* No. Civ. A. 03-786 JJF, 2004 U.S. Dist. LEXIS 2333, 2004 WL 323109, at * 3 (D. Del. Feb. 17, 2004). The court, therefore, finds no strong local interest in litigating in the transferee forum. Third, ATI's pending litigation in Michigan involves different patents. Thus, the court believes that this is not a relevant consideration in favor of transfer. *See Mentor Graphics Corp. v. Quickturn Design Sys., Inc., 77 F. Supp. 2d 505, 513 (D. Del. 1999)* [*8] (refusing to give "any weight whatsoever" to a mirror image action filed by the defendant).

> 2   Even accepting Defendants' position on the percentage of cases over three years old pending in the Eastern District of Michigan, this district's

percentage appears to be lower. *Compare* (D.I. 22 at 24) *with* (D.I. 23 at 3, fn. 2).

Finally, the court notes that the circumstances driving the court's decision to transfer in *Alloc, Inc. v. Unilin Decor N.V.* [3] are distinguishable from those in the present case. As ATI remarked in its letter of December 12, 2006 (D.I. 52), the patents before this court in *Alloc* involved the same patents at issue in the transferee forum. Here, the court is not aware of a single patent in this lawsuit that is asserted in any action in the Eastern District of Michigan. The court agrees with ATI that nothing in the Detroit lawsuits yields any potential savings in judicial economy, given the attenuated connection between those patents and the patents here in suit. Accordingly, the [*9] court concludes that public interest factors do not favor transfer in the instant case.

3   *Alloc, Inc. v. Unilin Decor N. V., C.A. Nos. 03-253-GMS, 05-587-GMS, 2006 U.S. Dist. LEXIS 78019, 2006 WL 3050815 (D. Del. Oct. 26, 2006).*

Dated: December 21, 2006

/s/ Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

The defendants' Motion to Transfer the above-captioned matter to the United States District Court for the Eastern District of Michigan (D.I. 17) is DENIED.

Dated: December 21, 2006

/s/ Gregory M. Sleet

UNITED STATES DISTRICT JUDGE



FOCUS - 1 of 55 DOCUMENTS

**CARL ZEISS MEDITEC, INC. and UNIVERSITY OF MIAMI, Plaintiffs, v. OPTOVUE, INC., Defendant.**

**C.A. No. 10-084-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2011 U.S. Dist. LEXIS 40031*

**April 12, 2011, Decided**
**April 13, 2011, Filed**

**COUNSEL:** [*1] For Carl Zeiss Meditec Inc., Plaintiff: Thomas Lee Halkowski, LEAD ATTORNEY, Fish & Richardson, P.C., Wilmington, DE; Howard G. Pollack, Shelley K. Mack, PRO HAC VICE.

For University of Miami, Plaintiff: Thomas Lee Halkowski, LEAD ATTORNEY, Fish & Richardson, P.C., Wilmington, DE.

For Optovue Inc., Defendant: David Ellis Moore, Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE; Deborah E. Fishman, PRO HAC VICE.

**JUDGES:** Gregory M. Sleet, CHIEF, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory M. Sleet

**OPINION**

<u>MEMORANDUM</u>

**I. INTRODUCTION**

   On February 2, 2010, Carl Zeiss Meditec, Inc. ("CZM") initiated the above-captioned patent infringement action against Optovue, Inc. ("Optovue"), alleging that Optovue's RTVue product infringes two patents licensed to CZM by the University of Miami. (D.I. 1.) On May 4, 2010, CZM filed its first amended complaint, alleging infringement of a third patent licensed to CZM by the University of Miami. (D.I. 6.) On October 22, 2010, the court granted CZM's unopposed motion to join the University of Miami as a necessary plaintiff. (D.I. 22.) Presently before the court is Optovue's motion to transfer venue to the Northern District of California pursuant to *28 U.S.C. § 1404(a)* [*2] or, in the alternative, to dismiss for lack of standing under *Federal Rules of Civil Procedure 12(b)(1)* and *12(b)(7)*. [1] (D.I. 7.) For the reasons that follow, the court will deny Optovue's motion and direct CZM to amend its complaint to reflect the joinder of the University of Miami as a plaintiff.

   1   The court's October 22, 2010 order granting CZM's unopposed motion to join the University of Miami as a necessary plaintiff renders Optovue's motion moot to the extent it seeks a dismissal of the action pursuant to *Federal Rules of Civil Procedure 12(b)(1)* and *12(b)(7)*. (D.I. 22.) As such, the court shall deny as moot Optovue's motion to the extent it seeks dismissal of the action for lack of standing under *Rules 12(b)(1)* and *12(b)(7)*. The court directs CZM to amend its complaint to reflect the joinder of the University of Miami as a plaintiff.

**II. BACKGROUND**

   Optovue is an ophthalmic instrumentation company incorporated in Delaware and headquartered in Fremont, California. (D.I. 8 at 3.) The accused RTVue product manufactured by Optovue in its Fremont facility is an ultra-high speed, high resolution optical coherence tomography ("OCT") scanner used to facilitate detection, diagnosis and treatment [*3] of ocular diseases. (Id.) Optovue's management is located in Fremont, and its board meetings, research, development and manufacturing activities occur in Fremont. (Id.) Over eighty percent of Optovue's full-time U.S. employees, including all forty of its engineers, work in the Fremont facility. (Id.)

Optovue's U.S. employees working outside of California include direct sales staff and field application specialists who are scattered throughout the U.S. (Id. at 3-4.)

CZM is a New York corporation headquartered in Dublin, California. (Id. at 4.) CZM is a wholly owned subsidiary of Carl Zeiss Meditec AG ("CZM AG"), which is based in Jena, Germany. (Id.) CZM AG employs 2,100 people worldwide, with approximately 750 employees working at the company's Dublin headquarters. (Id. at 5.) CZM exclusively licenses the rights to the patents-in-suit from the University of Miami, which owns all right, title and interest in the patents-in-suit. (Id. at 6.)

The University of Miami is incorporated under the laws of Florida and has an established place of business in Miami, Florida. (Id.) Three of the four named inventors of the patents-in-suit, Dr. Robert Knighton, Dr. Shuliang Jiao and Dr. Giovanni Gregori, [*4] maintain affiliations with the University of Miami's Bascom Palmer Eye Institute. (Id.) The fourth inventor, Dr. Carmen A. Puliafito, works at the University of Southern California, (Id. at 5.)

## III. STANDARD OF REVIEW

Pursuant to *28 U.S.C. § 1404(a)*, the court may transfer a civil action "for the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." *28 U.S.C. § 1404(a)*. The burden to establish the need to transfer rests on the moving party, and the "plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)*. In other words, "unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)* (internal quotations and citations omitted).

When considering a motion to transfer, the court must determine "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara, 55 F.3d at 879*. This inquiry requires a multi-factored test [*5] which includes not only the convenience of the parties and witnesses and the interests of justice, but also the private and public interests set forth in *Jumara. Id. at 875*. The private interests include the plaintiff's forum preference as manifested in the original choice, [2] the defendant's forum preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their physical and financial condition, the convenience of the expected witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records, but only

to the extent that they could not be produced in the alternative forum. [3] *Id. at 879*. The relevant public interests include the enforceability of the judgment, practical considerations that could make the trial easy, expeditious or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, and the local interest in deciding local controversies at home according to the public policies of the fora. *Id. at 879-80*.

> 2   As part of this inquiry, the court considers whether the plaintiff filed on its "home turf," as "the transfer of a case  [*6] will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred." *Virgin Wireless, Inc. v. Virgin Enters. Ltd., 201 F. Supp. 2d 294, 300 (D. Del. 2002)* (internal quotations omitted).
>
> 3   The first three of these private interest factors collapse into other portions of the *Jumara* analysis. Thus, the court will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 197 (D. Del. 1998)*.

## IV. DISCUSSION

In support of its motion, Optovue contends that none of the parties, potential witnesses, or other sources of proof is located in Delaware, and the only connection to Delaware is Optovue's incorporation there. (D.I. 8 at 1.) According to Optovue, the Northern District of California would be a more convenient forum because that is where both Optovue and CZM are headquartered, where nearly all of Optovue's employees work, where the accused RTVue product is designed, developed and manufactured, and where many of the documents, records and witnesses are located. (Id.)

In response, CZM contends that litigating in California would not be significantly  [*7] more convenient to the parties because both parties are large corporations with a national and international presence that will not be burdened by litigating in Delaware. (D.I. 11 at 7-8.) According to CZM, Optovue agreed to be sued in Delaware by choosing to incorporate there. (Id. at 8.) CZM contends that the witnesses will not be unduly inconvenienced by the Delaware choice of forum because the witnesses are located throughout the country and internationally, and they have agreed to participate in the Delaware litigation. (Id. at 9-12.) Moreover, CZM contends that Optovue has failed to identify any witnesses or books and records that will be unavailable for trial. (Id. at 12-13.) With respect to the public interest factors, CZM contends that Delaware has a strong local interest in resolving this dispute involving a Delaware corporate

citizen, and Delaware's flexible local rules and alternative dispute resolution procedures will promote efficiency. (Id. at 13.)

As an initial matter, the court notes that this case could have been brought in the Northern District of California. Any federal district court possesses subject matter jurisdiction over federal patent law claims such as those [*8] at issue in the present action. *28 U.S.C. §§ 1331 and 1338.* Furthermore, any civil action for patent infringement may be brought in the judicial district where the defendant resides or "where the defendant has committed acts of infringement and has a regular and established place of business." *28 U.S.C. § 1400.* Thus, venue is proper in the Northern District of California where Optovue's principal place of business is located.

Having determined that CZM could have properly brought this action in the Northern District of California, the court now considers whether Optovue has met its burden of demonstrating that transfer is appropriate. Although CZM's **choice** of **forum** is entitled to less weight because it has chosen to litigate outside of its "home turf," *see In re ML-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993),* Optovue is incorporated in Delaware. Having received the benefits of Delaware incorporation, Optovue cannot now complain that another corporation has chosen to sue it here. *Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co., Inc., C.A. No. 06-187-GMS, 2006 U.S. Dist. LEXIS 92249, 2006 WL 3783477, at *2 (D. Del. Dec. 21, 2006).* Moreover, this court has held that it is **legitimate** to sue [*9] a Delaware corporation in its state of incorporation, and "a plaintiffs **choice** of **forum** should not be disregarded if it poses a **rational** and **legitimate** reason for selecting a **forum.**" *Academisch Ziekenhuis Leide v. Cardiomems, Inc., C.A. No. 10-1127, 2011 U.S. Dist. LEXIS 23833, 2011 WL 864911, at *3 (D. Del. Mar. 9, 2011).*

A defendant's incorporation in Delaware, by itself, is not dispositive on a motion to transfer if an alternative forum would be more convenient. *See APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc., 295 F. Supp. 2d 393, 398-99 (D. Del. 2002).* However, the court concludes that Optovue has also failed to demonstrate a specific physical or financial condition that would make litigating in Delaware burdensome. Party witnesses such as employees are presumed willing to testify at trial and thus, are not part of the analysis of this factor. *Nice Sys., Inc. v. Witness Sys., Inc., C.A. No. 06-311-JJF, 2006 U.S. Dist. LEXIS 74642, 2006 WL 2946179, at *2 (D. Del. Oct. 12, 2006).* While it is true that none of the potential third-party witnesses identified by the parties appear to reside in Delaware, Optovue fails to demonstrate that any witness is unable or unwilling to travel to Delaware. As this court has previously held, a flight [*10] to Delaware is not an onerous task warranting transfer. *Auto. Techs.*

*Int'l, Inc., 2006 U.S. Dist. LEXIS 92249, 2006 WL 3783477, at *2.* Accordingly, the court concludes that the convenience of the witnesses does not favor transfer in this case.

The court also concludes that the location of relevant documents does not heavily favor transfer because Optovue failed to demonstrate that the relevant documents could not be produced in Delaware. As this court has previously noted:

> [Technological advances have substantially reduced the burden of having to litigate in a distant forum ... These technologies have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded and can be transferred and have lowered the cost of moving that information from one place to another.

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc., 157 F.R.D. 215, 218 (D. Del. 1993).* Accordingly, this factor does not weigh in favor of transfer.

Finally, the court concludes that the public interest factors are neutral. Although it may be less costly for Optovue to try this case in the Northern District of California, Optovue has not shown that proceeding in Delaware would present [*11] a financial hardship. *See Academisch, 2011 U.S. Dist. LEXIS 23833, 2011 WL 864911, at *5.* Moreover, because this is a patent infringement case, local concerns are not implicated. *See TriStrata Tech., Inc. v. Emulgen Labs., Inc., 537 F. Supp. 2d 635, 643 (D. Del. 2008).*

## V. CONCLUSION

For the reasons stated above, Optovue's motion to transfer venue or, in the alternative, to dismiss under *Rules 12(b)(1)* and *12(b)(7)* (D.I. 7) is denied, and CZM is directed to amend its complaint to join the University of Miami as a plaintiff. An appropriate order shall issue.

Dated: April 12, 2011

/s/ Gregory M. Sleet

CHIEF, UNITED STATES DISTRICT JUDGE

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. Optovue's motion to transfer venue or, in the alternative, to dismiss for lack of standing under *Rules 12(b)(1)* and *12(b)(7)* (D.I. 7) is DENIED.

2. CZM shall amend its complaint to join the University of Miami as a plaintiff within twenty (20) days of the entry of this order.

Dated: April 12, 2011

/s/ Gregory M. Sleet

CHIEF, UNITED STATES DISTRICT JUDGE



CISCO SYSTEMS INC., SCIENTIFIC-ATLANTA INC., ARRIS GROUP INC., and THOMSON INC., Plaintiffs, v. GPNE CORP., Defendant.

**Civ. No. 07-671-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2008 U.S. Dist. LEXIS 31877*

**April 17, 2008, Decided**
**April 17, 2008, Filed**

**COUNSEL:** [*1] For Cisco Systems Inc., Scientific-Atlanta, Arris Group, Inc., Thomson Inc., Plaintiffs: Karen Jacobs Louden, LEAD ATTORNEY, Morris, Nichols, Arsht & Tunnell, Wilmington, DE; William J. Marsden, Jr., LEAD ATTORNEY, Fish & Richardson, P.C., Wilmington, DE.

For GPNE Corp., a Delaware company, Defendant, Counter Claimant: Richard K. Herrmann, Morris James LLP, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION**

**MEMORANDUM ORDER**

At Wilmington this 17th day of April, 2008, having reviewed defendant's motion to transfer and the papers filed in connection therewith;

IT IS ORDERED that said motion (D.I. 13) is denied, for the reasons that follow:

1. **Background.** In October 2007, plaintiffs Cisco Systems, Inc. ("Cisco") (a California corporation having its headquarters in San Jose, California) and Scientific-Atlanta, Inc. ("SA") (a wholly-owned subsidiary of Cisco with its headquarters in Lawrenceville, Georgia) filed the above captioned action against defendant GPNE Corporation ("GPNE") (a Delaware corporation having its principal place of business in Honolulu, Hawaii) seeking declaratory relief with respect to *U.S. Patent Nos. 6,282,406* (the "'2,406 patent"), *7,200,406* [*2] (the

"'0,406 patent"), and *7,209,748* (the "'748 patent"). (D.I. 1) By amended complaint filed in December 2007, plaintiffs ARRIS Group, Inc. ("ARRIS") (a Delaware corporation with its principal place of business in Suwanee, Georgia) and Thomson, Inc. ("Thomson") (a Delaware corporation with its principal place of business in Indianapolis, Indiana) were added. (D.I. 7) In January 2008, defendant GPNE filed its answer and counterclaims of patent infringement as to all three of the patents in suit. (D.I. 12) GPNE also filed a motion to transfer the case to the Eastern District of Texas, based on the "first-filed" theory. (D.I. 13)

2. More specifically, on January 31, 2007, GPNE filed two patent infringement cases in the Eastern District of Texas. The first, filed against Time Warner Inc., Comcast Cable Communications LLC and Charter Communications, Inc., was settled and dismissed in November 2007 without the benefit of any substantive rulings by the court. (D.I. 17, ex. M) The second, filed against Samsung Telecommunications America ("Samsung"), L.P., LG Electronics Mobilecomm U.S.A., Inc., and HTC America Inc., remains pending only against Samsung, relates only to the '2,406 patent, and [*3] involves different technology than that at issue. Nevertheless, GPNE argues that transfer is warranted because "[t]he Eastern District of Texas was the first court to obtain possession of the subject matter in dispute in this action - specifically, the infringement of the '2,406 patent." (D.I. 21 at 2)

3. **Standard of review.** Under *28 U.S.C. § 1404(a)*, a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through *§ 1404* to place

discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 208 (D. Del. 1998).*

4. The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981)* (citing *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)).* "Unless [*4] the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail." *ADE Corp. v. KLA-Tencor Corp., 138 F. Supp. 2d 565, 567-68 (D. Del. 2001); Shutte, 431 F.2d at 25.* The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D. Del. 1998); Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc., No. Civ. A. 01-199, 2001 U.S. Dist. LEXIS 20803, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001); Continental Cas. Co. v. American Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999).* Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).*

5. The Third Circuit Court of Appeals has indicated that the analysis [*5] for transfer is very broad. *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).* Although emphasizing that "there is no definitive formula or list of factors to consider," *id.,* the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted). The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora re-

sulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the [*6] fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

6. With respect to the "first-filed rule," this rule was adopted more than fifty years ago by the Third Circuit Court of Appeals and described as follows: "In all cases of [federal] concurrent jurisdiction, the court which first ha[d] possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941)* (quoting *Smith v. M'Iver, 22 U.S. (9 Wheat.) 532, 6 L. Ed. 152 (1824)).* Consequently, the second filed action should be stayed or transferred to the court where the first-filed action is pending. *Peregrine Corp. v. Peregrine Indus., Inc., 769 F. Supp. 169, 171 (E.D. Pa. 1991); Dippold-Harmon Enterprises, Inc. v. Lowe's Companies, Inc., No. Civ. A. 01-532, 2001 U.S. Dist. LEXIS 18547, 2001 WL 1414868 (D. Del. Nov. 13, 2001).* The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *E.E.O.C. v. University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988).* The decision to transfer or stay the second action is within the discretion of the trial court. *Id. at 972, 977.* However, "invocation of the rule will usually be the [*7] norm, not the exception. Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule." *Id. at 979.*

7. **Analysis.** I have never before been confronted with a case in which the first-filed rule has been invoked for cases in which neither the parties nor the patents at issue are identical. Indeed, I find remarkable the assertion that a court obtains "possession of the subject matter" of a patent as soon as a single case involving that patent is filed in that jurisdiction. Needless to say, I find these arguments less than compelling. Also remarkable is the fact that parties are still basing motions to transfer on the "convenience" of the parties, when it is undeniable that national corporations can and do operate their businesses via electronic communications; litigation is not substantially different and should not be treated as such. Consistent with the rationale I have employed for at least the last 10 years, that absent a truly regional defendant or critical witnesses that cannot be compelled to attend trial, Delaware (especially for Delaware corporations such as GPNE) is at least as convenient as any other forum.

8. **Conclusion.** [*8] For the reasons stated above, defendant's motion to transfer is denied.

/s/ Sue L. Robinson

United States District Judge



CYPRESS SEMICONDUCTOR CORPORATION and INTERNATIONAL MICROCIRCUITS, INC., Plaintiffs, v. INTEGRATED CIRCUIT SYSTEMS, INC., Defendant.

C.A. No. 01-199 SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2001 U.S. Dist. LEXIS 20803*

November 28, 2001, Decided

**DISPOSITION:** [*1] Defendants' motion to transfer denied.

**COUNSEL:** For CYPRESS SEMICONDUCTOR CORPORATION, INTERNATIONAL MICROCIRCUITS, INC., plaintiffs: William J. Marsden, Jr., Fish & Richardson, P.C., Wilmington, DE.

For INTEGRATED CIRCUIT SYSTEMS INC., defendant: Philip A. Rovner, Potter Anderson & Corroon, LLP, Wilmington, DE.

For INTEGRATED CIRCUIT SYSTEMS INC., counterclaimant: Philip A. Rovner, Potter Anderson & Corroon, LLP, Wilmington, DE.

For CYPRESS SEMICONDUCTOR CORPORATION, INTERNATIONAL MICROCIRCUITS, INC., counterdefendants: William J. Marsden, Jr., Fish & Richardson, P.C., Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION**

**MEMORANDUM ORDER**

**I. INTRODUCTION**

On March 28, 2001, plaintiff Cypress Semiconductor, Inc. ("Cypress") filed this patent action against defendant Integrated Circuit Systems, Inc., ("ICS") alleging infringement of United States Patent Nos. 5,877,656 ( "656"), 5,949,261 [1] ( "261") and 5,656,959 ("'959"). (D.I. 2, 5) On April 12, 2001, Cypress amended the complaint naming the owner of patent '959, International Microcircuits, Inc. ("IMI"), as a plaintiff. (D.I. 5) On May 3, 2001, ICS filed an answer [*2] and counterclaim seeking a declaratory judgment that the claims in Cypress' patents are invalid. (D.I. 7)

> 1 Litigation of claims regarding this patent are stayed pending the final determination of an investigation by the United States International Trade Commission. (D.I. 41)

Presently before the court is ICS' motion to transfer the case from this district to the United States District Court for the Northern District of California, San Francisco Division, pursuant to *28 U.S.C. § 1404(a)*. (D.I.16) For the reasons that follow, the motion will be denied.

**II. BACKGROUND**

The technology in issue is electronic components referred to as clock generators. Clock generators are used in computers to generate timing signals needed by microprocessors and other elements of the computer to function. (D.I. 17)

Cypress is a Delaware corporation headquartered in San Jose, California. Cypress designs the clock products constituting the patents-in-suit in Woodinville, Washington and Bangalore, [*3] India. These products are manufactured in Round Rock, Texas; Cavite, Philippines; Taiwan and Singapore. (D.I. 20) The clock products are sold in the national and international market. Cypress has a sales representative in Pennsylvania who

services the Delaware market. Cypress also has sales representatives throughout the world.

IMI is a Delaware corporation with its principal place of business in Milpitas, California. (D.I.21, 23) IMI is a wholly owned subsidiary of Cypress and has offices in Istanbul, Turkey, and Tokyo, Japan. IMI is a fabless semiconductor company that out sources fabrication of its semiconductor designs to leading wafer manufacturers throughout the world. IMI designs the clock products embodying the patents-in-suit in Milpitas, California. IMI has sales representatives in Texas, Wisconsin, Illinois, Georgia, North Carolina, Canada, Germany, Israel, Singapore, Korea, Hong Kong, Taiwan and Japan. (D.I. 21) IMI distributes its clock products throughout the United States and the world.

ICS is a Pennsylvania corporation with its major technical facility and principal place of business in San Jose, in the Northern District of California, and other smaller offices in [*4] Texas, Arizona, Taiwan and Singapore. (D.I. 18) ICS is engaged in the design and sale of certain clock generator products. The San Jose facility houses most of the documentation related to ICS' clock generator product design, and is where most of its employees work. ICS [2] has neither facilities nor employees located in Delaware. ICS' CEO and CFO live in Pennsylvania and work in the Norristown headquarters. (D.I. 18)

2  ICS does have an intellectual property holding company that is a Delaware corporation, but it does not engage in business related to the subject matter of the litigation. (D.I. 18)

## III. DISCUSSION

Title 28, Section *§ 1404(a)* provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Congress intended through *§ 1404* to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case [*5] consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp., 480 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988)*; *Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 208 (D. Del. 1998)*.

The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the

defendants." *Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981)* (citing *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970), cert. denied, 401 U.S. 910, 27 L. Ed. 2d 808, 91 S. Ct. 871 (1971)*. "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp., 138 F. Supp. 2d 565, 567 (D.Del. 2001)*; *Shutte, 431 F.2d at 25*.

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D.Del. 1998)*; *Siemens Medical Systems, Inc. v. Fonar Corporation,* [*6] C.A. No, 95-261- SLR, slip. op. at 8 (D. Del. Nov. 1, 1995). Although transfer of an action is usually considered as less convenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993)*.

The Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. *Jumara v. Statre Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)*. Although emphasizing that "there is no definitive formula or list of factors to consider," *id.*, the court has identified potential factors it characterized as either private or public interest. The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and [*7] financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

## IV. ANALYSIS

The parties do not dispute that this action could have been initiated in the Northern District of California, San Francisco Division. Rather, they disagree whether the

balance of conveniences and interests of justice compel transfer.

## A. Convenience to the Parties

ICS argues a change of venue is warranted because it would be "significantly more convenient for all concerned" [*8] to transfer to California. (D.I. 17) According to ICS:

> Each of the parties is headquartered and/or maintains its principal place of business in Northern California in the San Francisco Bay Area, no more than 20-30 miles from any of the Northern District of California Courthouses... most if not all of the relevant activities are the subject of the litigation are centered in the Northern District of California...In IMI's case, essentially, all of its activities relating to the subject of the litigation, including the design, marketing and sale of clock generator products, are conducted out of its main facility in the Northern District of California...and it appears Cypress' marketing and sales activities relating to these products is centered in its principal facilities in the Northern District of California.

(D.I. 17 at 8-9) ICS further asserts that the discovery process would be facilitated as court supervision could be arranged more expeditiously.

Cypress counters that ICI's arguments are muted by modern technology. The court agrees. Convenience of the parties is a somewhat archaic notion in the world today. *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,* 157 F.R.D. 215, 218 (D. Del. 1993) [*9] Advances in technology have significantly lessened the burden of litigating in a distant district. "These technologies have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded...and have lowered the cost of moving that information from one place to another." *Id. at 218.*

ICS focuses on how much more convenient California would be instead of establishing any special inconvenience by litigating in Delaware. (D.I. 18 at 2) ICS, however, must establish that litigating in Delaware would pose a "unique or unusual burden" on their operations. *Id.* ICS has not identified any particular piece of evidence or document that would be especially difficult to transport to Delaware. *Compare ADE Corp. v. KLA-Tencor Corp., 138 F. Supp. 2d 565, 573 (D.Del.*

*2001)*(movant argued transfer necessary for court to examine large machines).

Relatedly, another aspect of convenience to the parties proffered by ICS is the unfair expense caused by litigating here. Specifically, ICS identifies the following expenses: (1) travel costs as well as accommodation expenses associated with bringing officers, [*10] crucial employees, witnesses and experts; (2) costs associated with the absence of employees, witnesses, and experts; and (3) costs incurred by storing numerous documents. These expenses would be absent if the action were in California.

The undisputed record reflects that all the parties are national corporations with millions of dollars in annual revenue. [3] Likewise, both plaintiff and defendant are corporations that operate on a national or worldwide scale. In view of this status, convenience based on expense is uncompelling especially when the practical realities are that discovery will likely take place in California regardless of the trial venue.

> [3] According to ICS, Cypress' annual sales revenues for year-end December 31, 2000 were $ 1,287,787,000, yielding net income of $ 277,308,000. (D.I. 19) Cypress indicates that ICS generated net revenue of $ 165,521,000 in fiscal year 2000. (D.I. 22) IMI's net income from April 1999 though March 2000 was $ 3,068,000. (D.I. 19, Ex. I)

## B. Convenience of Witnesses

[*11] According to ICS, "no pertinent witnesses reside in the State of Delaware" and "no pertinent witnesses even reside on the East Coast." (D.I. 17 at 12) Consequently, all of these employees, officers, experts would have to travel to Delaware for trial, thereby resulting in substantial expense for accommodation and travel. Absent from ICS' argument is any identifiable obstacle in obtaining personal jurisdiction over a third party witness. For the reasons stated above, the court finds this argument likewise unpersuasive.

## C. Other Litigation

ICS submits pending patent litigation in the Northern District of California warrants transfer. Specifically, ICS sued Cypress for patent infringement on ICS' *patent 5,036,216* ("216") in the Northern District of California, San Francisco Division on April 3, 2001. (D.I. 17) ICS asserts the patents in the Delaware action and the patent-in-suit in California involve the same technology. Consequently, the same witnesses would likely be called to trial.

In response, Cypress [4] concedes both the Delaware and California suits concern the same general area of technology, but argues that is where the similarity ends. There are different parties and [*12] different patents. The court finds that the California litigation does not warrant transfer.

> 4   Cypress also has another case pending regarding the '959 patent in this court, *Cypress Semiconductor Corp. v. Philips Semiconductor, Inc.,* C.A. No. 01-178-SLR.

**D. Access to Proof**

With respect to access to proof, ICS argues transfer is appropriate because documents and witnesses are located in California. Cypress contends this is irrelevant.

> The location of documents, in the context of access to proof, in a document-intensive case such as this can be misleading. No matter where the trial is held [defendants']...counsel and [plaintiffs']...counsel will be required to travel to [various places] to select and produce the requested discovery. Regardless of where the trial is held, the documents will be copied and mailed to the offices of counsel and subsequently transported to trial.

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 821 F. Supp. 962, 966-67 (D. Del. 1993)* [*13] For the reasons outlined in *Critikon,* the court finds that ICS has not established that this factor compels the transfer of this action.

**E. Public Interests**

ICS asserts that public interests weigh in favor of a transfer. The crux of this argument is a statistical comparison of the civil dockets for the districts of Delaware and California. According to the Administrative Office of the Courts:

> For the twelve month period [which] ended September 30, 2000...there is only a 15 day difference in the median time from filing to trial, 25.5 months in the Northern District of California compared with 25 months in Delaware. While the District of Delaware has fewer cases pending [1,420 compared 5,373], it also experienced a 32% increase in the number of cases pending in 1999, from 1,075 cases in the year 1999 to 1,420 cases in the year 2000. In the District of California, there are 14 judges and 12 magistrate judges compared with 4 judges and 1 magistrate judge in Delaware.

(D.I. 17)

According to ICS, transfer will save judicial resources. Cypress asserts these arguments are essentially irrelevant as plaintiff's choice of forum is the paramount consideration. [*14] This action was brought in Delaware because Cypress is incorporated in Delaware and sells products protected by the patents-in-suit in Delaware. ICS is a nearby resident of Pennsylvania and sells products that allegedly infringe the patents in Delaware. Both are national corporations that generate millions of dollars in sales in the national and international marketplace. Further, Cypress filed in Delaware because the court is noted for its efficient docket and its expertise in complex civil litigation.

No matter where this action is adjudicated, a judge will have to learn the technology. Absent a more compelling statistical disparity between districts, this court finds transfer is inappropriate.

**V. CONCLUSION**

For the reasons stated, at Wilmington, this 28th day of November, 2001;

IT IS ORDERED that defendant ICS' motion to transfer is denied. (D.I. 16)

Sue L. Robinson

United States District Judge

Westlaw.

Page 1

Not Reported in F.Supp.2d, 2005 WL 2465898 (D.Del.)
**(Cite as: 2005 WL 2465898 (D.Del.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
HONEYWELL INTERNATIONAL INC., and Honey-
well Intellectual Properties Inc., Plaintiffs,
v.
AUDIOVOX COMMUNICATIONS CORP., Audiovox
Electronics Corporation, Nikon Corporation, Nikon, Inc.,
Nokia Corporation; Nokia Inc., Sanyo Electric Co., Ltd.,
and Sanyo North America Corporation, Defendants.
HONEYWELL INTERNATIONAL INC., and Honey-
well Intellectual Properties Inc., Plaintiffs,
v.
APPLE COMPUTER, INC.; Argus A/K/A Hartford
Computer Group, Inc.; Casio Computer Co., Ltd.; Casio,
Inc.; Concord Cameras; Dell Inc.; Eastman Kodak Com-
pany; Fuji Photo Film Co., Ltd.; Fuji Photo Film U.S.A.,
Inc.; Fujitsu Limited; Fujitsu America, Inc.; Fujitsu Com-
puter Products of America, Inc.; Kyocera Wireless Corp.;
Matsushita Electrical Industrial Co.; Matsushita Electrical
Corporation of America; Navman NZ Limited; Navman
U.S.A. Inc.; Olympus Corporation; Olympus America,
Inc.; Pentax Corporation; Pentax U.S.A., Inc.; Sony Cor-
poration; Sony Corporation of America; Sony Ericsson
Mobile Communications AB; Sony Ericsson Mobile
Communications (USA) Inc.; Toshiba Corporation; and
Toshiba America, Inc., Defendants.
OPTREX AMERICA, INC., Plaintiff,
v.
HONEYWELL INTERNATIONAL INC., and Honey-
well Intellectual Properties Inc., Defendants.

No. Civ.A. 04-1337-KAJ, Civ.A. 04-1338-KAJ, Civ.A.
04-1536-KAJ.
May 18, 2005.

Steven J. Balick, John G. Day, Ashby & Geddes, Leslie
A. Polizoti, Thomas C. Grimm, Morris, Nichols, Arsht &
Tunnell, Karen L. Pascale, Bouchard, Margules & Fried-
lander, P.A., Wilmington, DE, for Plaintiffs.

Richard L. Horwitz, Philip A. Rovner, David Ellis Moore,
Potter Anderson & Corroon, LLP, William J. Marsden,
Jr., Thomas Lee Halkowski, Tara D. Elliott, Fish &

Richardson, P.C., Paul A. Bradley, McCarter & English,
LLP, Matt Neiderman, Duane Morris LLP, Donald W.
Huntley, Donald W. Huntley, Esq., Robert J. Katzenstein,
Robert Karl Beste, III, Smith, Katzenstein, & Furlow,
Amy Elizabeth Evans, Cross & Simon, LLC, Chad Mi-
chael Shandler, William J. Wade, Richards, Layton &
Finger, Arthur G. Connolly, III, Francis DiGiovanni,
Connolly, Bove, Lodge & Hutz, John W. Shaw, Adam
Wyatt Poff, Young, Conaway, Stargatt & Taylor, Wil-
mington, DE, Barry M. Graham, Darren M. Jiron,
Timothy J. Vezeau, Robert J. Benson, Avelyn M. Ross,
Roderick B. Williams, Christopher E. Chalsen,
Christopher J. Gaspar, Parker H. Bagley, Steven J. Rizzi,
Arthur I. Neustadt, Carl E. Schlier, Pro Hac Vice, for De-
fendants.

*MEMORANDUM ORDER*

JORDAN, J.
**Introduction & Background**
**\*1** In these three actions, Honeywell International
Inc., a Delaware corporation, and Honeywell Intellectual
Properties Inc., an Arizona corporation, (collectively
"Honeywell") have asserted that their rights under U.S.
Patent No. 5,280,371, issued January 18, 1994, (the " '371
patent) have been infringed. The '371 patent claims a liq-
uid crystal display ("LCD") apparatus said to provide
enhanced brightness and clarity when compared with
prior art LCDs. (*See* '371 patent, attached to C.A. No. 04-
1338-KAJ Docket Item ["D.I."] 1 at Ex. 1, col. 1 lines 48-
61; col. 6, lines 1-42.) In Civil Action No. 04-1337-KAJ,
Honeywell asserts the '371 patent against 8 defendants.
(C.A. No. 04-1337-KAJ D.I. 39.) In Civil Action No. 04-
1338-KAJ, it asserts the same patent against another 27
defendants.[FN1] In Civil Action No. 04-1536-KAJ, Optrex
America, Inc., a New York corporation, ("Optrex") has
sued for a declaratory judgment that it does not infringe
Honeywell's rights under the '371 patent and that the pat-
ent is invalid. (C.A.No. 04-1536-KAJ D.I. 1.)

> FN1. Honeywell chose to file two separate suits
> simultaneously because a conflict of interest of
> one of its law firms prevented that firm from rep-
> resenting Honeywell against certain of the de-
> fendants, but it now seeks consolidation of the
> actions. (*See* C.A. No. 04-1338-KAJ D.I. 135 at
> n. 1.)

Pending before me are several motions bearing on the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2465898 (D.Del.)
**(Cite as: 2005 WL 2465898 (D.Del.))**

management of these cases.[FN2] Honeywell seeks consolidation of the actions. (C.A. No. 04-1338-KAJ D.I. 134; C.A. No. 04-1536-KAJ D.I. 14) A third party, Seiko Epson Corporation, a Japanese company, ("Seiko Epson") seeks to intervene because it is the original manufacturer of LCDs said to be the infringing component in some of the defendants' consumer electronics. (*See* C.A. No. 04-1337-KAJ D.I. 50; C.A. No. 04-1338-KAJ D.I. 136 at 7-9); Optrex, another seller of allegedly infringing LCDs to defendants in the suits filed by Honeywell, seeks to have its case tried first.[FN3] (C.A. No. 04-1536-KAJ D.I. 23.) And several of the defendants in the actions brought by Honeywell have filed motions to stay the litigation against them while Honeywell first tries its infringement claims against the manufacturers of the LCDs. (*See, e.g.,* C.A. No. 04-1337-KAJ D.I. 60, 63, 101, and 112; C.A. No. 04-1338-KAJ D.I. 95, 158, 161, 181, and 189.)

> FN2. A chart listing the motions filed by the parties is appended.

> FN3. Federal Rule of Civil Procedure 7(b)(1) provides in pertinent part that, "[a]n application to the court for an order shall be by motion...." It is the custom and expectation of this court that, unless otherwise ordered by the court, an application like Optrex's should be made by way of formal motion. That expectation was not met in this instance. Failure to abide by Rule 7 necessarily brought with it a failure to abide by Local Rule 7.1.1, respecting the certification of counsel required with all non-dispositive motions. Solely because Optrex's request, which came by way of a letter, can be readily disposed of in light of my rulings on the motions properly made, I have considered it and address it herein.

On May 16, 2005, I held a consolidated pretrial conference in these cases pursuant to Federal Rule of Civil Procedure 16. At that time, I heard argument on the various motions and issued preliminary rulings. This Order confirms those rulings and provides a further explication for them. For the reasons stated herein, as well as those stated in open court at the Rule 16 conference, Seiko Epson's motion to intervene is granted, Honeywell's motion to consolidate is granted in part, Optrex's request is granted to the extent stated herein, and the motions to stay submitted by defendants in the Honeywell-filed cases are granted. In short, Honeywell will be required to litigate its infringement claims in the first instance against the manufacturers of the accused LCDs, not against the many customers of those manufacturers who incorporate the LCDs into their consumer electronics.

**Standard of Review**

**\*2** Motions to intervene are entrusted to the discretion of the court. *See Kleissler v. U.S. Forest Service,* 157 F.3d 964, 969 (3d Cir.1998) ("We will reverse a district court's determination on a motion to intervene as of right if the court has abused its discretion by applying an improper legal standard or reaching a conclusion we are confident is incorrect.") Intervention as of right is governed by Federal Rule of Civil Procedure 24(a), which states in relevant part, "[u]pon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." That rule has been interpreted

to require proof of four elements from the applicant seeking intervention as of right: first, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate representation of the prospective intervenor's interest by existing parties to the litigation.

*Kleissler,* 157 F.3d at 969.

A district court also generally has broad discretion when deciding whether to consolidate or stay proceedings. *See Bechtel Corp. v. Laborers' International Union,* 544 F.2d 1207, 1215 (3d Cir.1976) ("A United States district court has broad power to stay proceedings."); *Blake v. Farrell Lines, Inc.,* 417 F.2d 264, 266 (3d Cir.1969) ("the trial judge, under Rule 42(a), is given the broad authority to 'make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay' ').

With respect to consolidation, Federal Rule of Civil Procedure 42(a) provides that, "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2465898 (D.Del.)
**(Cite as: 2005 WL 2465898 (D.Del.))**

costs or delay."

The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732, 738 (3d cir.1983)* (quotation omitted). When considering a motion to stay, the court considers the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set. *United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del.1991).

**Discussion**

**\*3** These cases are the second set of LCD technology cases to come before this court on a grand scale. The first set, in which the lead case is *Commissariat A L'Energie Atomique v. Samsung, et al.,* C.A. No. 03-484-KAJ (consolidated), involved the plaintiff ("CEA") suing a host of manufacturers, distributors, and retailers of LCDs or products containing them. After sorting through the various motions to stay and to consolidate, I concluded that consolidation of cases against the manufacturer defendants was appropriate because those cases involved common questions of law and fact pertaining to infringement. *See id.,* May 13, 2004 Mem. Order at 5-6. However, I declined to consolidate the cases involving non-manufacturer defendants because no sound reason was given for immediately addressing what could only be the derivative liability of those defendants. *See id.* For that same reason, I stayed the cases against the non-manufacturer defendants, observing, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Id.* at 7 (quoting *Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed.Cir.1990).

I was persuaded then and remain persuaded that large-scale litigation like this requires the business and strategic legal interests of the plaintiff to cede some ground to case management imperatives. It is impracticable to try an infringement case against 40 some defendants or third-party defendants with many different accused devices, and it is unwise to attempt any such thing when liability depends exclusively upon infringement being found as to an LCD component that the defendants do not manufacture and when at least some of the manufacturers of the LCDs are before the court and are willing

to stand behind their products in this litigation.[FN4] *Cf. Kahn v. General Motors Corp.,* 889 F.2d 1078, 1081 (Fed.Cir.1989) (noting that the "customer suit exception" to the preference for allowing a first-filed action to proceed first is based on "the manufacturer's presumed greater interest in defending its actions against charges of patent infringement").

> [FN4.] Optrex and Seiko Epson are before the court already. Other LCD manufacturers identified as "Curitel, Philips, Wintek, and Samsung SDI" have been named in a third party complaint (*see* C.A. No. 04-1338-KAJ D.I. 167 at 5), and LCD manufacturers identified as "Arima Display, AU Optronics, CPT, Hannstar, Hitachi, Primeview, Quanta Display, Inc., ST-LCD, TM Display, and Tottori Sanyo" have not been named or appeared in any of the cases to date. (*See id.*)

Honeywell has been frank to say that it deliberately avoided suing the manufacturers to avoid "the complications faced by this Court in the French government's LCD action, C.A. No. 03-484 [i.e., the *CEA* suit]." (C.A. No. 04-1338-KAJ D.I. 147 at 3, ¶ 2.) Honeywell also accurately assesses the several motions to stay and the motion to intervene as an effort by the movants to "recast [Honeywell's lawsuits] as a case against LCD suppliers...." (C.A. No. 04-1338-KAJ D.I. 167 at 5.) What Honeywell fails to appreciate is that, from the perspective of the host of defendants Honeywell has chosen to sue, and in the interest of judicial economy, dealing with the manufacturers first is the fairest and most efficient way to proceed. It is not a complication to be resisted.

**\*4** Thus, Honeywell's motions to consolidate will be granted because the cases certainly do involve common questions of law and fact which make sense to handle for certain purposes on a consolidated basis. *See* Fed.R.Civ.P. 42(a). Whether a single trial against all the non-manufacturer defendants makes sense is a question for another day. For now it is sufficient to order that trial and pretrial activities with respect to the dispute between Honeywell and those manufacturer defendants presently before the court will be handled on a consolidated basis. Any pretrial activities with respect to Honeywell's claims against the non-manufacturer defendants will also be handled, for the time being, on a consolidated basis. It is likely that the claims against and by the manufacturer defendants will later be separated out for pretrial proceedings as well as a separate trial. As further noted herein,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2465898 (D.Del.)
**(Cite as: 2005 WL 2465898 (D.Del.))**

however, there will be some discovery permitted of the non-manufacturer defendants, so all will remain in the case for the time being.

The motion to intervene filed by Seiko Epson will also be granted, because it puts a willing manufacturer defendant in the forefront of litigation aimed squarely at its product. Seiko Epson correctly claims that it has met the test for intervention as of right under Rule 24(a). Its motion is timely; discovery has not even begun in the case and case management issues are only now being addressed. It has a sufficient interest in the litigation; indeed, as a manufacturer of the product component which is at the heart of these cases, it has a compelling interest. It can rightly claim that its interests will be impaired or affected, as a practical matter, by the disposition of the action, unless it is involved in the case directly and able to make its positions known. Finally, because it is uniquely situated to understand and defend its own product, its interests are not adequately represented by existing parties to the litigation.

For evidently similar reasons, Optrex has taken affirmative steps to insert itself in this litigation and to have the opportunity to have the dispute over its LCDs heard before the suits against the non-manufacturer defendants are permitted to go forward. As stated at the May 16 conference, I agree that the dispute between Honeywell and the manufacturers should go forward first. To that extent. Optrex's request to proceed with its claims on a priority basis will be granted.

As to the several motions to stay, they too are granted to the extent stated in open court. The non-manufacturer defendants will not be given a complete and immediate stay of all proceedings involving them, because I will permit Honeywell certain limited discovery to learn who the suppliers of LCDs are for the various devices that Honeywell must now specifically identify as accused products.[FN5] I will otherwise stay the litigation against the non-manufacturer defendants, however, since a stay would not unduly prejudice Honeywell, it will vastly simplify the issues and trial of the case against the manufacturer defendants, and it comes at time when discovery has not even begun and no trial date has been set. See *United Sweetener USA, Inc. v. Nutrasweet Co., 766 F.Supp. 212, 217 (D.Del.1991)* (setting forth test for propriety of a stay). At the appropriate time, a separation of the suits against the manufacturer and non-manufacturer defendants may well be warranted, for ease of case administra-

tion.

> FN5. At the case management conference, I granted a defense request that Honeywell be required to identify the products it is accusing of infringement. To date, it has only stated that "[a]t least some of the LCD screen-containing products manufactured, imported, offered for sale, and/or sold by [the named defendants] infringe the '371 patent literally and/or under the doctrine of equivalents...." (C.A. No. 04-1338-KAJ D.I. 1 at ¶ 53.)

**\*5** At the close of the case management conference, I instructed the parties to confer and provide me with proposed language respecting permissible discovery activities directed at the non-manufacturer defendants during the stay. A further and separate order will be entered following the parties' filing or filings in that regard.

Conclusion
For the reasons stated in open court on May 16, 2005 and herein, it is hereby ORDERED that

(1) Honeywell's motions to consolidate (C.A. No. 04-1338-KAJ D.I. 134; C.A. No. 04-1536-KAJ D.I. 14) are GRANTED to the extent that Civil Action Nos. 04-1337-KAJ, 04-1338-KAJ and 04-1536-KAJ are consolidated for the present for all purposes, with a consolidated case caption to be suggested by the parties by June 17, 2005;

(2) Seiko Epson's motions to intervene (C.A. No. 04-1337-KAJ D.I. 50 and C.A. No. 04-1338-KAJ D.I. 136) are GRANTED;

(3) Optrex's request to proceed with its dispute in advance of Honeywell being permitted to proceed with its litigation against the non-manufacturer defendants (C.A. No. 04-1536-KAJ D.I. 23) is GRANTED to the extent described herein; and

(4) the several motions to stay (C.A. No. 04-1337-KAJ D.I. 60, 63, 101 and 112; C.A. No. 04-1338 D.I. 95, 158, 161, 181 and 189) are GRANTED to the extent described herein, with a further order regarding the stay to be proposed by the parties no later than June 17, 2005.

HONEYWELL V. AUDIOVOX, ET AL.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2465898 (D.Del.)
**(Cite as: 2005 WL 2465898 (D.Del.))**

| C.A. No | Defendant | Pending Motions |
|---|---|---|
| 04-1337 | Audiovox Communications | 1) Motion to Stay (D.I.112) |
| | Audiovox Electronics | 1) Customer defendants' Motion to Stay |
| | | (D.I.101) |
| | Nikon Corporation | 1) Motion to Stay (D.I.60) |
| | Nikon Inc. | |
| | Nokia Corporation | 1) Motion for leave to file third party |
| | Nokia Inc. | complaint (D.I.57) |
| | | 2) Motion to Stay (D.I.63) |
| | | 3) Joinder in Toshiba's Motion to |
| | | Bifurcate filed in C.A. No. 04-1138 at |
| | | D.I. 164 (D.I.97) |
| | Sanyo Electric Co. | No Motions |
| | Sanyo North America | |
| | Curitel Communications (Third Party Deft) | No Motions |
| | Toshiba Corp. (Third Party Deft) | No Motions |
| | Seiko Epson Corporation (non-party) | 1) Motion to Intervene (D.I.50) |

HONEYWELL V. APPLE COMPUTER, ET AL.

| C.A. No | Defendant | Pending Motions |
|---|---|---|
| 04-1338 | Apple Computer | 1) Joinder (D.I.172) in Toshiba's motion to bifurcate (D.I.164) |
| | | 2) motion to stay (D.I.181) |
| | Argus a/k/a Hartford Computer | 1) motion to stay (D.I.181) |
| | Casio Computer | 1) Joinder (D.I.172) in Toshiba's |
| | Casio Inc. | motion to bifurcate (D.I.164) |
| | Concord Cameras | 1) Joinder (D.I.172) in Toshiba's motion to bifurcate (D.I.164) |
| | | 2) motion to stay (D.I.181) |
| | Dell Inc. | 1) Joinder (D.I.172) in Toshiba's |

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2465898 (D.Del.)
**(Cite as: 2005 WL 2465898 (D.Del.))**

| | |
|---|---|
| | motion to bifurcate (D.I.164) |
| | 2) motion to stay (D.I.181) |
| Eastman Kodak | 1) Joinder (D.I.194) in Toshiba's |
| | motion to bifurcate (D.I.164) |
| | 2) motion to stay (D.I.181) |
| Fuji Photo Film | 1) motion for more definite state-ment, |
| Fuji Photo Film USA | for stay, and for partial dismissal (D.I. |
| | 95) |
| | 2) motion to transfer (D.I.97) |
| | 3) brief filed (D.I.156) in support of |
| | Seiko Epson's motion to intervene (D.I. |
| | 136) |
| | 4) briefs filed (D.I.166, 183) in support |
| | of Toshiba's motion to bifurcate (D.I. |
| | 164) |
| Fujitsu Limited | 1) Joinder (D.I.172) in Toshiba's |
| Fujitsu America | motion to bifurcate (D.I.164) |
| Fujitsu Computer | |
| Kyocera Wireless | 1) motion to stay (D.I.158) |
| Matsushita Electrical Industrial | 1) Joinder (D.I.172) in Toshiba's |
| Matsushita Electrical Corp. | motion to bifurcate (D.I.164) |
| Navman NZ | 1) motion to stay (D.I.181) |
| Navman USA | |
| Olympus Corp. | 1) motion to stay (D.I.161) |
| Olympus America | |
| Pentax Corporation | 1) motion to stay (D.I.158) |
| Pentax USA | |

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2465898 (D.Del.)
**(Cite as: 2005 WL 2465898 (D.Del.))**

| | |
|---|---|
| | 2) Joinder (D.I.172) in Toshiba's |
| | motion to bifurcate (D.I.164) |
| Sony Corp. | 1) Joinder (D.I.172) in Toshiba's |
| Sony Corp. Of America | motion to bifurcate (D.I.164) |
| | 2) motion to stay (D.I.189) |
| Sony Ericsson Mobile AB | 1) Joinder (D.I.196) in motion to stay |
| Sony Ericsson Mobile USA | (D.I.158) |
| Toshiba Corporation | 1) motion to bifurcate (D.I.164) |
| Toshiba America | no motions |
| Philips Electronics (3rd pty dft) | no motions |
| Wintek Electro-Optics (3rd pty | no motions |
| dft) | |
| Optrex America (3rd pty dft) | no motions |
| Seiko Epson (non-party) | 1) motion to intervene (D.I.136) |
| PLAINTIFFS-HONEYWELL | 1) motion to consolidate and for stay |
| | (D.I.134) |

OPTREX AMERICA INC. V. HONEYWELL

| C.A. No | Defendant | Pending Motions |
|---|---|---|
| 04-1536 | Honeywell International | 1) Motion to consolidate and for stay |
| | | (D.I.14) |
| | Honeywell Intellectual | 1) Motion to consolidate and for stay |
| | Properties | (D.I.14) |

D.Del.,2005.
Honeywell Intern. Inc. v. Audiovox Communications Corp.
Not Reported in F.Supp.2d, 2005 WL 2465898 (D.Del.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



ICU MEDICAL, INC., Plaintiff, v. RYMED TECHNOLOGIES, INC., Defendant.

Civil Action No. 07-468-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2008 U.S. Dist. LEXIS 4983*

January 22, 2008, Decided
January 23, 2008, Filed

**SUBSEQUENT HISTORY:** Reargument denied by *ICU Med., Inc. v. RyMed Techs., Inc., 2008 U.S. Dist. LEXIS 32856 (D. Del., Apr. 18, 2008)*

**PRIOR HISTORY:** *ICU Med., Inc. v. B.Braun Med. Inc., 2005 U.S. Dist. LEXIS 40710 (N.D. Cal., Mar. 14, 2005)*

**COUNSEL:**  [*1] For ICU Medical Inc., Plaintiff: Richard L. Horwitz, LEAD ATTORNEY, Kenneth Laurence Dorsney, Potter Anderson & Corroon, LLP, Wilmington, DE; Diana Luo, Pro Hac Vice; James H. Pooley, Pro Hac Vice; Katherine Nolan-Stevaux, Pro Hac Vice; Kimberly N. Van Voorhis, Pro Hac Vice; Marc D. Peters, Pro Hac Vice.

For RyMed Technologies Inc., Defendant: Richard D. Kirk, LEAD ATTORNEY, The Bayard Firm, Wilmington, DE.

For RyMed Technologies Inc., Counter Claimant: Richard D. Kirk, LEAD ATTORNEY, The Bayard Firm, Wilmington, DE.

For ICU Medical Inc., Counter Defendant: Richard L. Horwitz, LEAD ATTORNEY, Kenneth Laurence Dorsney, Potter Anderson & Corroon, LLP, Wilmington, DE; Diana Luo, Pro Hac Vice; James H. Pooley, Pro Hac Vice; Katherine Nolan-Stevaux, Pro Hac Vice; Kimberly N. Van Voorhis, Pro Hac Vice; Marc D. Peters, Pro Hac Vice.

**JUDGES:** Joseph J. Farnan, Jr., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Joseph J. Farnan, Jr.

**OPINION**

*MEMORANDUM ORDER*

Pending before the Court is Defendant's Motion For Transfer Venue Pursuant to *28 U.S.C. § 1404(a)* (D.I. 10). For the reasons discussed, the Motion will be denied.

**I. BACKGROUND**

On July 27, 2007, Plaintiff ICU Medical, Inc. ("ICU") filed this patent infringement action alleging that [*2] Defendant's products related to a minimum fluid displacement needleless connector that interfaces with a vascular access device and/or catheter infringe four U.S. patents held by ICU: *U.S. patents 5,685,866 ("the '866 patent"), 5,873,862 ("the '862 patent"), 5,928,204 ("the '204 patent"),* and *6,572,592 ("the '592 patent").* All four patents share a single, common specification. (D.I. 16 at 1.) ICU is incorporated in Delaware, and its principal place of business is in San Clemente, California. Defendant, RyMed Technologies, Inc. ("RyMed"), is incorporated in Delaware with its principal place of business in Franklin, Tennessee.

On October 28, 2007, RyMed filed an action in the Central District of California seeking a declaratory judgment that the four patents asserted by ICU in this litigation are invalid, damages for federal and state trademark infringement, Lanham Act violations, federal and state unfair competition, tortious interference with contract, and tortious interference with prospective economic advantage (the "declaratory judgment action"). The California action was assigned to the Honorable Mariana R. Pfaelzer on December 14, 2007. (D.I. 22.)

Case 1:11-cv-00223-GMS   Document 14-2   Filed 06/20/11   Page 28 of 39 PageID #: 203

Page 2
2008 U.S. Dist. LEXIS 4983, *

Three of the four patents at issue [*3] in this litigation, the '866, the '862, and the '592 patent, were previously litigated by ICU in the Central District of California in a case brought by ICU against Alaris Medical Systems, *ICU Medical, Inc. v. Alaris Medical Systems, Inc.,* Case No. CV-04-00689 (C.D. Cal.). After issuing a claim construction on July 17, 2006, the Court granted summary judgment in favor of Alaris, and issued a final judgment on September 21, 2007. In 2001, ICU litigated the '204 patent against B. Braun Medical in the Northern District of California, *ICU Medical, Inc. v. B. Braun Medical, Inc.,* Case No. C01-3202-CRD (N.D. Cal.) The Court issued a claim construction on November 27, 2002, and the case settled before trial, and was dismissed on April 20, 2005. Finally, a patent claiming technology similar to the patents in suit was the subject of an recent action titled *Medegen MMS, Inc. v. ICU Medical, Inc.,* Case No. SA CV-06-619-MRP-AS (C.D. Cal.). This case concluded with judgment in ICU's favor on September 4, 2007.

On October 29, 2007, RyMed filed the instant Motion to Transfer Venue Pursuant to *28 U.S.C. § 1404(a)* to the Central District of California. (D.I. 10).

## II. PARTIES' CONTENTIONS

By its Motion, [*4] RyMed contends transfer to the Central District of California is appropriate pursuant to *28 U.S.C. § 1404(a)* and warranted by the private and public interest factors identified in *Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995).* Specifically, Ry-Med contends that a transfer would best serve the interests of justice and promote judicial economy, and that the convenience of the parties and witnesses will be best served by transfer.

In response, ICU contends that its choice to file in Delaware is entitled to substantial deference because it chose to litigate in Delaware for a rational and legitimate reason, and that RyMed has not met its burden to show that the factors in *Jumara* strongly favor transfer.

## III. LEGAL STANDARD

Pursuant to *28 U.S.C. § 1404(a),* "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Since it is undisputed that ICU could have brought the instant action in the Central District of California, the Court's task is to determine whether the factors enumerated in *Section 1404(a)* [*5] warrant a transfer under the circumstances.

The Third Circuit has set forth a list of factors for district courts to consider when deciding whether or not to transfer. *Jumara, 55 F.3d at 879-80.* These factors

include six private interests: (1) the plaintiff's forum preference as evidenced by his or her original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties due to their relative physical and financial condition, (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (6) the location of books and records, to the extent that the books and records could not be produced in a certain forum. *Id. at 879.* The factors also include six public interests for courts to consider: (1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state [*6] law in diversity cases. *Id. at 879-80.*

Ordinarily, the burden is on the movant to establish that the balance of the interests weighs strongly in favor of the requested transfer. *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).* A transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. *Continental Cas. Co. v. Am. Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999).*

## IV. DISCUSSION

### A. *Whether ICU's Choice Of Forum Is Entitled To "Paramount Consideration."*

The Plaintiffs' choice of forum is entitled to "paramount consideration." *Shutte, 431 F.2d at 25.* This choice should not be lightly disturbed if there is a legitimate, rational reason to litigate away from the corporation's "home turf." *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc., 775 F.Supp. 759, 764 (D. Del. 1991).* A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state. *Stratos Lightwave, Inc. v. E20 Communs., Inc., 2002 U.S. Dist. LEXIS 5653 at *7 (D. Del. 2002).* The Court concludes that ICU's decision to litigate in Delaware is entitled to deference because although its principal [*7] place of business is in California, it is incorporated in Delaware. Thus, to prevail on its Motion, Ry-Med must prove that the public and private interest factors strongly favor transfer.

### B. *Whether The Private Interest Factors Strongly Favor Transfer.*

Rymed contends that the convenience of the parties and witnesses, and the interests of justice outweigh ICU's "mere preference for the District of Delaware." (D.I. 11

at 11.) RyMed contends: (1) the "majority of the activity" related to ICU's claims occurred in the Central District of California; (2) the patents' sole inventor, Dr. George Lopez, resides and founded ICU in the Central District of California, and his research and development activities regarding the patents presumably occurred there; (3) neither party has substantial connections to Delaware, and no relevant witnesses reside in Delaware; (4) several witnesses in this action reside within the Central District of California, along with the prosecuting attorneys in this action; and (5) access to relevant documents and design prototypes will be easier logistically and less expensive if this action is litigated in the Central District of California.

In response, ICU contends its [*8] choice of forum should be respected, especially since both parties are Delaware corporations, and RyMed has not shown that litigating in Delaware constitutes a "unique or unusual burden on [its] operations" so that transfer is warranted. (D.I. 16 at 3, quoting Wesley-Jessen Corp. v. Pilkington Visioncare, Inc., 157 F.R.D. 215, 218 (D.Del. 1993). Plaintiff contends that RyMed exaggerates its ties to California, since the allegedly infringing products were designed at RyMed's headquarters Tennessee, and relevant witnesses and documents regarding infringement and damages are located there. ICU further contends that: (1) Delaware is equally convenient for both parties, since both parties are incorporated in Delaware, but headquartered in two different states; (2) RyMed's concerns regarding subpoena power for third party witnesses are unfounded since RyMed has presented no credible evidence that these third party witnesses would be unwilling to testify, or why their testimony would not be available by other means; and (3) because RyMed's technical and damages-related documents will primarily come from Tennessee, not California, documents will need to be transferred some distance regardless [*9] of where the case is tried, and electronic discovery "eliminates any claim of burden based on location." (D.I. 16 at 9.)

Both parties are incorporated in Delaware, and therefore, chose to be corporate citizens of Delaware for legal and other purposes. Certainly, the parties, specifically RyMed, cannot now complain because they are involved in litigation in Delaware. Further, although RyMed's contends that the majority of the activity related to ICU's claims occurred in the Central District of California, rights determined in patent cases are national in scope. Further, ICU admits that its products are sold "nationwide." (D.I. 21 at 2.)

With respect to third party witnesses located in the Central District of California, [1] the Court concludes that their convenience does weigh in favor of transfer. However, RyMed has not demonstrated that these witnesses

would be unwilling to testify voluntarily or that their information is not available in another form, and accordingly, the Court concludes that this factor does not weigh strongly in favor of transfer. With respect to the location of records and other documents, and access to design prototypes, the "technological advances of recent years [*10] have significantly reduced the weight of this factor" in the Court's analysis, because they have "substantially reduc[ed] the burden of litigating in a distant forum." Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 205 (D.Del. 1998). Thus, even if the Court credits RyMed's contention that many of its documents regarding "manufacturing and distribution activities are located in the Central District of California," rather than in Tennessee at RyMed's headquarters (D.I. 21 at 6), this factor weighs only minimally in favor of transfer. Affymetrix, 28 F.Supp.2d at 205.

> 1 The convenience of the witnesses is only relevant to the extent they would be unavailable for trial in the forum. Jumara, 55 F.3d at 879. Current employees are presumed to be available to testify at trial.

For these reasons, the Court concludes that RyMed has not met its burden of demonstrating that the private interest factors weigh strongly in favor of transfer.

C. Whether The Public Interests Strongly Favor Transfer

The Court concludes that the public interests do not weigh strongly in favor of a transfer.

RyMed contends that the practical considerations of litigating this case in the Central District of California will [*11] make the litigation less expensive, more expeditious, and easier because the patents at issue have previously been the subject of substantial litigation in the Central District of California. RyMed further contends that, since the technology at issue here is the same as the technology at issue in the declaratory judgment action, consolidating these actions will "reduce the parties' costs and allow for simultaneous scheduling of potentially duplicative events in the two litigations." (D.I. 11 at 16.) Additionally, RyMed contends that transfer will achieve a speedier resolution of the dispute because the Central District of California disposes of filed cases more expeditiously than the District of Delaware, and cases advance to trial in less time in the Central District of California than the District of Delaware. (D.I. 11 at 16-17.) Finally, RyMed contends that, because it pled several causes of action in the declaratory judgment action to which California state law must be applied, California retains an interest in adjudicating this dispute. (Id. at 17.)

In response, ICU contends that the later-filed declaratory judgment action does not create a compelling

California interest in ICU's [*12] Delaware patent action, since, prior to RyMed's filing of its complaint in the Central District of California, no pending litigation existed between the parties in California on any of the patents at issue, and RyMed's California complaint reflects forum shopping. ICU further contends that RyMed's attempts to "augment its California complaint with 'local flavor' by asserting unrelated trademark/unfair competition claims" reflects the lack of a legitimate California interest in this matter, since RyMed limited its counterclaims in this action to the patent issues. ICU contends that the prior litigations regarding these patents do not support transfer since the *Medegen* litigation involved a type of product not at issue in this case, and the *Alaris* litigation did not involve RyMed's products, but "different products produced by other companies, with different theories of infringement, and of course with different damages issues." (D.I. 16 at 14.) Finally, ICU points out that patent cases statistics in the Central District of California indicate a much lengthier time to resolution than patent cases in Delaware.

This Court finds that any efficiencies that may be achieved by consolidating [*13] this case with RyMed's declaratory judgment action are entitled to very little consideration. A patent infringement defendant should not be able to strengthen its case for transfer by the filing of a declaratory judgment action in the forum of its choice. *Mentor Graphics Corp. v. Quickturn Design Sys-*

*tems, Inc.,* 77 F.Supp.2d 505, 513 (D.Del. 1996). Further, RyMed cannot "create" a California interest by attaching state law claims to its later-filed declaratory judgment action.

Additionally, the Court finds there is no strong local interest in litigating this action in the Central District of California. The instant action is a patent infringement case and patent rights generally do not give rise to a local controversy or implicate local interests.

The Court acknowledges that the Central District of California's familiarity with the patents at issue is a factor to consider, but the Court does not find that factor to be dispositive, particularly where, as here, the technology at issue is not complex, and the balance of the factors weighs in favor of ICU's choice of forums.

Accordingly, the Court will deny RyMed's Motion For Transfer.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED this 22 day of [*14] January, 2008, that Defendant Ry-Med's Motion For Transfer Venue Pursuant to *28 U.S.C. § 1404(a)* (D.I. 10) is ***DENIED.***

/s/ Joseph J. Farnan, Jr.

UNITED STATES DISTRICT JUDGE



**MARVELL INTERNATIONAL LTD., Plaintiff, v. LINK_A_MEDIA DEVICES CORP., Defendant.**

**Civ. No. 10-869-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2011 U.S. Dist. LEXIS 60798*

**June 8, 2011, Decided**

**COUNSEL:** [*1] For Marvell International Ltd., Plaintiff, Counter Defendant: Thomas Lee Halkowski, LEAD ATTORNEY, A. Martina Tyreus Hufnal, Fish & Richardson, P.C., Wilmington, DE; Indranil Mukerji, PRO HAC VICE; William Sekyi, PRO HAC VICE.

For Link A Media Devices Corp, Defendant: Elena C. Norman, LEAD ATTORNEY, Young, Conaway, Stargatt & Taylor LLP, Wilmington, DE; Diana Luo, PRO HAC VICE; Harold McElhinny, PRO HAC VICE; Mark W. Danis, PRO HAC VICE; Monte Terrell Squire, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Link A Media Devices Corp, Counter Claimant: Elena C. Norman, LEAD ATTORNEY, Young, Conaway, Stargatt & Taylor LLP, Wilmington, DE; Diana Luo, PRO HAC VICE; Mark W. Danis, PRO HAC VICE; Monte Terrell Squire, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION**

**MEMORANDUM ORDER**

At Wilmington this 8th day of June, 2011, having reviewed defendant Link_A_Media Devices Corp.'s ("LAMD's") motion to transfer, as well as the papers submitted in connection therewith;

IT IS ORDERED that said motion (D.I. 10) is denied, as follows:

1. **Background.** On October 11, 2010, plaintiff Marvell International Ltd. ("Marvell") instituted the present [*2] patent infringement litigation, alleging that LAMD infringes U.S. Patent Nos.: 7,328,395; 7,751,138; 7,099,411; and 7,228,485. (D.I. 1 at ¶¶ 11-32) LAMD moved to transfer the present action to the Northern District of California. (D.I. 10)

2. **The parties.** LAMD, a Delaware corporation having its principal place of business in California, is a maker, seller, and/or distributor of micro chips for data storage devices in the United States. (D.I. 1 at ¶¶ 8-10; D.I. 11 at 1-2) LAMD has offices in California, Minnesota, the United Kingdom, and Japan. (D.I. 11 at n.2) Marvell, a Bermuda company having its principal place of business in Bermuda, is the assignee and sole owner of the patents-in-suit. (D.I. 1 at. ¶¶ 1, 12, 18, 24, 29)

3. LAMD asserts that transfer is appropriate because: (1) LAMD has its principal place of business in the Northern District of California; (2) the court should not defer to Marvell's choice of forum as it did not sue on its home turf; (3) the events giving rise to the litigation arose outside of Delaware; (4) LAMD is a regional enterprise; (5) relevant records and important non-party witnesses reside in the Northern District of California; and (6) court congestion [*3] in Delaware gives rise for transfer to California. (D.I. 11) Notwithstanding LAMD's arguments in support of transfer, there is one pivotal connection to Delaware; it is LAMD's state of incorporation. (D.I. 1 at ¶ 2; D.I. 11 at 1)

4. Marvell opposes transfer, arguing that the court should defer to its choice of forum because: (1) LAMD is incorporated in Delaware; (2) LAMD has not met its burden to compel the court to transfer the case as LAMD is unable to point to any witness or document that could

not be produced in Delaware; and (3) Delaware is known for its expertise in patent litigation. (D.I. 16)

5. **Standard of review.** Under *28 U.S.C. § 1404(a)*, a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through *§ 1404* to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 208 (D. Del. 1998).*

6. The burden [*4] of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favor the defendants." *Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981)* (citing *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)); Medicis Pharm. Corp. v. Nycomed U.S. Inc., Civ. No. 10-419-SLR, 2011 U.S. Dist. LEXIS 34365, 2011 WL 1230276, at *2 (D. Del. Mar. 31, 2011).* "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail." *ADE Corp. v. KLA-Tencor Corp., 138 F. Supp. 2d 565, 567-68 (D. Del. 2001); Shutte, 431 F.2d at 25.* The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D. Del. 1998); Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc., Civ. No. 01-199, 2001 U.S. Dist. LEXIS 20803, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001); Padcom, Inc. v. NetMotion Wireless, Inc., Civ. No. 03-983-SLR, 2004 U.S. Dist. LEXIS 9658, 2004 WL 1192641, at *7 (D. Del. May 24, 2004).* Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its "'home turf or a forum [*5] where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).*

7. The Third Circuit has indicated that the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (1995).* Although emphasizing that "'there is no definitive formula or list of factors to consider," *Id.*, the Third Circuit has identified potential factors it characterized as either private or public interests. The private interests include:

(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trail in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be [*6] produced in the alternative forum).

*Id.* (citations omitted). The public interests include:

(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citations omitted).

8. **Analysis.** The court reiterates that, because LAMD is a Delaware corporation, it has no reason to complain about being sued in Delaware. Further, while motions to transfer have been granted for regionally based defendants in the past, LAMD is not a regional enterprise. *See Synthes USA, LLC v. Spinal Kinetics, Inc., Civ. No. 08-838-SLR, 2009 U.S. Dist. LEXIS 13743, 2009 WL 463977, at *1 (D. Del. Feb. 24, 2009).* Unlike the defendant in *Spinal Kinetics*, whose offices were located solely in California, LAMD has offices not only in California, but also in Minnesota, the United Kingdom, and Japan. *See id.* Having offices situated around the globe makes LAMD not only a national player, but more of [*7] an international one, displacing it from regional enterprise status. *See id.*

9. With respect to LAMD's argument regarding court congestion, it is true that this court's docket reflects the fact that patent cases, perhaps more often than in other districts, are given a trial date and tried to resolution. Nevertheless, it is the rare request from counsel for earlier trial dates than those provided by the court and even rarer when such requests are not accommodated by the court to some extent. The court also notes the irony that many members of the bar argue both sides of this argument from case to case, making it even more of a non-issue from the court's perspective.

10. Neither is the court persuaded by LAMD's arguments regarding convenience. In this electronic age, there are no substantial burdens associated with discovery or witness availability that support the need for transfer. With respect to discovery, documents generally are stored, transferred and reviewed electronically. It would be surprising to the court to find that sophisticated litigants, such as those at bar, still maintain their business records in hard copy, thus requiring either travel to California for review of the [*8] documents or the copying and transporting of documents. With respect to witnesses, generally the parties agree to take depositions where the witnesses are located (or the court can so order). Moreover, for those cases that get to trial, only a handful of witnesses testify live, and only a very small proportion of those documents produced during discovery are used as trial exhibits. Given these realities, this factor is outdated, irrelevant, and should be given little weight, if any, except for those rare exceptions where truly regional defendants are litigating.

11. Finally, the court weighs California and Delaware's respective public interest in deciding this dispute as evenly balanced between the two states. Even if the parties may be considered to be California residents, LAMD is a corporate citizens of Delaware, and, accordingly, is subject to suit in Delaware. (D.I. 1 at ¶ 2; D.I. 11 at 1)

12. **Conclusion.** As LAMD is incorporated in Delaware and is not a regional enterprise, and in view of the other considerations discussed above, LAMD's motion for transfer is denied.

/s/ Sue L. Robinson

United States District Judge



STRATOS LIGHTWAVE, INC., Plaintiff/Counterclaim Defendant, v. E2O COMMUNICATIONS, INC., Defendant/Counterclaim Plaintiff.

Civil Action No. 01-309-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2002 U.S. Dist. LEXIS 5653*

**March 26, 2002, Decided**
**March 26, 2002, Filed**

**DISPOSITION:**     [*1] Motion to transfer venue to Central District Of California denied.

**COUNSEL:** Attorneys for the plaintiff, Stratos Lightwave, Inc.: Joseph N. Hosteny, III, Arthur A. Gasey, Paul C. Gibbons, Niro, Scavone, Haller & Niro, Chicago, Illinois. Donald F. Parsons, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

Attorneys for the defendant, E2O Communications, Inc.: David P. Enziminger, Brett J. Williamson, David E. Lederman, O'Melveny & Meyers LLP, Los Angeles, California. William J. Wade, Richards, Layton & Finger, Wilmington, Delaware.

**JUDGES:** Joseph J. Farnan, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Joseph J. Farnan

**OPINION**

*MEMORANDUM ORDER*

Presently before the court is a Motion To Transfer Venue To The Central District of California (D.I. 11) filed by Defendant E2O Communications, Inc. ("E2O"). For the reasons discussed, the motion will be denied.

**BACKGROUND**

Stratos Lightwave, Inc. ("Stratos") and E2O both manufacture and sell optoelectronic transciever modules which are used in computer networks. (D.I. 8 at 1). Stratos is a Delaware corporation with its headquarters in Chicago, Illinois and facilities in California. (D.I. 17 at 1). E2O is also incorporated [*2] in Delaware, but maintains its headquarters in Calabasas, California. (D.I. 8 at 2). The design and development of E2O's accused products is conducted in Californla, where the majority of E2O's domestic employees are located. (D.I. 8 at 2). The accused products are manufactured internationally, in Asia. (D.I. 8 at 2).

On May 5, 2001, Stratos filed this action against E2O alleging infringement of *U.S. Patent Nos. 5,717,533, 5,734,558, 5,864,468, 5,879,173,* Re. 36,820, 6,201,704B1, and 6,320,878BI. (D.I. 1). E2O subsequently filed the instant motion to transfer.

**DISCUSSION**

By its motion, E2O contends that Delaware is an inconvenient forum because its corporate offices, where all the relevant documents and knowledgeable fact witnesses are located, are in California. (D.I. 8 at 7). E2O contends that litigation in Delaware would be not only expensive, but disruptive to the corporation. (D.I. 8 at 7). E2O further contends that Delaware is an inconvenient forum for the witnesses, none of whom reside in Delaware, and further that several non-party witnesses exist who would be beyond the Court's subpoena power. (D.I. 8 at 8). Additionally, E2O contends that the Central District of [*3] California is more convenient because the median time to trial is faster. (D.I. 8 at 11). Finally, E2O contends that California, not Delaware, has a local interest in deciding this controversy because the majority of the allegedly infringing activity took place in California. (D.I. 8 at 11). [1]

1  E2O continuously argues that Stratos' contacts with Delaware are "de minimis, at best;" however, the Court finds this argument to be immaterial in the context of a motion to transfer.

In opposition, Stratos contends that its choice of forum is entitled to substantial deference. (D.I. 17 at 4). Stratos contends that although Delaware is not its home turf, it chose to sue E2O in Delaware because E2O is incorporated in this state. (D.I. 17 at 5). Stratos further contends that E2O, a successful international company, is capable of financing litigation in Delaware, and transferring this action to California would merely shift the burden of expense to Stratos. (D.I. 17 at 7). By E2O's failure to identify non-party witnesses [*4] beyond subpoena power, Stratos contends that the convenience of the witnesses does not weigh in favor of transfer. (D.I. 17 at 11-10). Stratos further contends that adjudication of this action, pursuant to the Court's Scheduling Order (D.I. 15), will be faster than in California, where a new scheduling order would be put in place. (D.I. 17 at 12).

Transfer of a civil action is governed by *28 U.S.C. § 1404(a)* which provides, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of *§ 1404(a)* is "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack, 376 U.S. 612, 616, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964)* (internal citations omitted). Because it is undisputed that Stratos could have brought the instant action in the Central District of California, the Court's only task is to determine whether the factors enumerated in *§ 1404(a)* and by the United States Court of Appeals for the Third [*5] Circuit, warrant a transfer.

The Third Circuit has instructed that when reviewing a motion to transfer under *28 U.S.C. § 1404(a)* district courts must consider, among other things, private [2] and public [3] interests. *See Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995)*. When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. *Id. at 883*; *see also Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1920)*. The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. *See Continental Cas. Co. v. American Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999)*.

2  The private interests are:

(1) the plaintiff's choice of forum, (2) the defendant's preferred forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties due to their relative physical and financial conditions, (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (5) the location of books and records, to the extent that these books and records could not be produced in a certain forum.

*Jumara v. State Farm Ins. Co., 55 F.3d 873, 883 (3d Cir. 1995)*.

[*6]

3  The public interests are:

(1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.

*Id.*

## I. Private Interests

After a consideration of the relevant private interests, the Court concludes that the balance of these factors does not weigh strongly in favor of transfer. As stated previously, a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. *Shutte, 431 F.2d at 25*. In the instant case, stratos' preference for Delaware is not given as much deference because it, admittedly, has not chosen its home turf. *See Continental, 61 F. Supp. 2d at 131* (stating that "the transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen [*7] its home turf or a forum where the alleged wrongful activity occurred"). However, it is not appropriate to dis-

2002 U.S. Dist. LEXIS 5653, *

regard a plaintiff's choice of forum where it had a rational and legitimate reason for choosing the forum. *See Joint Stock Society v. Heublein, Inc., 936 F.Supp 177, 187 (D. Del. 1996).* And the fact that E2O has incorporated in Delaware is a rational and legitimate reason for choosing to sue E2O in Delaware. In fact, E2O, having received the benefits of Delaware incorporation, should not now complain that another corporation has chosen to sue it here. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 821 F. Supp. 962, 965 (D. Del. 1993).* Therefore, Stratos' forum preference, as well as E2O's Delaware incorporation, weigh in favor of maintaining this action in Delaware.

The Court cannot conclude that the balance of the remaining factors strongly weigh in favor of transfer. No witness, reluctant to testify, beyond the subpoena power of the Court, has been identified. The relevant documents, books, and records can be easily transported to Delaware. The financial burden on Defendants to litigate in Delaware is not unduly harsh. In sum, [*8] the private interests weigh in favor of maintaining this action in Delaware.

## II. Public Interests

In the Court's view, none of the public interests weigh in favor of transfer. Patent rights are not local or state matters and therefore cannot give rise to a local controversy, or implicate local public policy. Similarly, because this is a patent infringement action, the familiarity of the trial judge with the application of state law is not applicable. Further, in light of the Scheduling Order already in place, the Court is not persuaded that this case would be adjudicated faster in the Central District of California. Finally, as discussed above, the Court concludes that Delaware is not an unduly inconvenient forum for E2O to litigate this action in. Accordingly, the motion to transfer will be denied. [4]

> 4   The Court is aware of *Methode Electronics & Stratos Lightwave, Inc. v. Finisar, 205 F.R.D. 552 (N.D.Ca. 2001)* (the "Methode Case"), and its resolution. It is the Court's view that the Methode Case is irrelevant to the instant case, and the presence or absence of that action is not material to the Court's decision to retain jurisdiction over the instant case.

[*9]   NOW THEREFORE IT IS HEREBY ORDERED this 26 day of March 2002 that E2O's Motion To Transfer Venue To The Central District Of California (D.I. 11) is ***DENIED***.

Joseph J. Farnan

UNITED STATES DISTRICT JUDGE

**Westlaw.**

Not Reported in F.Supp., 1986 WL 7515 (D.Del.)
**(Cite as: 1986 WL 7515 (D.Del.))**

**H**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
The UPJOHN COMPANY, Plaintiff,
v.
RIAHOM CORPORATION and J.P. Utsick, Defendants.

Civ. A. No. 86-203 CMW.
June 25, 1986.

Jeffrey B. Bove of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware (Thomas J. Macpeak, Peter D. Olexy, J. Frank Osha, and Cynthia Clarke Dale, of Sughrue, Mion, Zinn, Macpeak & Seas, Washington, D.C., Robert A. Armitage, and Lawrence T. Welch of The Upjohn Company, Kalamazoo, Michigan, of counsel), for plaintiff.

David A. Anderson, of Potter, Anderson & Corroon, Wilmington, Delaware (Berj A. Terzian, Brian M. Poissant, and Victor N. Balancia of Pennie & Edmonds, New York City, of counsel), for defendants.

*MEMORANDUM OPINION*
WRIGHT, Senior District Judge.

**\*1** The Upjohn Company brought this action for patent infringement and unfair competition against Riahom Corp. and its president J.P. Utsick. Defendants have filed a motion to transfer this case to the Southern District of New York.

Riahom has the exclusive U.S. sales rights to the alleged infringing product, marketed under the name *RIVIXIL.* Riahom was incorporated in Delaware in March, 1986, and is setting up a national sales organization and distribution centers.

Upjohn filed a Motion for Injunctive Relief at the start of this action, the briefing of which was to be completed by June 23, 1986. Upjohn's selection of the District of Delaware for the trial of this case was based, in large part, on its desire for a prompt resolution of the case and an early hearing and decision on its preliminary injunction motion.

The transfer statute, 28 U.S.C. § 1404(a), states that a transfer of a case may be made "for the convenience of the parties and witnesses and in the interest of justice ... to any district ... where it might have been brought." The parties agree that this action could have been brought in New York, so the Court need consider only the convenience and interest of justice factors.

Explaining these factors, the Third Circuit has stated:

The burden is on the moving party to establish that a balancing of proper interest might be in favor of transfer ... and ... unless the balance of convenience of parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail.

*Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970), *cert. denied,* 401 U.S. 910 (1971). This "balance of convenience" test is more readily satisfied when plaintiff has not sued on its "home turf" or where the forum selected by plaintiff is generally not connected to the subject matter of the suit. *See, e.g., General Instrument Corp. v. Mostek Corp.,* 417 F.Supp. 821, 822-23 (D.Del.1976). However, where the balance of convenience is even or is only slightly in favor of the transfer, the motion must be denied. *See, e.g., Lee v. Ohio Casualty Ins. Co.,* 445 F.Supp. 189, 192 (D.Del.1978).

For the reasons hereinafter set forth, the Court finds that defendants have failed to satisfy the balance of convenience test.

*1. Convenience of Parties and Witnesses*

*a. Plaintiff*

Because this is a patent infringement case, the principal defenses presumably will be non-infringement and patent invalidity. The plaintiff will be required to meet these defenses by the production of voluminous documents for trial. It also will require company employees familiar with the patent and its prosecution to appear for trial.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1986 WL 7515 (D.Del.)
**(Cite as: 1986 WL 7515 (D.Del.))**

Wilmington is a more convenient location than New York for plaintiff and its witnesses. Numerous daily flights are available from Kalamazoo, Michigan, Upjohn's principal place of business, both to New York and Philadelphia. The travel time from Philadelphia International Airport, which is located between Philadelphia and Wilmington, is less than forty-five minutes by shuttle. In contrast, travel to midtown Manhattan from LaGuardia, Newark, or Kennedy airports often is notoriously time-consuming.

**\*2** In addition, Upjohn has a company plane that flies from Kalamazoo to Washington, D.C., once a week. This would not be important but for the fact that, if this case is tried in Wilmington, Upjohn's witnesses and documents could be put on the Washington-bound plane and with slight diversion, flown into Wilmington Airport. The Wilmington Airport is not congested and accommodates private corporate jets of all sizes on a regular basis, as well as commercial planes. Travel time from the airport to downtown Wilmington is less than fifteen minutes.

*b. Defendants*

Defendant Riahom is a new company, having been incorporated less than four months. Its document production, in all probability, will be much less than that of Upjohn, and the transportation of these documents from New York to Wilmington should be less burdensome.

Defendants' witnesses will include defendant Utsick, Riahom's national sales manager Kurt McBride, certain of Riahom's directors, and several Italian witnesses.

Utsick, who is a commercial airline pilot, maintains residences in Secaucus, New Jersey and Jupiter, Florida. Although the trial of this case in New York would be convenient for him, Wilmington is only slightly less convenient, being a one and one-half hour train ride from New York.[FN1]

McBride lives in Fort Collins, Colorado. Defendants argue that it is inconvenient for McBride to come to Wilmington because its airport does not handle many direct flights. But neither are there direct flights from Fort Collins to New York. To come east by air, McBride must travel first to Denver.

There are frequent direct flights from Denver to both New York and Philadelphia. As explained above, it is generally easier to travel from the Philadelphia Airport to Wilmington, than it is to travel from LaGuardia, Newark or Kennedy into Manhattan.

Utsick's affidavit states that two of Riahom's directors reside in New York City and two reside in Greenwich, Connecticut. Docket No. 12, ¶ 5. Defendants do not indicate which directors other than Utsick will testify or what their testimony will be. Although New York evidently would be a more convenient location for these witnesses, Wilmington, a mere train ride away, is not particularly inconvenient for them.

Defendants' product is manufactured in Italy, so that several Italian witnesses will have to testify. There are daily flights from Italy both to Kennedy and to Philadelphia International Airport. Customs procedures should be shorter in Philadelphia than in New York, and, as explained above, travel time from the Philadelphia airport to Wilmington is generally less.

In summary, New York is only slightly more convenient for defendants and their witnesses than Wilmington.

*2. Interests of Justice*

The interests of justice would be served by keeping this case in the District of Delaware. This Court has begun to familiarize itself with this dispute, having already ruled on two discovery-related motions. It is also prepared and able to set an early date for a hearing on Upjohn's pending motion for a preliminary injunction. A transfer to the Southern District of New York, one of the largest and busiest courts in the federal system, inevitably would mean some delay, even if the matter receives an early hearing. Both parties and the Court have an interest in swift resolution of the pending motion and this case. *See, e.g., Neff Athletic Lettering Co. v. Walters,* 524 F.Supp. 268, 274 (S.D.Ohio 1981) (relative docket congestion weighed in favor of change of venue); *Foster v. Litton Industries, Inc.,* 431 F.Supp. 86, 88 (S.D.N.Y.1977) (docket conditions given some weight in determining transfer motion); *but cf., Hall v. Kittay,* 396 F.Supp. 261, 264 (D.Del.1975) (relative docket congestion does not justify denial of transfer which is otherwise required under 28 U.S.C.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1986 WL 7515 (D.Del.)
**(Cite as: 1986 WL 7515 (D.Del.))**

§ 1404(a)).

**\*3** For all the foregoing reasons, the Court finds
that the defendants have not carried their burden and
shown that the transfer to New York from Wilmington would be more convenient for all the parties and
witnesses or in the interests of justice. The defendants' motion is therefore denied.

> FN1. Defendants also argue that, because serious questions exist regarding whether personal jurisdiction and proper venue are present in Delaware as to Utsick personally, the interests of justice require transfer to a district where personal jurisdiction and venue are clearly proper. This argument is simply beside the point. By filing suit in the District of Delaware, Upjohn has taken the chance that Utsick in his personal capacity may avoid the lawsuit. The parties' litigation strategy is not the concern of the Court.

D.Del.,1986.
Upjohn Co. v. Riahom Corp.
Not Reported in F.Supp., 1986 WL 7515 (D.Del.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.