IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WHERE 2 GET IT, INC.<br><br>v.<br><br>GEOTAG, INC. | C.A. No. 1:11-cv-00223-GMS<br><br>JURY TRIAL DEMANDED |

**DEFENDANT'S REPLY IN SUPPORT OT ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

Kenneth L. Dorsney (Bar No. 3726)
Mary B. Matterer (Bar No. 2696)
MORRIS JAMES LLP
500 Delaware Ave., Ste. 1500
Wilmington, DE 19801
(302) 888-6960
kdorsney@morrisjames.com
mmatterer@morrisjames.com

John J. Edmonds
Michael J. Collins
Stephen F. Schlather
COLLINS, EDMONDS & POGORZELSKI, PLLC
1616 S. Voss Road, Suite 125
Houston, Texas 77057
Telephone: (281) 501-3425
Facsimile: (832) 415-2535
jedmonds@cepiplaw.com
mcollins@cepiplaw.com
sschlather@cepiplaw.com

July 7, 2011                    COUNSEL FOR DEFENDANT
                                GEOTAG INC.

**TABLE OF CONTENTS**

I. Introduction. ................................................................................................................ 1

II. W2GI's Attempt To Boot-Strap This Case To The *Microsoft* Declaratory Action Is Unfounded. ................................................................................................................... 2

III. This Court Should Not Reward W2GI For Its Bad Faith "Race To The Courthouse." ...... 3

IV. Choice Of Forum In This Anticipatory Suit Is Entitled To Little Weight. ......................... 4

V. The Customer Suit Exception Has Not Been Established. ................................................ 5

VI. Texas Is The Appropriate Venue For This Dispute. ........................................................... 6

    A. W2GI Has Not Rebutted That The Private Interests Factors Strongly Favor Transfer. ... 6

    B. W2GI Has Not Rebutted That The Public Interests Factors Strongly Favor Transfer. ... 9

VII. Conclusion. ...................................................................................................................... 10

**TABLE OF AUTHORITIES**

**Cases** **Pages**

*Air Products and Chems. v. MG Nitrogen Servs.*, 133 F. Supp.2d 354 (D. Del. 2001) ..................5

*Auto. Serv. Ass'n of N.J., Inc. v. Rockland Exposition, Inc.*, 2008 WL 5244282
(D.N.J. Dec. 12, 2008) ....................................................................................................................5

*Brower v. Flint Ink Corp.*, 865 F. Supp. 564, 569 (N.D. Iowa 1994).............................................3

*E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969 (3d Cir. 1988).............................................3, 4, 5

*EMC Corp. v. Norand Corp.,* 89 F.3d 807 (Fed. Cir. 1996)..........................................................3

*In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed. Cir. 2009).........................................................8

*Jermax, Inc. v. AK Steel Corp.*, 2010 U.S. Dist. 2010 WL 2652276
(D.N.J. June 24, 2010) ....................................................................................................................5

*Joanna Foods, Inc. v. Coca-Cola Co.*, 2010 WL 4721521 (D.N.J. Nov. 15, 2010)....................4, 5

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) ...................................................9

*MedImmune v. Genentech,* 549 U.S. 118 (2007)............................................................................3

*Micron Tech., Inc. v. Mosaid Technologies, Inc.,* 518 F.3d 897 (Fed. Cir. 2008)..........................6

*One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc*., 987 F. Supp. 317
(D.N.J. 1997)...................................................................................................................................5

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc*., 556 F.3d 1294 (Fed. Cir. 2009)....................2, 3

**Statutes**
28 U.S.C. § 1404(a) ..................................................................................................................6, 10

**I.     Introduction.**

Plaintiff Where 2 Get It, Inc. ("W2GI") filed this preemptory declaratory action to enhance its position in settlement negotiations after lulling Defendant GeoTag Inc. ("GeoTag") into inaction with a draft NDA and stand-still agreement. W2GI's repeated allegation that GeoTag "elected not to sue W2GI in Texas" is unfounded. GeoTag did not become aware of W2GI's involvement with infringement of the '474 patent until W2GI contacted GeoTag and suggested settlement discussions accompanied by a 60 day stand-still.[1]  Once GeoTag realized that W2GI had filed this preemptory suit as a bargaining chip, GeoTag filed suit for infringement the following day in the Eastern District of Texas where GeoTag already had multiple suits pending against W2GI's alleged customers.

This Court should not allow W2GI to use the existing suits against its customers in Texas both as a sword and a shield.  The sole basis for W2GI's allegation of declaratory judgment jurisdiction here is the existence of suits against customers in Texas that it claims may request indemnification from it.[2]  Despite the fact that those cases were filed months before this action, W2GI asks this Court to ignore GeoTag's choice of forum in favor of its own and to force GeoTag to litigate those cases here instead of in its home state and judicial district in Texas. There is no reason to effectively transfer existing disputes here when — if W2GI really is an indemnitor as it claims it *may* be — it is fully able to participate in the first-filed, ongoing cases in Texas either as an indemnitor standing in the shoes of its named customers or as an intervenor. Moreover, because it is already handling multiple cases concerning the '474 Patent and W2GI's

---

[1] W2GI misconstrues the Edmonds declaration appended to GeoTag's motion to suggest that GeoTag was 'aware" of W2GI. To the contrary, the Edmonds declaration makes clear that GeoTag only became aware of W2GI once W2GI approached GeoTag seeking negotiations and a stand-still.

[2] There is no evidence that any customer has requested indemnification, that there would be any factual basis to support a request, or any evidence that W2GI would provide such indemnification. See Patel Decl. in support of W2GI's Response (Doc. No. 14-1).

customers and has previously handled a case involving the '474 Patent through pre-trial and a *Markman* ruling, the Eastern District is the more efficient and economic forum to resolve any disputes between GeoTag and W2GI. The *GeoTag v. Where 2 Get It, Inc. et al.* suit filed there the day after this action can be treated in coordination with the previously filed customer cases and W2GI will have every opportunity to defend itself and its customers with all stakeholders present in Texas.

## II. W2GI's Attempt To Boot-Strap This Case To The *Microsoft* Declaratory Action Is Unfounded.

W2GI's suggestion that its choice to file this action here was "rational and legitimate" based on the existence of the *Microsoft* action is inane. Although W2GI suggests that this case should stay in Delaware because the *Microsoft* action "will address the claim construction and validity issues concerning GeoTag's '474 patent," there is no evidence or reason to believe that the *Microsoft* case will continue here at all.[3] GeoTag has moved to dismiss or transfer the *Microsoft* action, which is a second-filed suit, based solely on alleged indemnification inquiries from Microsoft and Google customers who are already named defendants in cases in the Eastern District of Texas.

In addition to the law supporting GeoTag's dismissal request in *Microsoft*, it is very likely that the *Microsoft* case will not continue, as the parties have exchanged proposed covenants-not-to-sue and GeoTag has informed the Court that it is willing to enter into a covenant-not-to-sue Microsoft or Google based on their provision of maps of store locations to their customers.[4] A covenant-not-to-sue divests the Court of jurisdiction in a declaratory judgment suit. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir.

---

[3] W2GI also asserts that "[e]ven the non-infringement issues will likely be the same, or very similar, for these three providers of web locator services." However, W2GI provides no evidence in support of this claim.

[4] *See* Appendix A to Civil Action No. No. 11-cv-00175-SD (Doc. No. 18).

2

2009).

Moreover, the Eastern District of Texas is also going to "address the claim construction and validity issues concerning GeoTag's '474 patent" in connection with a number of cases that will continue regardless of whether any case proceeds in this district. There is nothing "rational and legitimate" about W2GI's choice to file in Delaware. W2GI filed in Delaware because it did not want to be in Texas even though the customer suits upon which it bases its claims here were filed there first, the court there has experience with this patent already, and the court there will necessarily address all of the issues that this Court would address in this action. W2GI cannot and did not provide any legitimate reason for filing here other than GeoTag's incorporation. Just because the filing was legally permissible based on the incorporation does not make the filing rational or legitimate, particularly when the evidence shows that there is no other connection *by any party* to this forum.

### III. This Court Should Not Reward W2GI For Its Bad Faith "Race To The Courthouse."

As noted in GeoTag's Motion, discretionary dismissals under the Declaratory Judgment Act are appropriate, as in the present case, where an alleged infringer abuses the declaratory judgment device to gain an improper advantage in ongoing licensing negotiations.[5] Further, discretionary dismissals are appropriate where, as here, the plaintiff in the first-filed action was able to file first only because it misled the filer of the second-filed.[6] District courts may exercise discretion in departing from the first to file rule where exceptional circumstances are presented.[7] Such circumstances can include, as here, "inequitable conduct, bad faith, or forum shopping."[8]

---

[5] *See, e.g., EMC Corp. v. Norand Corp.,* 89 F.3d 807, 815 (Fed. Cir. 1996), *overruled in part on o.g., MedImmune v. Genentech,* 549 U.S. 118 (2007).
[6] *Brower v. Flint Ink Corp.*, 865 F. Supp. 564, 569 (N.D. Iowa 1994).
[7] *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 979 (3d Cir. 1988).
[8] *Id.* at 972.

On the issue of bad faith, W2GI attempts to spin the parties' pre-suit negotiations. However, those negotiations took place entirely by email, and the emails speak clearly for themselves. As noted in GeoTag's Motion, counsel for W2GI initiated contact with counsel for GeoTag via e-mail seeking discussions about taking a license for eleven of W2GI's clients regarding the '474 patent.[9] GeoTag responded by sending a proposed non-disclosure agreement. W2GI's counsel then asked if "it [would be] possible for me to sign the NDA representing absolute confidentiality for the terms of our discussion? If not, if I reveal my client, can you agree not to sue that client for some short period of time while we negotiate, say 60 days?"[10] GeoTag responded that GeoTag was "amenable to working with you on this." *Id.* Then, as the parties were collecting signatures on the NDA, W2GI emailed GeoTag, stating that "In order to facilitate license negotiations but still protect… [W2GI]…, we filed but have not served a DJ in Delaware."[11] The foregoing makes clear that W2GI misled GeoTag, and that W2GI only filed this suit to serve as a bargaining chip during settlement negotiations.[12]

## IV. Choice Of Forum In This Anticipatory Suit Is Entitled To Little Weight.

Although W2GI disputes (unpersuasively) its bad faith in filing suit after proposing a stand-still and while the parties were collecting signatures on an NDA to facilitate settlement discussions, W2GI has admitted that it filed this suit "[i]n order to facilitate license negotiations." Without question, this suit is an anticipatory one.[13] Further, the near

---

[9] *See* Edmonds Declaration at Exhibit B to GeoTag's Motion, Dkt. No. 11.
[10] *Id.*
[11] *Id.*
[12] Perhaps realizing that its recasting of the email exchange between counsel falls flat, W2GI takes the alternative position that it is "irrelevant" whether it mislead GeoTag. However, as noted in GeoTag's motion, W2GI's bad faith is highly relevant to whether the first-filed doctrine should apply.
[13] *See, e.g., Joanna Foods, Inc. v. Coca-Cola Co.*, 2010 WL 4721521, at*3 (D.N.J. Nov. 15, 2010) (suit filed when less approximately two weeks of discussions reached an impasse; *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969 (3d Cir.1988) (filing action a few weeks after

simultaneous filing of this declaratory judgment action and the patent infringement action in Texas indicates that the declaratory judgment action does not "spring from circumstances ... contemplated by the Declaratory Judgment Act."[14] Anticipatory suits such as the present one should be afforded little, if any, weight when applying the first to file rule.[15]

## V. The Customer Suit Exception Has Not Been Established.

W2GI suggests that GeoTag's earlier filed suits in Texas should carry little weight due to the "customer suit exception." The customer suit exception is used when a first suit is filed against a customer who is a mere reseller, while the second suit is a declaratory action brought by the manufacturer of the accused goods.[16] Here, although the parties agree that W2GI's customers have been sued, W2GI has not shown that it is the manufacturer of the systems and methods accused of infringement in the Texas cases, or that the defendants in Texas are resellers. The only evidence submitted by W2GI on this issue is Mr. Patel's statement that W2GI supplies "mapping tools that customers use in connection with their websites." Providing a map to a customer is not an act that is accused of infringement by GeoTag. Thus, W2GI has presented no evidence that the customer suit exception should apply. Even if it did apply, as pointed out by W2GI, the customer suit exception is an equitable rule used to prevent Goliath from pursuing David as a powerful patentee sues customers who do not have the resources to defend themselves instead of suing a manufacturer with more resources. See W2GI Resp. at 11-12. The situation here is precisely the opposite, as W2GI's customers are large corporations with

---

receipt of letter suggesting intent to sue was anticipatory); *Jermax, Inc. v. AK Steel Corp.*, 2010 U.S. Dist. LEXIS 63372, 2010 WL 2652276 (D.N.J. June 24, 2010) (filing action a week after receiving a letter demanding compliance was anticipatory); *Auto. Serv. Ass'n of N.J., Inc. v. Rockland Exposition, Inc.*, 2008 WL 5244282 (D.N.J. Dec. 12, 2008) (action filed in response to receiving letter expressing intention to sue was anticipatory).

[14] *See Joanna Foods*, 2010 WL 4721521, at *3; *One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.*, 987 F.Supp. 317 (D.N.J.1997).

[15] *See Joanna Foods*, 2010 WL 4721521, at *3.

[16] *Air Products and Chems. v. MG Nitrogen Servs.*, 133 F. Supp.2d 354, 357 (D. Del.2001).

substantial resources who are fully able to defend themselves.[17] Moreover, there is still no evidence that any of them have requested or would be entitled to any indemnification from W2GI in connection with the Texas cases to even raise the issue of a customer suit exception.

## VI. Texas Is The Appropriate Venue For This Dispute.

As noted in GeoTag's Motion, discretionary dismissal of a first-filed declaratory judgment action is appropriate where the declaratory judgment action and a mirror-image patent infringement action are filed within a few days of one another in competing forums.[18] In *Micron,* the Federal Circuit held that where an action involves two competing fora, the district court "will have to decide whether to keep the case or decline to hear it in favor of the other forum ... where the infringement action is filed" based upon the application of the transfer convenience factors.[19] The Federal Circuit made clear that "when the discretionary determination is presented after the filing of an infringement action, the jurisdiction question is basically the same as a transfer action under [Section] 1404(a)."[20] As noted in GeoTag's Motion, the evaluation of 1404(a) requires balancing of the private and public interest factors, a balancing which clearly favors Texas over Delaware for this action.

### A. **W2GI Has Not Rebutted That The Private Interests Factors Strongly Favor Transfer.**

W2GI's suggestion that its declaratory claims 'arose' in Delaware to the same extent they 'arose' in Texas is erroneous. It is undisputed that W2GI's declaratory judgment claims arise out of the Texas Actions, not anything that happened in Delaware.

Relative to the remaining convenience factors, W2GI mischaracterizes the nature and

---

[17] *See, e.g.*, defendants listed at Doc. No. 1 in 2:11-CV-175-DF, *GeoTag Inc. v. Where 2 Get It, Inc.*, in the Eastern District of Texas.
[18] *See Micron Tech., Inc. v. Mosaid Technologies, Inc.,* 518 F.3d 897, 902 (Fed. Cir. 2008).
[19] *Id*. at 904.
[20] *Id.*

6

extent of GeoTag's business in Texas. GeoTag has significant business operations in Texas. The company's executive management are John Veenstra (CEO), Lawrence Howorth (President) and another Vice President.[21] Further, GeoTag contracts with support services in Texas rather than hiring full time employees depending on the particular requirements.[22] The company contracts with third parties in areas including Investor Relations, Public Relations, Tax, Accounting, Legal, IT, Product Development, Insurance and Personnel and Payroll services.[23] Although GeoTag's office space seems irrelevant, W2GI's statement about that was incorrect. GeoTag's physical presence in the Eastern District of Texas is substantial, as it leases 3,531 sq. ft., at a current price of $6,350/month, on a 42 month lease.[24] GeoTag has a fully functioning Yellow Page offering, Zland Yellow Pages, which is run and hosted from GeoTag's office in Texas. *Id.*[25]

W2GI cannot escape that its witnesses are located in California, so it suggests that California is more convenient to Delaware than to Texas. This suggestion is baseless. W2GI's headquarters and sole place of business in Anaheim, California is significantly more convenient to the Eastern District of Texas than to Delaware. Aside from the fact that Delaware is almost twice as far from Anaheim as East Texas, presumably the Court is aware that coast to coast flights are burdensome and inconvenient. In addition, W2GI's attempt to lengthen the travel time to Marshall falls flat, because W2GI ignores the presence of airports in Tyler and Texarkana, Texas, as well as Shreveport, Louisiana, all of which are near Marshall, and any of

---

[21] Exhibit 1, Howorth Declaration at ¶ 3.
[22] *Id.* at ¶ 4.
[23] *Id.* at ¶ 5.
[24] *Id.* at ¶ 6.
[25] W2GI's implication that GeoTag is a non-practicing entity is irrelevant to any analysis of jurisdiction or venue and is erroneous. Notably, W2GI's statement that GeoTag's "primary business relates to filing lawsuits and negotiating settlements" is unsupported by its citation and unrelated to the issues at hand. See W2GI's Resp. at n. 2.

which is accessible from multiple airports, including connections through Dallas/Fort Worth. Likewise, the Eastern District of Texas is just as convenient for potential witnesses located in Illinois as is Delaware.

Further, other clearly relevant witnesses to this action are W2GI's alleged customers in the Texas Actions. Those alleged customers are all involved in litigation in Texas. Clearly it is more convenient for W2GI's customers to be involved in one lawsuit in Texas rather than dueling lawsuits in Delaware and Texas.

W2GI argues that "Microsoft and Google further assert that this Court is also more convenient for witnesses familiar with invalidating prior art." However, including as shown in GeoTag's Reply in the Microsoft case, this argument is unsupported.[26] The "basis" for the argument that some prior art witnesses may be convenient to Delaware is the declaration of Microsoft's lawyer, which alleges several patents to be relevant prior art.[27] However, Microsoft's lawyer fails to provide any specifics about why those patents are relevant, and further fails to state what relevant knowledge the named inventors on such patents might have which is not already shown within the patents themselves. W2GI makes no attempt to further support this unfounded and speculative argument.

W2GI argues that the physical location of documents is irrelevant in the electronic age. However, the Federal Circuit has repeatedly rejected this argument. Although documentary evidence may be stored electronically, when deciding venue, courts consider the physical location of the evidence.[28]

Delaware is not convenient for either party. W2GI merely chose this forum in order to

---

[26] Civil Action No. No. 11-cv-00175-SD; Dkt. No. 18, p. 2.
[27] *Id.*
[28] *In re Genentech, Inc.,* 566 F.3d 1338, 1345-46 (Fed. Cir. 2009).

bootstrap upon that the second-filed Microsoft and Google suit, despite this dispute already being the subject of litigation in the Eastern District of Texas.

### B. W2GI Has Not Rebutted That The Public Interests Factors Strongly Favor Transfer.

As noted in GeoTag's Motion, considerations of judicial efficiency overwhelmingly weigh in favor of transfer. The Eastern District of Texas has already presided over a suit involving the '474 patent and construed its claims. That suit came within a month of going to trial, such that the Eastern District is clearly familiar with the '474 patent, the relevant technology, and the prior art. This consideration alone weighs heavily in favor of transfer.

It is in the interest of justice to permit this suit and the ongoing and first-filed Texas Actions to proceed before one court, where all interested parties are already present. In contrast, W2GI unwisely seeks to use this case to adjudge the infringement or non-infringement of W2GI's 20+ alleged customers who are already involved in infringement litigation in Texas.

Notwithstanding W2GI's assertion to the contrary, the "local interest" factor also weighs in favor of transfer. Delaware has no connection to the controversy between W2GI and GeoTag over the '474 patent. The Eastern District of Texas, on the other hand, has a significant interest in hearing a dispute involving GeoTag and the '474 patent. GeoTag has its headquarters and sole office in the Eastern District of Texas. The primary inventor of the '474 patent resides there. The lawsuits asserting the '474 patent that allegedly gave rise to W2GI's declaratory judgment action are pending there.

On balance, the *Jumara* private and public interest factors strongly favor transfer. W2GI's choice of Delaware as a forum is entitled to reduced weight, because Delaware has no connection to the operative facts of the case.[29] There appear to be no witnesses or relevant

---

[29] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

documents in Delaware. In contrast, the Eastern District of Texas is GeoTag's principal place of business. To the extent that W2GI has any justiciable claims, those are alleged to have arisen out of the Texas cases. Additionally, key witnesses and all of GeoTag's documents are located in Texas. Moreover, the Court in the Eastern District of Texas has previously presided over an infringement suit involving the '474 patent, presided over a *Markman* hearing and issued an order construing its claims. Finally, multiple first-filed suits alleging infringement of the '474 patent are pending there.

Because the Section 1404(a) factors weigh strongly in favor of transfer to the Eastern District of Texas, the Court should exercise its discretion to dismiss W2GI's declaratory judgment action in Delaware.

## VII. Conclusion.

For the reasons set forth above and in GeoTag's Motion, the Court should dismiss W2GI's complaint for declaratory judgment. In the alternative, the Court should transfer this suit to the United States District Court for the Eastern District of Texas, where the lawsuits alleged to give rise to this alleged controversy are currently pending.

Dated: July 7, 2011

By: */s/ Kenneth L. Dorsney*
Kenneth L. Dorsney (Bar No. 3276)
Mary B. Matterer (Bar No. 2696)
MORRIS JAMES LLP
500 Delaware Ave., Ste. 1500
Wilmington, DE 19801
(302) 888-6960
(302) 5711750 (fax)
mmatterer@morrisjames.com
kdorsney@morrisjames.com

John J. Edmonds
Michael J. Collins
Stephen F. Schlather
COLLINS, EDMONDS & POGORZELSKI, PLLC
1616 S. Voss Road, Suite 125
Houston, Texas 77057
Telephone: (281) 501-3425
Facsimile: (832) 415-2535
jedmonds@cepiplaw.com
mcollins@cepiplaw.com
sschlather@cepiplaw.com

COUNSEL FOR DEFENDANT
GEOTAG INC.